JAMES I. STANG, ESQ. (CA BAR 94435)
IAIN A.W. NASATIR (CA BAR 148977)
HAMID R. RAFATJOO (CA BAR 181564)
PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

JOHN W. CAMPBELL, ESQ. (WSB 13798)
ESPOSITO, GEORGE & CAMPBELL, PLLC
960 Paulson Building
421 West Riverside Avenue
Spokane, Washington 99201
Telephone: (509) 624-9219
Facsimile: (509) 624-9231

Counsel for COMMITTEE OF TORT LITIGANTS

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re:<br><br>**THE CATHOLIC BISHOP OF SPOKANE a/k/a THE CATHOLIC DIOCESE OF SPOKANE**<br><br>Debtor. | Case No.: 04-08822-PCW11<br><br>Chapter 11<br><br>**COMMITTEE OF TORT LITIGANTS' OBJECTION TO DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE WITH GENERAL INSURANCE COMPANY OF AMERICA**<br>(Docket No. 1279) |

I.

**OBJECTION**

The Committee of Tort Litigants (the "Tort Litigant Committee") in the above-referenced chapter 11 bankruptcy proceeding of the Catholic Diocese of Spokane (the "Debtor or "Diocese") hereby objects as set forth herein to the Debtor's Motion to Approve Settlement Agreement and Release with General Insurance Company of America, Including the Sale of Insurance Policies Free and Clear of Liens, Claims, Encumbrances and Other Interests (the "Motion"[1]) because (1) the record is

---

[1] The Committee of Tort Litigants utilizes the same definitions as contained in the Motion unless

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT   -1-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

04-08822-FPC11   Doc 1375   Filed 08/07/06   Entered 08/08/06 12:32:32   Pg 1 of 9

inadequate to support approval of the proposed Settlement Agreement and Release (the "Settlement Agreement"); and (2) the proposed Settlement Agreement with General Insurance Company of America ("GENERAL") and the proposed orders[2] approving the Settlement Agreement as currently drafted contain provisions that may be either illegal, unenforceable or both. In support of its objection, the Committee of Tort Litigants states as follows:

1. The Settlement Agreement covers fourteen consecutive years of liability coverage provided by GENERAL, from 1958 – 1972. It appears from the Diocese's documents that GENERAL had a potential exposure of $200,000 per claim with a maximum exposure of $2 million per year (for most or all years)[3]. In other words, the Diocese is settling GENERAL's potential maximum exposure of $28 million (fourteen years multiplied by the yearly $ 2 million cap). GENERAL had already paid $1.36 million in connection with its defense and indemnity obligations under these policies. GENERAL is now agreeing in the Settlement Agreement to pay $5.25

---

otherwise indicated.

[2] Unless otherwise noted, this Objection is directed to the "Order Approving Settlement and Release With General Insurance Company of America, Including the Sale of Insurance Policies Free and Clear of Liens, Encumbrances and Other Interests" (hereinafter the "Proposed Order"). Nevertheless, this Objection also encompasses the "(Proposed) Order Approving Settlement, Barring Claims Against General Insurance Company and Safeco Insurance Company of America, and Dismissing Complaint and Crossclaims Against General Insurance Company of America and Safeco Insurance Company of America" (hereinafter the "Bar Order"), which is Exhibit A to the Settlement Agreement and to be entered in the District Court, in the Coverage Action. The Bar Order suffers from the same infirmities as the Proposed Order, and to the extent that this Court is being asked to approve the Settlement Agreement, which includes Exhibit A, the Bar Order, this Objection is also directed to the Bar Order as well as the Proposed Order.

[3] GENERAL has apparently taken the position that all exposure to abuse by priests constitute a single "occurrence" under all of its fourteen policies such that its complete potential exposure is a single year limit of $2 million, less the $1.36 it has already paid out, or more precisely $640,000. The Motion does not begin to analyze the weakness of this argument. While this pleading is not the place to engage in extensive coverage analysis, case law consistently rejects GENERAL's position. See, e.g.,. Society of the Roman Catholic Church of the Diocese of Lafayette and Lake Charles, Inc. v. Interstate Fire & Cas. Co., 26 F.3d 1359 (5th Cir. 1994) (molestation of different children constitutes separate occurrences) (and cases cited therein).

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT   -2-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

million to "buy back" its fourteen policies. Apparently the Diocese has spent more than $1 million in litigation coverage disputes with its carriers. GENERAL's fourteen years of policies issued to the Diocese constituted approximately half of the years implicated in the coverage disputes.

2. The Motion is supported by the declarations of Shaun Cross and James Murray, attorneys for the Diocese. Mr. Cross's declaration is submitted to demonstrate that he "believe[s] the compromise reflected in the Settlement Agreement is fair, and the Diocese's decision to enter the Settlement Agreement is an appropriate and advisable exercise of the Diocese's business judgment." Paragraph 6.

3. To support this opinion, he states several truisms concerning litigation, without any application to the facts surrounding this settlement with GENERAL. For example, he notes that litigation is "time consuming and costly", that the settlement "strengthen[s]" the "Diocese's financial position and ability to pay Tort Claims", that the settlement will avoid "complex and protracted litigation", that the Diocese's "already limited funds" will not be "diminish[ed]", that "high level personnel of the Diocese" can now attend to formulating a resolution to the Chapter 11 case, and that the Diocese can now "concentrat[e] its litigation efforts on the non-settling insurers." Acknowledging the complications and risks posed by the absence of a bar date and the potential for claims to be asserted against the Diocese in the future, that presumably will not be covered by GENERAL if the Settlement Agreement is approved, Cross concludes: "Considering all the risks and factors, I believe the Settlement Agreement represents a fair compromise of the Coverage Disputes." Cross also testifies that the negotiations were at arms-length, devoid of fraud or collusion and were difficult and time consuming. These unsurprising characteristics of the formation and drafting of the Settlement Agreement do not make it reasonable or fair. Simply put, Mr. Cross's declaration establishes no range of reasonableness, nor any basis upon which this Court could conclude the Settlement Agreement was fair or reasonable or that the Diocese exercised its business judgment in an advisable or appropriate manner.

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT   -3-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

Rather, many questions remain about why $5.25 million is a justifiable settlement of all insurance policy proceeds when, based upon policy terms, GENERAL has a potential maximum exposure of $28 million.

4. Murray's declaration, while equally superficial, is directed to the various coverage issues raised by GENERAL. The merits in settling include "eliminat [ing] the need to take or defend [] extensive discovery", "eliminat [ing] one of the principal adverse litigants in the coverage action," and that the settlement "may well create further momentum" for settlements with other insurers. But beside the standard references to bringing money into the estate, and eliminating costly litigation, Murray provides no analysis or reasoning why $5.25 million is within a reasonable range of settlement. Moreover, the Murray declaration indicates that the settlement was negotiated prior to the ruling by Judge Quackenbush in the Coverage Action that: "[T]he claims being brought against the Diocese allege negligence and there is no doubt that acts of negligence can be accidental and constitute 'occurrences'". Decision at 40. No explanation is provided as why the Coverage Action's opinion denying summary judgment on certain coverage defenses would not have or did not increase the settlement value of the Diocese's claim against GENERAL. This would seem to be especially pertinent information since the settlement with GENERAL was not executed by the Diocese until June 23rd, 2006.

5. To understand how Messrs. Cross and Murray arrived at the conclusions they have testified to in support of the Motion, and probe the reasonableness and fairness of the Settlement Agreement, it will be necessary to examine their conclusions. See, e.g., Home Indemnity Co. v. Lane Powell Moss & Miller, 43 F.3d 1322 (9th Cir. 1995).

6. Even taking the unsupported conclusions of Cross and Murray into account, the record is devoid of any information as to how the $5.25 million settlement amount compares to the maximum and minimum range of recoveries the Diocese has concluded the victims within the fourteen years of GENERAL's coverage

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT -4-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

could be entitled to. Without such information, the fairness or reasonableness of the Settlement Agreement cannot be properly assessed.

7. There are other problems in assessing the fairness or reasonableness of the settlement with GENERAL. The Settlement Agreement and the Proposed Order are inconsistent in describing how the $5.25 million settlement sum can be used. The Settlement Agreement provides as follows: "Except as otherwise ordered by the Bankruptcy Court after notice and hearing, the Debtor agrees that it shall use any and all sums received hereunder solely toward payment for indemnity for Tort Claims." Id. At Section B.3. The Proposed Order provides at paragraph 7, p.17, "The proceeds of the sale of the General Policies shall be reserved for the benefit of holders of Tort Claims. But the Proposed Order also provides that the Diocese and General "are each hereby authorized to take all actions...necessary and/or appropriate to implement and effectuate the transactions contemplated by the Settlement Agreement." Id. at paragraph 5, p. 16. There are potential inconsistencies and potential confusion regarding how the $5.25 million can be used, making it impossible to understand the reasonableness or fairness of the settlement when it is unclear to whom the proceeds are to be paid and for what.

8. The Settlement Agreement provides at Section F, Paragraph 5: "The Diocese...agrees to indemnify and hold any Released Party [GENERAL] harmless from any liability, loss, claims, damages, demands, costs, expenses or attorneys fees incurred by the Released Party [GENERAL] [as a result of][sic] any Releasing Party asserting any interest in or coverage under any of the General Policies." The term "Releasing Parties" is defined in Section C.1 as "The Debtor, on behalf of itself, and all of its past, present and future employees, directors, officers, shareholders, agents, representatives, attorneys, related entities, affiliates, parents, subsidiaries, divisions, parishes, churches, cemeteries, schools and other institutions within or affiliated with the Debtor, any predecessors, successors and assigns...."

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT -5-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

9. At least some of the GENERAL policies identify as the "Named Insured": "The Catholic Bishop of Spokane, a corporation sole and/or Bernard J. Topel, Bishop of Spokane and/or priests individually and sisters individually and schools, religious orders, societies and associations affiliated with the Catholic Bishop of Spokane."

10. The fairness and reasonableness of the settlement with GENERAL cannot be gauged since there exists the obvious potential for one of the name insureds (*e.g.*, a school or any association affiliated with the Catholic Bishop of Spokane) to make a claim against GENERAL (somewhat like Morning Star Boys' Ranch), valid or not. Whether or not the Morning Star objection is well taken, they are an example of precisely the kind of claimant who rejects the notion that the Settlement Agreement and the Proposed Order apply to them. If a claimant similar to Morning Star does come forward, such action could potentially trigger the indemnity provision of the Settlement Agreement, resulting in, at the very least, GENERAL making an administrative claim for attorneys fees. This potential burden upon the estate not only affects distributions to creditors, but might even affect the $5.25 million settlement sum which, according to the Proposed Order, can be utilized upon a Bankruptcy Court order, presumably paying administrative claims ahead of unsecured creditor claims.

11. The same concerns arise from the definition of Tort Claims in Recital 1 to the Settlement Agreement, which defines them as follows: "'Tort Claims' shall refer to any and all such claims or interests[4], past, present or future, directly or indirectly, including those for indemnity, contribution or otherwise, arising out of such allegations and/or claims." Id. There exists the potential for other claimants who are not victims asserting claims against the Diocese for sexual or physical abuse (similarly situated to Morning Star Boys' Ranch) to share in the settlement proceeds

---

[4] The Claims referred to are defined in the same recital as: "various acts or omissions, including, without limitation, those related to sexual and/or physical abuse committed by priests or other personnel, for which those entities or individuals seek or may seek to hold the Debtor liable...."

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT    -6-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

1. simply because of the manner in which the Settlement Agreement defines Tort Claims. To the extent that other claimants could or can diminish the settlement proceeds available to the victims, the Settlement Agreement may not survive an 11. U.S.C. § 363(e) challenge, as the victims would not have received the adequate protection that section of the Bankruptcy Code requires.

12. The definition of Tort Claim also raises the possibility that any non victim or survivor who is subject to a Tort Claim may have a claim to the $5.25 million settlement amount. The ramifications include the potential that this fund might not be able to be disbursed until all indemnity claims of third party defendants are resolved and that the Diocese could use these funds to pay defense costs incurred subsequently. Conversely, the Settlement Agreement provides that holders of Tort Claims are not third party beneficiaries of the Settlement Agreement, even though the Settlement Agreement purports to provide that the $5.25 million be used "solely toward payment for indemnity for Tort Claims." Section B.3 That inconsistency would potentially deprive the holders of Tort Claims of standing to object to the use of those funds.

13. The Settlement Agreement and Proposed Order also contain provisions that may be illegal or unenforceable, or both.

14. As the Motion acknowledges (p. 25), there may be an issue as to whether the sale of the GENERAL policies and the proposed "buy back" violates Section 48.18.320 of the Revised Code of Washington. See, e.g., American Continental Ins. Co. v. Steen, 91 P.3d 864 (2004). It is the Diocese's position that the GENERAL policies are not being voided, but "rather are fully performed, consistent with a reasonable compromise resolution that accurately reflects the value of that performance." Id. at 26. As noted above, the Motion does not provide evidence sufficient to judge whether the Settlement Agreement is indeed a "reasonable compromise" that "reflects the value of that performance."

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT   -7-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

15. There may also be an issue regarding the Bar Order. The Settlement Agreement requires a Bar Order "forever barring all equitable contribution, indemnity, subrogation and other claims by any entity, including, without limitation, any party to the Coverage Litigation, in any way related to or arising out of the Tort Claims or the General Policies...." Section E.2 The Proposed Order states that: The terms of the Settlement Agreement and this Approval Order shall be binding upon the Diocese, the FCR, all holders of Tort Claims, all parties that could now, or in the future assert interests in the General Policies, and all other parties in interest and each of their successors and assigns (including, without limitation, any trustee appointed under the Bankruptcy Code). The Proposed Order also contemplates, as does the Settlement Agreement, a channeling injunction in any plan of reorganization approved by the Bankruptcy Court, that channels all claims filed against the Diocese, as well as GENERAL and its affiliates, into a trust.

16. These provisions may violate case and statutory law. The proposed Bar Order may constitute an impermissible permanent injunction enjoining non-debtor third parties from bringing actions against other non-debtor third parties (*i.e.*, forbidding creditors of the debtor from bringing actions against other creditors of the debtor). See, e.g., In re American Hardwoods, 885 F.2d 621 (9th Cir. 1989). Such a request may also be procedurally defective. See Fed. R. Bankr. P. 7001(7).

///

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT -8-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

17. The Committee for Tort Claimants reserves its right to raise further objections and/or supplement this Objection as further information becomes available.

Dated: August 7, 2006

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

By /s/ James I. Stang
James I. Stang
Iain A.W. Nasatir
Hamid R. Rafatjoo
Attorneys for the Committee of Tort Litigants

Dated: August 7, 2006

ESPOSITO, GEORGE & CAMPBELL PLLC

By  /s/ John W. Campbell
JOHN W. CAMPBELL, WSBA #13798
Attorneys for Committee of Tort Litigants

COMMITTEE OF TORT LITIGANTS' OBJECTION TO
MOTIONS FOR APPROVAL OF SETTLEMENT AGREEMENT  -9-

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231