Shaun M. Cross
Michael Paukert
Gregory J. Arpin
Paine Hamblen LLP
717 W Sprague Ave
Ste 1200
Spokane, WA  99201
(509) 455-6000 Telephone
(509) 838-0007 Facsimile
Attorneys for Debtor

John D. Munding
Crumb & Munding, P.S.
601 W Riverside
Ste 1950
Spokane, WA  99201
(509) 624-6464 Telephone
(509) 624-6155 Facsimile
Attorneys for the Executive
Committee of the
Association of Parishes

The Honorable
Patricia C. Williams
Chapter 11

Joseph E. Shickich, Jr.
George E. Frasier
Riddell Williams P.S.
1001 4th Ave Ste 4500
Seattle WA  98154-1192
(206) 624-3600 Telephone
(206) 389-1708 Facsimile
Attorneys for the Tort
Claimants' Committee

Ford Elsaesser
Elsaesser Jarzabek
Anderson Marks Elliott &
McHugh
123 S Third Street
PO Box 1049
Sandpoint, ID  83864-0855
(509) 263-8517 Telephone
(509) 263-0759 Facsimile
Attorneys for the Executive
Committee of the
Association of Parishes

Gayle E. Bush
Bush, Strout & Kornfeld
601 Union St Ste 5500
Seattle WA  98101-2373
(206) 521-3859 Telephone
(206) 292-2104 Facsimile
Attorneys for the Future
Claims Representative

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| In re<br><br>THE CATHOLIC BISHOP OF SPOKANE a/k/a THE CATHOLIC DIOCESE OF SPOKANE,<br><br>Debtor. | Case No.  04-08822-PCW-11<br><br>**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION JOINTLY PROPOSED BY EXECUTIVE COMMITTEE OF THE ASSOCIATION OF PARISHES, DEBTOR, FUTURE CLAIMS REPRESENTATIVE AND TORT CLAIMANTS' COMMITTEE**<br><br>Dated:  March 7, 2007 |

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -1
291/526060.82
030707 1145/62174.00001

# TABLE OF CONTENTS

Page

ARTICLE 1    INTRODUCTION ......................................................................... 2

ARTICLE 2    DEFINITIONS ............................................................................ 2

ARTICLE 3    UNCLASSIFIED CLAIMS ............................................................ 14

3.1    Administrative Expense Claims ...................................................... 14

3.2    Priority Tax Claims ........................................................................ 15

3.3    Unclassified Claims not impaired .................................................. 15

ARTICLE 4    CLASSIFICATION OF CLAIMS .................................................. 15

4.1    Classification ................................................................................ 16

4.2    Classes ........................................................................................ 16

ARTICLE 5    TREATMENT OF CLASS 1 CLAIMS .......................................... 16

5.1    Distribution ................................................................................... 16

5.2    Impairment ................................................................................... 16

ARTICLE 6    TREATMENT OF CLASS 2 CLAIMS .......................................... 17

6.1    Distribution ................................................................................... 17

6.2    Impairment ................................................................................... 17

ARTICLE 7    TREATMENT OF CLASS 3 CLAIMS .......................................... 17

7.1    Distribution ................................................................................... 17

7.2    Disputed Claims ........................................................................... 17

7.3    Retention of Liens ........................................................................ 17

7.4    Impairment ................................................................................... 17

ARTICLE 8    TREATMENT OF CLASS 4 CLAIMS .......................................... 17

8.1    Distribution ................................................................................... 17

8.2    Impairment ................................................................................... 17

ARTICLE 9    TREATMENT OF CLASS 5 CLAIMS .......................................... 18

9.1    Distribution and Security ............................................................... 18

9.2    Allowance ..................................................................................... 19

9.3    Impairment ................................................................................... 19

ARTICLE 10    TREATMENT OF CLASS 6 CLAIMS ........................................ 19

10.1    Distribution ................................................................................. 19

10.2    Impairment ................................................................................. 19

ARTICLE 11    TREATMENT OF CLASS 7 CLAIMS ........................................ 19

- (No. ) - I

291/526060.82
030707 1145/62174.00001

11.1   Election of Treatment of Class 7 Claims.........................................20

11.1.1 Election of Convenience Tort Claim, Compromise Tort Claim, Matrix Tort Claim, Litigation Tort Claim or Non-Releasing Litigation Tort Claim Treatment .................20

11.1.1.1   Election and Release ......................................20

11.1.1.2   Complaint by Litigation Tort Claimant and Non-Releasing Litigation Tort Claimants: Release by Non-Releasing Litigation Tort Claimants ..........................................................21

11.1.1.3   Amended Election by Holders of Compromise Tort Claims, Matrix Tort Claims, Litigation Tort Claims and Non-Releasing Litigation Tort Claims ...........22

11.1.1.4   Deemed Election of Matrix Tort Claim or Non-Releasing Litigation Tort Claim Treatment ...............................................24

11.1.2 Deemed Election of Settled Compromise Tort Claim or Settled Matrix Tort Claim Treatment ......................24

11.1.3 FCR Tort Claim and Future Tort Claims ...........................25

11.1.4 Combined Voting ..................................................25

11.2   Allocation of Estate Fund and Release Fund ...............................25

11.2.1 Convenience Fund...............................................26

11.2.2 Compromise Fund ..............................................26

11.2.3 FC Fund.........................................................26

11.2.4 Matrix Fund, Litigation Fund, and Non-Releasing Litigation Fund ......................................................26

11.2.5 Separate Administration........................................28

11.3   Convenience Process.............................................28

11.3.1 Distribution .....................................................28

11.3.2 Allowance ......................................................29

11.4   Compromise Process ...........................................29

11.4.1 Distribution .....................................................29

11.4.1.1   Allowed Compromise Tort Claims ..................29

11.4.1.2   Allowed Settled Compromise Tort Claims ......29

11.4.2 Allowance ......................................................29

**TABLE OF CONTENTS**
**(continued)**

|  |  |  | Page |
|---|---|---|---|
|  | 11.4.2.1 | Compromise Tort Claims | 30 |
|  | 11.4.2.2 | Allowed Settled Compromise Tort Claims | 30 |
| 11.4.3 | Tier 4 Claims | | 30 |
| 11.5 | Matrix Process | | 30 |
| 11.5.1 | Matrix Protocol | | 31 |
| 11.5.2 | Distribution | | 31 |
| 11.5.3 | Allowance | | 31 |
|  | 11.5.3.1 | Settled Matrix Tort Claim | 31 |
|  | 11.5.3.2 | Matrix Tort Claim | 31 |
| 11.6 | Litigation Process | | 31 |
| 11.6.1 | Distribution | | 31 |
|  | 11.6.1.1 | Allowed Litigation Tort Claim | 32 |
|  | 11.6.1.2 | Allowed Non-Releasing Litigation Tort Claim | 32 |
| 11.6.2 | Allowance | | 32 |
| 11.7 | FC Process | | 32 |
| 11.7.1 | FCR Tort Claim | | 32 |
| 11.7.2 | Allowance and Distribution of Future Tort Claims-Initial | | 33 |
|  | 11.7.2.1 | Distribution | 33 |
|  | 11.7.2.2 | Allowance | 33 |
| 11.7.3 | Future Tort Claims-Extended filed after 9th Plan Anniversary | | 36 |
|  | 11.7.3.1 | Allowance | 36 |
|  | 11.7.3.2 | Payment | 36 |
| 11.7.4 | Future Tort Claims Filed after 23th Plan Anniversary Barred | | 37 |
| 11.8 | Effect of disallowance | | 37 |
| 11.9 | Succession to Debtor's rights and duties | | 37 |
| 11.10 | Proof of Abuse | | 39 |
| 11.11 | Determinations by TCR and Requests for Reconsideration | | 39 |
| 11.12 | All Information about Tort Claimants Confidential | | 40 |
| 11.13 | Allowance for voting | | 40 |

iii

291/526060.82
030707 1145/62174.00001

**TABLE OF CONTENTS**
**(continued)**

11.14   Settlement Negotiations ................................................................. 40

11.15   Discretion to Defer or Accelerate Payments .................................... 40

       11.15.1 ........................................................................ Deferral      40

       11.15.2 ................................................................. Acceleration      40

11.16   Impairment........................................................................................ 41

ARTICLE 12       TREATMENT OF CLASS 8 CLAIMS ....................................... 41

12.1   Distribution........................................................................................ 41

12.2   Impairment........................................................................................ 41

ARTICLE 13       PLAN TRUST AGREEMENT; SELECTION OF PLAN
                 TRUSTEE AND TCR .............................................................. 41

13.1   Plan Trust Agreement....................................................................... 41

13.2   Selection Of Plan Trustee and TCR .................................................. 42

13.3   Counsel for Plan Trustee and TCR.................................................... 42

ARTICLE 14       INTENTIONALLY OMITTED .................................................... 42

ARTICLE 15       MEANS OF IMPLEMENTATION OF THE PLAN ..................... 42

15.1   Debtor's Note and Security Agreements ........................................... 42

       15.1.1 Debtor's Loan Documents ......................................... 42

              15.1.1.1       Loan Documents .............................. 42

              15.1.1.2       Collateral ......................................... 43

              15.1.1.3       Payment and Sale and Use of Collateral........ 44

              15.1.1.4       Cross-Default .................................. 46

              15.1.1.5       Execution and Delivery of Notes and
                                    Loan Documents Mandatory .......................... 46

       15.1.2 Allocation of Trust Property.................................... 46

15.2   Revesting of Debtor's Property......................................................... 46

15.3   Sale of Debtor's Interest in Property to and Release Payment
        by the Participating Catholic Entities ............................................... 46

       15.3.1 Sale....................................................................... 47

       15.3.2 Release Payment .................................................. 48

       15.3.3 Title Insurance; Deeds........................................... 48

       15.3.4 Deposit of Cash and Documents; Payments and
                Transfers Mandatory............................................... 49

iv

291/526060.82
030707 1145/62174.00001

# TABLE OF CONTENTS
## (continued)

15.4 Sale of Debtor's Interest in Property to and Release Payment by Parishes....................................................................49

    15.4.1 Sale..................................................................................49

    15.4.2 Release..........................................................................50

    15.4.3 Parishes' Notes and Loan Documents...........................50

        15.4.3.1    Parishes' Notes.........................................50

        15.4.3.3    Execution and Delivery of Notes and Loan Documents Mandatory...........................54

15.5 Disposition of Surplus from Debtor's Note; Subrogation of Parishes........................................................................55

15.6 Contribution among Catholic Entities.....................................55

15.7 Entry of Judgment in the Section 541 Litigation and Disallowance of Related Claims.........................................56

15.8 Insurance Settlements............................................................56

15.9 Future Claims Commitment.....................................................57

    15.9.1 Future Tort Claims-Initial................................................57

    15.9.2 Future Tort Claims-Extended.........................................60

        15.9.2.1    Reorganized Debtor's Obligations............60

        15.9.2.2    Parish Group 1 Obligations......................61

        15.9.2.3    No Obligations of Parish Group 2.............62

        15.9.2.4    Disposition of FC Fund.............................62

15.10 Retention of Rights...............................................................63

15.11 Operative Documents............................................................63

15.12 Exemption from Transfer Taxes............................................64

15.13 Return of Deposits................................................................64

15.14 Unrelated Party Avoidance Actions.......................................65

15.15 Default Interest.....................................................................65

ARTICLE 16      DISTRIBUTIONS............................................65

16.1 Distributions on Business Days...............................................65

16.2 Disputed Claims Reserve........................................................65

16.3 Interest on Claims..................................................................66

16.4 Delivery of Distributions; Unclaimed Distributions.................66

16.5 De Minimis Payments.............................................................67

v

291/526060.82
030707 1145/62174.00001

**TABLE OF CONTENTS**
(continued)

Page

ARTICLE 17      TREATMENT OF EXECUTORY CONTRACTS ........................ 67

     17.1    Motion to Assume and Reject ........................................ 67

     17.2    Rejection Claims ............................................................. 68

ARTICLE 18      SATISFACTION AND CANCELLATION OF
                         INDEBTEDNESS ........................................................... 68

ARTICLE 19      CONDITIONS TO EFFECTIVE DATE ................................. 68

     19.1    Proponents' Conditions to Occurrence of Effective Date ............... 68

     19.2    Insurer's Conditions to Occurrence of Effective Date ................... 69

     19.3    Deadline for Satisfaction of Conditions; Effect of Failure to
              Satisfy Conditions ........................................................... 69

ARTICLE 20      EFFECTS OF CONFIRMATION ............................................. 69

     20.1    Discharge ........................................................................ 69

     20.2    Exculpation and Limitation of Liability ............................. 69

     20.3    Permanent Injunction Against Prosecution of Released Claims ..... 70

     20.4    Settling Insurer Injunction ................................................ 71

     20.5    No Release of Other Entities or Policies ........................ 72

ARTICLE 21      MODIFICATION OF PLAN ..................................................... 73

ARTICLE 22      PROCEDURES FOR RESOLVING DISPUTED CLAIMS ......... 73

     22.1    Objections to Claims except Tort Claims ....................... 73

     22.2    Disputed Distribution ...................................................... 74

     22.3    Ex Parte Approval........................................................... 74

ARTICLE 23      RETENTION OF JURISDICTION ......................................... 74

     23.1    Retained Jurisdiction ...................................................... 74

ARTICLE 24      REORGANIZATION OF DEBTOR ....................................... 77

     24.1    Continued Corporate Existence ..................................... 77

     24.2    Management of Reorganized Debtor ............................. 77

ARTICLE 25      GENERAL PROVISIONS ..................................................... 77

     25.1    Administrative Expense Claims Bar Date ..................... 77

     25.2    Bar Date for Professionals ............................................ 78

     25.3    Post Confirmation Professional Fees ............................ 78

     25.5    Payments Shall Be Timely ............................................. 79

     25.6    Stay of Confirmation Order Shall Not Apply ................. 79

291/526060.82
030707 1145/62174.00001

**TABLE OF CONTENTS**
(continued)

Page

25.7  Governing Law .................................................................... 79

25.8  Extension Of Payment Dates........................................... 80

25.9  Notices .................................................................................. 80

25.10 Closing of the Case ........................................................... 80

25.11 Interest ................................................................................. 80

25.12 Additional Assurances ..................................................... 80

25.13 Cramdown ............................................................................ 80

25.14 Fractional Dollars.............................................................. 81

25.15 Dissolution of Committees and termination of FCR ...... 81

25.16 Headings .............................................................................. 81

25.17 Successors and Assigns ................................................. 81

ARTICLE 26      NON-MONETARY UNDERTAKINGS OF DEBTOR ................ 82

ARTICLE 27      REQUEST FOR CONFIRMATION............................................ 84

291/526060.82
030707 1145/62174.00001

04-08822-FPC11     Doc 1774     Filed 03/07/07     Entered 03/07/07 15:13:55     Pg 8 of 45

**ARTICLE 1**
**INTRODUCTION**

1.1     The Executive Committee of the Association of Parishes, the Debtor, the Future Claims Representative and the Tort Claimants' Committee propose the following Plan of Reorganization.

1.2     ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE REORGANIZATION CASE AND THE PREPETITION PERIOD, AND A SUMMARY AND ANALYSIS OF THE PLAN.  NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

1.3     The Court has scheduled the Confirmation Hearing for approval of the Plan on _____, 2007.

**ARTICLE 2**
**DEFINITIONS**

2.1     Definitions.  Capitalized terms in this Plan which are not defined in this Article 2 are defined in §§101 and 1101 of the Bankruptcy Code and Bankruptcy Rule 9001.

2.2     Abuse means inappropriate contacts or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, when the child or nonconsenting adult is being used by the adult as an object of sexual gratification for the adult.  A child or nonconsenting adult is abused whether

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -2
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 9 of 45

or not this activity involves explicit force, whether or not it involves genital or physical contact, and whether or not there is physical harm to the child or nonconsenting adult.  This definition shall not constitute a waiver of any statute of limitations or other defense that would otherwise be available to the Debtor or the Reorganized Debtor under applicable law and the provisions of this Plan with respect to Claims for Abuse that occurred after the Petition Date.

2.3   <u>Abused</u> means being subjected to Abuse.

2.4   <u>Administrative Expense Claim</u> means a Claim entitled to priority under §507(a)(1) of the Bankruptcy Code, including (a) Claims incurred by Debtor since the Petition Date of a type described in §503(b) of the Bankruptcy Code, (b) all Claims of a Professional Person and (c) all fees and charges assessed against the Estate under 28 U.S.C. §1930.

2.5   <u>Allowed Claim</u> means (i) any Claim which has been listed by Debtor in its Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim allowed under Article 11 of this Plan, (iii) any Claim which is not a Disputed Claim, (iv) any Ordinary Course Administrative Expense Claim which is not a Disputed Claim, (v) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtor or the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court, (vi) any Claim which, if a Disputed Claim, has been allowed by a Final Order, or (vii) any other Claim which has been allowed by a Final Order; provided, however, that any Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an Allowed Claim hereunder.  Any party in interest shall have the same right to object to an amendment of Debtor's schedules as to a

proof of claim, and any Claim covered by such amendment as to which an objection has been filed shall not become an Allowed Claim until allowed by a Final Order. A reference to a specific class of Claims in conjunction with the word "Allowed" (e.g., Allowed General Unsecured Claim) incorporates this definition of Allowed Claims.

2.6    Allowed Future Tort Claim-Extended is defined in Article 11.7.3.1.

2.7    Allowed Future Tort Claim-Initial is defined in Article 11.7.2.1.

2.8    AOP means the Executive Committee of the Association of Parishes.

2.9    Avoidance Actions means any action seeking to avoid any transfer of an interest of Debtor in property, or any obligation incurred by Debtor, that is avoidable pursuant to applicable law and the provisions of the Plan, including without limitation actions pursuant to §§544, 545, and 547-550 of the Bankruptcy Code.

2.10   Ballot means the ballot approved by the Bankruptcy Court to accompany the Plan and Disclosure Statement which shall be sent to all Creditors entitled to vote on the Plan.

2.11   Ballot Deadline is defined in Article 11.1.1.1.

2.12   Bankruptcy Code means Title 11 of the United States Code, 11 U.S.C. §§101, et seq., as amended.

2.13   Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of Washington.

2.14   Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. 2075, as amended.

2.15   Bar Date means the date established by the Court's Order Fixing Time For Filing Proofs Of Claim Or Interest, which set March 10, 2006 as the date by which a proof of claim must be filed.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -4
291/526060.82
030707 1145/62174.00001

2.16    Business Day means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

2.17    Cash means United States currency or other immediately available funds denominated in United States currency.

2.18    Catholic Entities means any entity in any way related to or affiliated with Debtor which is listed in Schedule 2.18.

2.19    Catholic Entity Property is defined in Article 15.3.1.

2.20    Claim means "claim" as defined in Bankruptcy Code §101(5).

2.21    Claim Payment Date means, as to any Claim, 30 days after the latter of the Effective Date or the date on which such Claim becomes an Allowed Claim.

2.22    Class means each of the classifications of Claims and Interests described in Article 4 of the Plan.

2.23    Closing Date means the date which is 30 days after the later of (i) the date on which the Confirmation Order was entered or (ii) the date on which any stay of the Confirmation Order entered within 30 days after the date on which the Confirmation Order was entered terminates.

2.24    Committees.  This term will refer to the TCC and the TLC, collectively.

2.25    Confirmation Date means the date on which the Bankruptcy Court enters the Confirmation Order on the Court's docket.

2.26    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code §1129.

2.27    Compromise Fund is defined in Article 11.2.2.

2.28    Compromise Process is defined in Article 11.4.

2.29    Compromise Tort Claim is defined in Article 11.1.1.

2.30    Convenience Fund is defined in Article 11.2.1.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -5
291/526060.82
030707 1145/62174.00001

2.31    Convenience Process is defined in Article 11.3.

2.32    Convenience Tort Claim is defined in Article 11.1.1.

2.33    Creditor means "creditor" as defined in Bankruptcy Code §101(10).

2.34    Debtor means The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, a Washington corporation sole.

2.35    Debtor's Collateral is defined in Article 15.1.1.2.

2.36    Debtor's DOT is defined in Article 15.1.1.1.

2.37    Debtor's Loan Documents is defined in Article 15.1.1.1.

2.38    Debtor's Note is defined in Article 15.1.1.

2.39    Declaratory Relief Action means Cause No. 05 CV 00075 JLQ pending before the Honorable Justin L. Quackenbush in District Court.

2.40    Deposit and Loan Claims means Parish and Catholic Entity Secured and Unsecured Claims for deposits to Debtor's Deposit and Loan Fund.

2.41    Disallowed means, with respect to a Claim, such Claim or any portion thereof which has been disallowed by a Final Order.

2.42    Discharged Claims is defined in Article 20.1.

2.43    Disclosure Statement means the Proponents' Disclosure Statement approved by the Court for submission to Creditors with this Plan.

2.44    Disputed Claim means a Claim other than a Tort Claim scheduled as a disputed or contingent Claim, and a Claim other than a Tort Claim for which a proof of claim has been filed and as to which an objection has been or hereafter is timely filed and which objection has not been withdrawn and has not been denied by a Final Order of the Bankruptcy Court.

2.45     Disputed Claims Reserve is defined in Article 16.2.

2.46     District Court means the United States District Court for the Eastern District of Washington.

2.47     DLF Loans is defined in Article 9.1.

2.48     Effective Date means the first Business Day on which the conditions specified in Article 19 of the Plan have been satisfied or waived.

2.49     Estate means the bankruptcy estate of the Debtor created under Bankruptcy Code §541.

2.50     Estate Fund is defined in Article 15.1.2.

2.51     Estate's Portion of Catholic Entity Payments is defined in Article 15.3.1.

2.52     Estate's Portion of Parishes' Notes is defined in Article 15.4.1.

2.53     Executory Contract means every unexpired lease and other contract which is subject to being assumed or rejected by the Debtor under Bankruptcy Code §365, pursuant to the Plan or pursuant to separate motion.

2.54     FC DOT is defined in Article 15.9.

2.55     FC Fund is defined in Article 11.2.3.

2.56     FC Loan Documents is defined in Article 15.9.

2.57     FC Process is defined in Article 11.7.

2.58     FCR Tort Claim means the Tort Claim held by the FCR.

2.59     FCR means Gayle E. Bush, the Future Claims Representative appointed by order of the Bankruptcy Court on June 17, 2005.

2.60     Final Order means an (i) order or judgment of the Bankruptcy Court or of the District Court as to which the time for appeal has expired without a notice of appeal having been filed or, if a notice of appeal has been filed, as to which such appeal has been finally resolved, or (ii) a final determination by the TCR (in

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -7
291/526060.82
030707 1145/62174.00001

the case of estimation of Matrix Tort Claims, Litigation Tort Claims and

Non-Releasing Litigation Tort Claims pursuant to Article 11.2.4, a final

determination by the TCR with respect to which a timely motion to review such

estimation has not been filed or has been determined by an order or judgment of

the Bankruptcy Court or of the District Court as to which the time for appeal has

expired without a notice of appeal having been filed or, if a notice of appeal has

been filed, as to which such appeal has been finally resolved).

2.61    Finally Determined means, with respect to a Claim, a Claim which

has been Allowed or Disallowed by a Final Order; and, with respect to a Litigation

Tort Claim, a Non-Releasing Litigation Tort Claim or a Future Tort Claim the holder

of which has elected to proceed under the FTC Litigation Process, a Claim which

has been settled by agreement between the holder of such Claim and the Plan

Trustee.

2.62    FTC Compromise Process is defined in Article 11.7.2.2.1.

2.63    FTC Litigation Process is defined in Article 11.7.2.2.3.

2.64    FTC Matrix Process is defined in Article 11.7.2.2.2.

2.65    FTC Parish Group 1 is defined in Article 15.9.

2.66    FTC Parish Group 2 is defined in Article 15.9.

2.67    Intentionally left blank.

2.68    Future Claims Commitment is defined in Article 15.9.

2.69    Future Tort Claimant means a person (i) who knew that he or she

had an incident of sexual contact/touching, sexual abuse, or sexual misconduct by

an alleged agent of the Debtor while the person was a minor yet, prior to the Bar

Date, failed to make the connection between such incident and injuries arising

therefrom, (ii) who, prior to the Bar Date, had not discovered or could not have

reasonably discovered that, as a minor, he or she had an incident of sexual

contact/touching, sexual abuse, or sexual misconduct by an alleged agent of the Debtor, or (iii) who did not reach the age of eighteen prior to the Bar Date who had claims for sexual abuse by an alleged agent of the Debtor.

2.70    Future Tort Claims means Tort Claims held by Future Tort Claimants.

2.71    Future Tort Claim-Extended is defined in Article 11.7.3.1.

2.72    Future Tort Claim-Initial is defined in Article 11.7.2.1.

2.73    General Unsecured Claim means an Unsecured Claim against the Debtor (including, but not limited to, a Claim arising from the rejection of an Executory Contract, a Claim which is the undersecured portion of any Secured Claim, and the Unsecured Claim of Immaculate Heart Retreat Center in the amount of $1,268), which is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Employee Unsecured Claim, a Priority Unsecured Claim, a General Unsecured Convenience Claim, a Parish and Catholic Entity Secured and Unsecured Claim, a Tort Claim, or a Priest Retirement Claim.

2.74    General Unsecured Convenience Claim means a General Unsecured Claim in an amount of $500 or less, and a General Unsecured Claim of more than $500 as to which the holder of such Claim irrevocably elects on such holder's Ballot to reduce the amount of such Claim to $500.

2.75    Initial Proportion is defined in Article 11.2.

2.76    Insurance Settlements is defined in Article 15.8.

2.77    Insurers is defined in Article 15.8.

2.78    Insurer Parties is defined in Article 20.4.

2.79    Interim Payments is defined in Article 3.1.5.

2.80    Litigation Fund is defined in Article 11.2.4.

2.81    Litigation Process is defined in Article 11.6.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -9
291/526060.82
030707 1145/62174.00001

2.82    Litigation Tort Claim is defined in Article 11.1.1.1.

2.83    Matrix Protocol means the Matrix Protocol for Compensation of Sexual Abuse Claims attached as Schedule 2.83.

2.84    Matrix Fund is defined in Article 11.2.4.

2.85    Matrix Process is defined in Article 11.5.

2.86    Matrix Tort Claim is defined in Article 11.1.1.1.

2.87    Non-Releasing Litigation Fund is defined in Article 11.2.4.

2.88    Non-Releasing Litigation Tort Claim is defined in Article 11.1.1.1.

2.89    Note 2 Parishes is defined in Article 15.4.3.1.2.

2.90    Ordinary Course Administrative Expense Claim means any Claim described in Bankruptcy Code §503(b) incurred by Debtor in the ordinary course of business since the Petition Date.

2.91    Parish means a Parish listed in Schedule 2.91, including any Parish school or other ministry operated by such Parish, and Immaculate Heart Retreat Center.

2.92    Parish and Catholic Entity Secured and Unsecured Claim means any Secured or Unsecured Claim held by a Parish or Catholic Entity, except the Unsecured Claim of Immaculate Heart Retreat Center in the amount of $1,268.

2.93    Parish Collateral is defined in Article 15.4.3.2.

2.94    Parish Group 1 Collateral is defined in Article 15.9.

2.95    Parish Group 2 Collateral is defined in Article 15.9.

2.96    Parish Entity is defined in Article 15.4.1.

2.97    Parish Property is defined in Article 15.4.1.

2.98    Parishes' Loan Documents is defined in Article 15.4.3.2.

2.99    Parishes' Notes is defined in Article 15.4.3.1.3.

2.100   Parishes' Note 1 is defined in Article 15.4.3.1.1.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -10
291/526060.82
030707 1145/62174.00001

04-08822-FPC11     Doc 1774     Filed 03/07/07     Entered 03/07/07 15:13:55     Pg 17 of 45

2.101 <u>Parishes' Note</u> 2 is defined in Article 15.4.3.1.2.

2.102 <u>Parish Note 3</u> is defined in Article 15.4.3.1.3.

2.103 <u>Parish's DOT</u> is defined in Article 15.4.3.1.2.

2.104 <u>Participating Catholic Entities</u> means the entities identified on Schedule 2.104.

2.105 <u>Participating Parish</u> means a Parish listed in Schedule 2.105.

2.106 <u>Payment Agreement</u> is defined in Article 15.9.

2.107 <u>Permanent Injunction</u> is defined in Article 20.3.

2.108 <u>Person</u> means "person" as defined in Bankruptcy Code §101(41), and all governmental units.

2.109 <u>Petition Date</u> means December 6, 2004, which is the date the Debtor filed a voluntary Chapter 11 petition commencing the Reorganization Case.

2.110 <u>Petition</u> means the petition by which the Debtor commenced the Reorganization Case.

2.111 <u>Plan</u> means this Plan of Reorganization, and every restatement, amendment, or modification thereof, if any.

2.112 <u>Plan Trust</u> means the trust that will be created under the Plan Trust Agreement pursuant to Washington law and the Plan.

2.113 <u>Plan Trust Agreement</u> means the Plan Trust Agreement in form and substance acceptable to Proponents and approved by the Bankruptcy Court in the Confirmation Order.

2.114 <u>Plan Trust Costs and Expenses</u> is defined in Article 11.2.

2.115 <u>Plan Trustee</u> means the trustee provided for in Article 13.2.

2.116 <u>Plan Trust Reserve</u> is defined in Article 11.2.

2.117 <u>Post Confirmation Fees</u> is defined in Article 25.3.

2.118 <u>Post Petition Abuse Claim</u> means a Claim for Abuse that occurred after the Petition was filed and before the Effective Date.

2.119 <u>Priest Retirement Claims</u> means the legal, equitable and contractual rights of the Priests arising under the Priest Retirement Plan.

2.120 <u>Priest Retirement Plan</u> means the Retirement Plan Agreement for the Priests of the Catholic Diocese of Spokane, as it may be amended from time to time, a copy of which is available from Debtor on request.

2.121 <u>Priority Employee Unsecured Claim</u> means every Unsecured Claim of an employee of the Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, which is entitled to priority pursuant to Bankruptcy Code §507(a)(4) and (5).

2.122 <u>Priority Tax Claim</u> means every Unsecured Claim or portion thereof which is entitled to priority pursuant to Bankruptcy Code §507(a)(8).

2.123 <u>Priority Unsecured Claim</u> means an Unsecured Claim entitled to priority pursuant to Bankruptcy Code §507(a)(6) and (7).

2.124 <u>Professional Fees</u> means fees and costs of a Professional Person.

2.125 <u>Professional Person</u> means a person employed pursuant to §§327, 328, and 1103 of the Bankruptcy Code and Bankruptcy Rules 2014.

2.126 <u>Proponents</u> means the AOP, the Debtor, the FCR and the TCC.

2.127 <u>Questionnaire</u> means a questionnaire in the form agreed to by the Proponents and the TLC.

2.128 <u>Release Fund</u> is defined in Article 15.1.2.

2.129 <u>Release of Claims</u> is defined in Article 11.1.1.

2.130 <u>Released Parties</u> is defined in Article 20.3.

2.131 <u>Release Portion of Catholic Entity Payments</u> is defined in Article 15.3.2.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -12
291/526060.82
030707 1145/62174.00001

2.132  <u>Release Portion of Parishes' Note</u> is defined in Article 15.4.2.

2.133  <u>Reorganization Case</u> means the case under Chapter 11 of the Bankruptcy Code which was commenced by the filing of a voluntary Chapter 11 petition by the Debtor on the Petition Date.

2.134  <u>Reorganized Debtor</u> means the Debtor, from and after the Effective Date.

2.135  <u>Responsible Person</u> means a person (i) who was a Priest, an employee or other agent of the Debtor or any Parish at the time such person committed an act of Abuse, or (ii) for whom or for whose actions the Debtor or any Parish was otherwise legally liable at the time of such Abuse.

2.136  <u>Section 541 Litigation</u> means Adversary Proceeding No. 05-80038 filed by the TLC against the Debtor, the Parishes and other parties on February 4, 2005, and Adversary Proceeding No. 04-00291 filed by Michael Shea against the Debtor on December 22, 2004.

2.137  <u>Secured Claim</u> means every Claim, the repayment of which is secured by the assets of the Debtor to the extent of the lesser of the value of such security or the amount of the Claim, including any right to setoff asserted by a Creditor that is treated as a Secured Claim under the Bankruptcy Code, except a Parish and Catholic Entity Secured and Unsecured Claim.

2.138  <u>Secured Creditor</u> means every Creditor which holds a Secured Claim.

2.139  <u>Settled Compromise Tort Claim</u> is defined in Article 11.1.2.

2.140  <u>Settled Matrix Tort Claim</u> is defined in Article 11.1.2.

2.141  <u>TCC</u> means the Official Committee of Tort Claimants appointed by the U.S. Trustee on December 23, 2004, as reconstituted on February 2, 2005, to

represent the interests of Tort Claimants who, as of the Date of Filing, had not filed a lawsuit against the Debtor, excluding Future Tort Claimants.

2.142 <u>TCR</u> means the Tort Claim Reviewer provided for in Article 13.2.

2.143 <u>Termination Reserve</u> is defined in Article 15.5.

2.144 <u>TLC</u> means the Official Committee of Tort Litigants appointed by the U.S. Trustee on February 2, 2005, to represent the interests of all persons who had asserted a Tort Claim against the Debtor and who had filed a lawsuit against the Debtor, as of the Date of Filing.

2.145 <u>Tort Claim</u> means all Claims related to or arising out of Abuse by a Responsible Person, and shall include all Future Tort Claims.

2.146 <u>Tort Claimant</u> means a Person who asserts a Tort Claim, including Future Tort Claimants.

2.147 <u>Trust Property</u> is defined in Article 15.1.1.3.

2.148 <u>Unsecured Claim</u> means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

**ARTICLE 3**
**UNCLASSIFIED CLAIMS**

3.1 <u>Administrative Expense Claims</u>. Each holder of an Allowed Administrative Expense Claim shall be paid in full in Cash by the Reorganized Debtor on the Claim Payment Date, except:

3.1.1 as otherwise ordered by the Court;

3.1.2 an Ordinary Course Administrative Expense Claim shall be deemed allowed in the amount shown in the records of Debtor unless such Claim is a Disputed Claim, and such Claim shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreement governing such Claim;

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -14
291/526060.82
030707 1145/62174.00001

3.1.3    a Post Petition Abuse Claim shall be determined, and, if sustained, paid pursuant to applicable non-bankruptcy law.

3.1.4    to the extent that a holder of an Allowed Administrative Expense Claim has agreed to a different treatment of such Claim; and

3.1.5    in the case of Professional Fees, on the date when the order of the Bankruptcy Court allowing such Claim becomes a Final Order.  On or before September 14, 2006, the Debtor made interim payments to Professional Persons pursuant to an Order Granting Motion for Order Establishing Interim Fee Application and Expense Reimbursement Procedure entered by the Bankruptcy Court on February 2, 2005 ("Interim Payments").  To the extent the total payments of Allowed Administrative Expense Claims for Professional Fees incurred on or before the Effective Date of Professional Persons whose employment was approved by the Bankruptcy Court on or before September 14, 2006, and of the person designated in Article 13.2 as the TCR, exceeds the Interim Payments, the amount in excess of the Interim Payments shall reduce pro tanto the amount of the $48 million Debtor's Note.

3.2    Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim shall be paid in full in Cash by the Reorganized Debtor, including interest of 5% per annum from the Claim Payment Date, pursuant to the provisions of Bankruptcy Code §1129(a)(9)(C) in equal quarterly installments over a period which begins on the first day of the fourth calendar month after the Claim Payment Date and ends at the end of a six year period from the date of assessment of such Claim.

3.3    Unclassified Claims not impaired.  Administrative Claims and Priority Tax Claims are not impaired under the Plan.

**ARTICLE 4**
**CLASSIFICATION OF CLAIMS**

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -15
291/526060.82
030707 1145/62174.00001

4.1   <u>Classification</u>.  All Claims against Debtor except Unclassified Claims are classified as set forth in this Article 4.  A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

4.2   <u>Classes</u>.  For purposes of the Plan, Claims against the Debtor are hereby classified in the following classes in accordance with Bankruptcy Code §1122(a) as follows:

4.2.1   <u>Class 1</u>.  Priority Employee Unsecured Claims.

4.2.2   <u>Class 2</u>.  Priority Unsecured Claims.

4.2.3   <u>Class 3</u>.  Secured Claims.

4.2.4   <u>Class 4</u>.  General Unsecured Convenience Claims.

4.2.5   <u>Class 5</u>.  Deposit and Loan Claims and Other Parish and Catholic Entity Secured and Unsecured Claims.

4.2.6   <u>Class 6</u>.  General Unsecured Claims.

4.2.7   <u>Class 7</u>.  Tort Claims.

4.2.8   <u>Class 8</u>.  Priest Retirement Claims.

**ARTICLE 5**
**TREATMENT OF CLASS 1 CLAIMS**
**(PRIORITY EMPLOYEE UNSECURED CLAIMS)**

5.1   <u>Distribution</u>.  Each holder of an Allowed Priority Employee Unsecured Claim shall be treated by the Reorganized Debtor in accordance with the policies and procedures regarding each item comprising such Claim in effect on the latter of Claim Payment Date or the date which is 30 days after the date on which such Claim would have become matured and liquidated but for the filing of the Petition.

5.2   <u>Impairment</u>.  Class 1 Claims are not impaired under the Plan.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -16
291/526060.82
030707 1145/62174.00001

**ARTICLE 6**
**TREATMENT OF CLASS 2 CLAIMS**
**(PRIORITY UNSECURED CLAIMS)**

6.1     Distribution.  Each holder of an Allowed Priority Unsecured Claim shall be paid in full in Cash by the Reorganized Debtor on the Claim Payment Date.

6.2     Impairment.  Class 2 Claims are not impaired under the Plan.

**ARTICLE 7**
**TREATMENT OF CLASS 3 CLAIMS**
**(SECURED CLAIMS)**

7.1     Distribution.  Each holder of an Allowed Secured Claim shall be paid in full in Cash by the Reorganized Debtor on or before the Claim Payment Date.

7.2     Disputed Claims.  Notwithstanding the pendency of any appeal to any state or local taxing authorities of a determination of property taxes or assessment on the Petition Date, nothing contained herein will prohibit the Debtor or the Reorganized Debtor from exercising its rights pursuant to Bankruptcy Code §505 and having a Class 3 Claim determined by the Bankruptcy Court to the extent that such Claim is a Disputed Claim.

7.3     Retention of Liens.  Each Holder of an Allowed Secured Claim shall retain its lien(s) on its security to the extent of its Allowed Secured Claim.

7.4     Impairment.  Class 3 Claims are not impaired under the Plan.

**ARTICLE 8**
**TREATMENT OF CLASS 4 CLAIMS**
**(GENERAL UNSECURED CONVENIENCE CLAIMS)**

8.1     Distribution.  Each holder of an Allowed General Unsecured Convenience Claim shall be paid in full in Cash by the Reorganized Debtor on or before the Claim Payment Date.

8.2     Impairment.  Class 4 Claims are not impaired pursuant to the Plan.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -17
291/526060.82
030707 1145/62174.00001

**ARTICLE 9**
**TREATMENT OF CLASS 5 CLAIMS**
**(DEPOSIT AND LOAN CLAIMS AND OTHER PARISH AND CATHOLIC ENTITY**
**SECURED AND UNSECURED CLAIMS)**

9.1     <u>Distribution and Security</u>.  On the Effective Date, the Reorganized

Debtor shall, without representation or warranty, assign to an entity acceptable to

the Proponents, in trust for the benefit of each holder of an Allowed Deposit and

Loan Claim, all then outstanding loans payable to the Debtor's Deposit and Loan

Fund ("DLF Loans"), subject to the first and second priority security interests

granted to the Plan Trustee by the Debtor's Loan Documents and the FC Loan

Documents, and shall instruct all obligors on the DLF Loans to make all payments

directly to such entity.  The Plan Trustee's interest in the DLF Loans and the

proceeds thereof shall be senior to the interest(s) of: (a) any beneficial interest of a

holder of an Allowed Deposit and Loan Claim in the DLF Loans and proceeds

thereof and (b) any holder of a right of setoff.  Such entity shall hold all payments

received on and proceeds of DLF Loans in trust subject to the Plan Trustee's first

and second priority security interests until the date on which the October 1, 2007

$37 million payment and the December 31, 2007 $10 million plus interest payment

on Debtor's Note are paid in full when due and shall invest such payments in short

term obligations of or insured by the United States of America.  After the date on

which the October 1, 2007 $37 million payment and the December 31, 2007 $10

million plus interest payment on Debtor's Note are paid in full when due, such

entity shall distribute all then remaining proceeds of DLF Loans to holders of

Allowed Deposit and Loan Fund Claims in accordance with an agreement between

the Debtor or the Reorganized Debtor and the Parishes and Catholic Entities to be

negotiated outside this Plan, and shall continue to hold, collect and distribute the

proceeds of the DLF Loans for the benefit of all holders of Allowed Deposit and

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -18
291/526060.82
030707 1145/62174.00001

Loan Claims.  The balance due to each holder of an Allowed Deposit and Loan Claim shall be paid in accordance with an agreement between the Debtor or the Reorganized Debtor and the Parishes and Catholic Entities to be negotiated outside this Plan.  Allowed Deposit and Loan Claims shall not be paid in full or in part or offset against the DLF Loans or proceeds thereof before the date on which the October 1, 2007 $37 million payment and the December 31, 2007 $10 million plus interest payment on Debtor's Note are paid in full when due.

9.2    Allowance.  All Deposit and Loan Claims listed in Schedule 9.2 shall be allowed in the amount so listed in full on the Effective Date.  All other Parish and Catholic Entity Secured and Unsecured Claims, including claims for liens on or otherwise related to the Parish Properties, shall be disallowed in full on the Effective Date.

9.3    Impairment.  Class 5 Claims are impaired under the Plan.

**ARTICLE 10**
**TREATMENT OF CLASS 6 CLAIMS**
**(GENERAL UNSECURED CLAIMS)**

10.1    Distribution.  Each holder of an Allowed General Unsecured Claim shall be paid in full in Cash by the Reorganized Debtor in 2 equal installments, plus interest at the rate of 5% per annum from and after the Effective Date, with the first installment to be paid on the later of January 31, 2008 or the first Business Day that is 6 months after the Claim Payment Date, and the second installment to be paid on the later of July 31, 2008 or the first Business Day that is 12 months after the Claim Payment Date.

10.2    Impairment.  The Class 6 General Unsecured Claims are impaired under the Plan.

**ARTICLE 11**
**TREATMENT OF CLASS 7 CLAIMS**
**(TORT CLAIMS)**

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -19
291/526060.82
030707 1145/62174.00001

11.1    Election of Treatment of Class 7 Claims.

        11.1.1    Election of Convenience Tort Claim, Compromise Tort Claim, Matrix Tort Claim, Litigation Tort Claim or Non-Releasing Litigation Tort Claim Treatment.

                11.1.1.1    Election and Release.  Each holder of a Class 7 Tort Claim (except the FCR, Future Tort Claimants, Settled Compromise Tort Claimants, and Settled Matrix Tort Claimants) may elect to be treated as a holder of (i) a "Convenience Tort Claim", which is a Tort Claim to be allowed and paid under the Convenience Process, (ii) a "Compromise Tort Claim", which is a Tort Claim to be allowed and paid under the Compromise Process, (iii) a "Matrix Tort Claim", which is a Tort Claim to be allowed and paid under the Matrix Process, (iv) a "Litigation Tort Claim", which is a Tort Claim to be allowed and paid under the Litigation Process, or (v) a "Non-Releasing Litigation Tort Claim", which is a Tort Claim to be allowed and paid under the Litigation Process. Such election shall be made on such holder's Ballot, and, except in the case of an election of Non-Releasing Tort Claim treatment, executing and delivering to Debtor on or before April 13, 2007 (the "Ballot Deadline") a "Release of Claims" in the form incorporated into the Ballot pursuant to which the Tort Claimant releases all Claims against the Parishes, the Catholic Entities (except Morning Star Boys Ranch) and the Insurers in exchange for the treatment of such Claims under this Plan.  Notwithstanding the foregoing, if before or after the Effective Date the holder of a Class 7 Tort Claim (except the FCR, Future Tort Claimants, Settled Compromise Tort Claimants and Settled Matrix Tort Claimants) fails to comply with an order of the Bankruptcy Court requiring a sworn oral statement to be given to the person designated in Article 13.2 as the TCR regarding the Abuse suffered by such Claimants, within 30 days after the date set for the taking of such statement

(or such later date agreed to by the TCR or set by the Bankruptcy Court), such holder shall be deemed to have elected to be treated as a holder of a Convenience Tort Claim, which deemed election shall be irrevocable, and to have executed and delivered a Release of Claims.  Counsel for any Tort Claimant who is required to provide a sworn oral statement shall be provided a copy of the Matrix Protocol before such statement is given.

11.1.1.2 <u>Complaint by Litigation Tort Claimant and Non-Releasing Litigation Tort Claimants: Release by Non-Releasing Litigation Tort Claimants</u>.  If holder of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim has not filed a complaint alleging such claim in a court of competent jurisdiction before making an election to be treated as a holder of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim, such holder must file and serve on the Plan Trustee such a complaint within 60 days after the Effective Date.  If a holder of a Litigation Tort Claim does not file such complaint, such holder shall be deemed to have elected to be treated as a holder of a Matrix Tort Claim.  If a holder of a Non-Releasing Litigation Tort Claim does not file such complaint, such holder shall be deemed to have conditionally elected to be treated as a holder of a Matrix Tort Claim.  To complete such conditional election, such holder must execute and deliver to the Debtor a Release of Claims within 60 days after the Effective Date.  Debtor shall give such holder notice within 15 days after the Effective Date of such conditional election and his or her right to complete such conditional election.  If such holder does not execute and deliver to the Debtor a Release of Claims within 60 days after the Effective Date, such holder shall be deemed to have elected to be treated as a holder of a Convenience Tort Claim, which election shall be irrevocable, and to have executed and delivered a Release of Claims.

11.1.1.3  <u>Amended Election by Holders of Compromise Tort Claims, Matrix Tort Claims, Litigation Tort Claims and Non-Releasing Litigation Tort Claims</u>.

11.1.1.3.1 <u>Litigation Tort Claim and Non-Releasing Litigation Tort Claim</u>.  At any time prior to earliest of the date on which the Plan Trustee has filed a dispositive motion with respect to, or trial has commenced on, the Claim of a holder of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim, such holder may amend his or her election to instead elect treatment as the holder of a Convenience Tort Claim, Compromise Tort Claim, or Matrix Tort Claim by delivering a written notice of such election (and in the case of a holder of a Non-Releasing Litigation Tort Claim, a Release of Claims) to the TCR and the Plan Trustee.  Any such amended election shall be irrevocable.  Except as provided in this Article 11.1.1.3.1, an election of treatment as a holder of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim is irrevocable.  Any such amended election shall be deemed to be a consent to a limitation of the amount of any distribution with respect to such holder's Allowed Claim to the lesser of

(a)     the portion of the Litigation Fund or Non-Releasing Litigation Fund which bears the same proportion to the total of such Fund as the amount of such holder's Litigation Tort Claim or Non-Releasing Litigation Tort Claim as estimated under Article 11.2.4 bears to the amount of all Litigation Tort Claim or Non-Releasing Litigation Tort Claim as estimated under Article 11.2.4, minus

(i)     all pre-litigation and litigation Professional Fees and expenses attributable to such Claim which accrued through the date of such amended election, and

(ii)     the portion of all other Plan Trust Costs and Expenses allocated to the Litigation Fund or the Non-Releasing Litigation Fund which accrued through the date of such amended election which bears the same proportion to all such Plan Trust Costs and Expenses as the amount of such holder's Litigation Tort Claim or Non-Releasing Litigation Tort Claim as estimated under Article 11.2.4 bears to the amount of all Litigation Tort Claim or Non-Releasing Litigation Tort Claim as estimated under Article 11.2.4, or

(b)     the distribution such holder would have received if such amended election had been such holder's initial election or deemed election, and such holder's Claim had been included in determining the amount of the applicable Fund (e.g., the Matrix Fund in the case of an amended election to be treated as the holder of a Matrix Tort Claim, etc.) under Article 11.2. The amount so determined shall be transferred from the Litigation Fund or the Non-Releasing Litigation Fund to the Fund from which such amended Claim will be paid.

11.1.1.3.2 Matrix Tort Claim.  At any time prior to final allowance or disallowance of a Matrix Tort Claim, the holder of such Claim may amend his or her election or deemed election to instead elect treatment as the holder of a Convenience Tort Claim or a Compromise Tort Claim by delivering a written notice of such election to the TCR.  Any such amended election shall be irrevocable.  Except as provided in this Article 11.1.1.3.2, an election or deemed election of treatment as a holder of a Matrix Tort Claim is irrevocable.  If the amended Claim is allowed, the allowed amount of such Claim shall be transferred from the Matrix Fund to the Fund from which such amended Claim will be paid.

11.1.1.3.3 Compromise Tort Claim.  At any time prior to final allowance or disallowance of a Compromise Tort Claim, the holder of

such Claim may amend his or her election to instead elect treatment as the holder of a Convenience Tort Claim by delivering a written notice of such election to the TCR. Any such amended election shall be irrevocable. Except as provided in this Article 11.1.1.3.3, an election of treatment as a holder of a Compromise Tort Claim is irrevocable. If the amended Claim is allowed, the allowed amount of such Claim shall be transferred from the Compromise Fund to the Convenience Fund.

11.1.1.4 <u>Deemed Election of Matrix Tort Claim or Non-Releasing Litigation Tort Claim Treatment</u>. Each holder of a Class 7 Tort Claim (except the FCR, Future Tort Claimants, Settled Compromise Tort Claimants, Settled Matrix Tort Claimants and Non-Releasing Litigation Tort Claimants) who does not elect to be treated as a holder of a Convenience Tort Claim, a Compromise Tort Claim, a Matrix Tort Claim or a Litigation Tort Claim by making such election on such holder's Ballot and executing and delivering to Debtor on or before the Ballot Deadline a Release of Claims shall be deemed to have conditionally elected to be treated as a holder of a Matrix Tort Claim. To complete such conditional election, such holder must execute and deliver to the Debtor a Release of Claims within 60 days after the Effective Date. Debtor shall give such holder notice within 15 days after the Effective Date of such conditional election and his or her right to complete such conditional election. If such holder does not execute and deliver to the Debtor a Release of Claims within 60 days after the Effective Date, such holder shall be deemed to have elected to be treated as a holder of a "Non-Releasing Litigation Tort Claim", which is a Tort Claim to be allowed and paid under the Litigation Process. A reference to a Litigation Tort Claim does not include a Non-Releasing Litigation Tort Claim.

11.1.2 <u>Deemed Election of Settled Compromise Tort Claim or Settled Matrix Tort Claim Treatment</u>. A holder of a "Settled Compromise Tort

Claim", which is a Claim settled by Debtor in a stated amount of $45,000 or less listed on Schedule 11.1.2(a) the settlement of which is approved by the Bankruptcy Court under Bankruptcy Rule 9019, shall be deemed to have elected to be treated under the Compromise Process, and shall be required to execute and deliver to Debtor on or before the Ballot Deadline a Release of Claims. A holder of a "Settled Matrix Tort Claim", which is a Claim settled by Debtor in a stated amount more than $45,000 listed on Schedule 11.1.2(b), the settlement of which is approved by the Bankruptcy Court under Bankruptcy Rule 9019, shall be deemed to have elected to be treated under the Matrix Process, and shall be required to execute and deliver to Debtor on or before the Ballot Deadline a Release of Claims. A reference to a Compromise Tort Claim or a Matrix Tort Claim does not include a Settled Compromise Tort Claim or a Settled Matrix Tort Claim, respectively. A holder of a Tort Claim listed on Schedules 11.1.2(a) or (b) the settlement of which is not approved by the Bankruptcy Court under Bankruptcy Rule 9019 may elect to be treated under Articles 11.1.1.

   11.1.3 <u>FCR Tort Claim and Future Tort Claims</u>. The FCR Tort Claim and Future Tort Claims shall be allowed and paid through the FC Process.

   11.1.4 <u>Combined Voting</u>. For purposes of accepting or rejecting the Plan, all Class 7 Tort Claims shall be treated as a single class.

   11.2 <u>Allocation of Estate Fund and Release Fund</u>. As soon as practicable after the Effective Date, the Plan Trustee shall establish a reserve ("Plan Trust Reserve") for the costs and expenses of administration of the Plan Trust, including but not limited to fees and expenses, including Professional Fees, of the TCR and Plan Trustee, Post-Confirmation Professional Fees payable by the Plan Trust pursuant to Article 25.3 and reasonable contingencies ("Plan Trust Costs and Expenses"). From time to time thereafter, the Plan Trustee may increase the Plan

Trust Reserve. The Plan Trust Reserve shall be funded from the Estate Fund and the Release Fund in proportion to the amount of such Funds, after reduction of the amount of the Estate Fund pursuant to Article 15.1.2 to account for certain payments of Allowed Administrative Expense Claims for Professional Fees ("Initial Proportion"). As soon as practicable after the Effective Date, the balance of the Estate Fund and the Release Fund shall be allocated as follows:

11.2.1    Convenience Fund. An amount equal to the sum of all Allowed Convenience Tort Claims, plus a reserve of $15,000 multiplied by the number of Convenience Tort Claims that have not been Finally Determined, to a fund for payment of the aggregate Allowed Convenience Tort Claims ("Convenience Fund"), charged to the Estate Fund and the Release Fund in accordance with the Initial Proportion.

11.2.2    Compromise Fund. An amount equal to the sum of (i) all Allowed Compromise Tort Claims, (ii) all Allowed Settled Compromise Tort Claims, (iii) all Tort Claims listed on Schedule 11.1.2(a) as to which a Bankruptcy Rule 9019 proceeding has not been determined by a Final Order, and (iv) the product of $45,000 multiplied by the number of Compromise Tort Claims that have not been Finally Determined, to a fund for the aggregate Allowed Compromise Tort Claims and Allowed Settled Compromise Tort Claims ("Compromise Fund"), charged to the Estate Fund and the Release Fund in accordance with the Initial Proportion.

11.2.3    FC Fund. $1 million for Allowed Future Tort Claims-Initial ("FC Fund"), charged to the Estate Fund and the Release Fund in accordance with the Initial Proportion.

11.2.4    Matrix Fund, Litigation Fund, and Non-Releasing Litigation Fund. The TCR shall estimate the aggregate amount of the Matrix Tort Claims, Litigation Tort Claims and Non-Releasing Litigation Tort Claims by assigning each

claim to a tier of the Matrix Protocol and utilizing the mean of the range of values for each claim in such tier, and shall mail a summary of the results of such estimation to all holders of Matrix Tort Claims, Litigation Tort Claims, and Non-Releasing Litigation Tort Claims and to their counsel if such counsel has requested such summary in writing from the TCR. Such estimation shall be reviewable by the Bankruptcy Court only on a motion of any party in interest filed within 10 days after the date such summary is mailed by the TCR, and shall be approved unless the moving party proves that the TCR's estimation in the aggregate constitutes an abuse of discretion. The balance of the Estate Fund, net of the portion of the Plan Trust Reserve, the Convenience Fund, the Compromise Fund, and the FC Fund charged to the Estate Fund, shall be finally and conclusively allocated (i) to a fund for payment of the aggregate Allowed Matrix Tort Claims and Allowed Settled Matrix Tort Claims ("Matrix Fund"), (ii) to a fund for the payment of the aggregate Allowed Litigation Tort Claims ("Litigation Fund"), and (iii) to a fund for the payment of the aggregate Allowed Non-Releasing Litigation Tort Claims ("Non-Releasing Litigation Fund") based on the relative proportions of (a) the sum of all estimated Matrix Tort Claims and all Allowed Settled Matrix Tort Claims, (b) the sum of all estimated Litigation Tort Claims, and (c) the sum of all estimated Non-Releasing Litigation Tort Claims. The balance of the Release Fund, net of the portion of the Plan Trust Reserve, the Convenience Fund, the Compromise Fund, and the FC Fund charged to the Release Fund, shall be finally and conclusively allocated to the Matrix Fund and the Litigation Fund based on the relative proportions of (a) the sum of all estimated Matrix Tort Claims and all Allowed Settled Matrix Tort Claims, and (b) the sum of all estimated Litigation Tort Claims.

11.2.5   <u>Separate Administration</u>.  After the Estate Fund and the Release Fund are allocated to a Fund pursuant to this Article 11.2, such Fund shall be separately administered by the Plan Trustee; and all Plan Trust Costs and Expenses of each such Fund, including costs of litigating or otherwise determining Tort Claims potentially payable from such Fund, shall be borne solely by such Fund; provided, however, that if there is any balance remaining in the Compromise Fund or the Convenience Fund after all Allowed Claims payable from such Fund are paid in full, and all Plan Trust Costs and Expenses of such Fund are paid in full, such balance shall be distributed to the Matrix Fund, the Litigation Fund, and the Non-Releasing Litigation Fund in proportion to the original amount of such Funds; provided further, that if there is any balance remaining in the Litigation Fund or the Non-Releasing Litigation Fund after all Allowed Claims payable from such Fund are paid in full, and all Plan Trust Costs and Expenses of such Fund are paid in full, such balance shall be distributed to the Matrix Fund.  If the net proceeds of the liquidation of any item of Trust Property liquidated after allocation to the Matrix Fund, the Litigation Fund, and the Non-Releasing Litigation Fund is different from the fair market value estimated by the Plan Trustee when making such allocation, the difference shall be allocated between such Funds in proportion to the original amount of such Funds after adjustment for any reallocation from the Litigation Fund or the Non-Releasing Litigation Fund to the Matrix Fund under Article 11.1.1.3.1.

11.3   <u>Convenience Process</u>.

11.3.1   <u>Distribution</u>.  Each holder of an Allowed Convenience Tort Claim shall be paid such holder's Allowed Claim in Cash by the Plan Trust from the Convenience Fund on the later of the Claim Payment Date or the date which is

30 days after the date on which a portion of the Estate Fund and a portion of the Release Fund is allocated to the Convenience Fund.

11.3.2    Allowance.  A Convenience Tort Claim shall be allowed in the amount of $15,000 if the TCR determines based on the Tort Claimant's proof of claim in the Bankruptcy Case and, if requested by the TCR, the Tort Claimant's Questionnaire that a preponderance of the evidence shows that the Tort Claimant was Abused.  The TCR shall not consider (i) whether the person who Abused the Tort Claimant was a Responsible Person, (ii) any applicable statute of limitations or the passage of time since the date(s) of such Abuse, or (iii) any other defenses of Debtor, in making such determination.  The TCR may, however, consider the credibility of the Tort Claimant and the facts alleged in support of the Claim.

11.4    Compromise Process.

11.4.1    Distribution.

11.4.1.1 Allowed Compromise Tort Claims.  Each holder of an Allowed Compromise Tort Claim shall be paid the amount of such holder's Allowed Claim in Cash by the Plan Trust from the Compromise Fund on the later of the Claim Payment Date or the date which is 30 days after the date on which a portion of the Estate Fund and a portion of the Release Fund is allocated to the Compromise Fund.

11.4.1.2 Allowed Settled Compromise Tort Claims.  Each holder of an Allowed Settled Compromise Tort Claim shall be paid in Cash the agreed amount of such holder's Claim set forth in Schedule 11.2.1(a) by the Plan Trust from the Compromise Fund on the later of the Claim Payment Date or the date which is 30 days after the date on which a portion of the Estate Fund and a portion of the Release Fund is allocated to the Compromise Fund.

11.4.2    Allowance.

11.4.2.1 <u>Compromise Tort Claims</u>.   A Compromise Tort Claim shall be allowed if the TCR determines that the Tort Claimant has proved by a preponderance of the evidence that Tort Claimant was Abused by a Responsible Person, and that the Tort Claimant's Abuse would fall within one or more of Tiers 1-3 of the Matrix Protocol if the Claim were determined under the Matrix Process. Such Claim shall be allowed in the amount of $45,000 if the TCR determines by a preponderance of the evidence that the holder of such Claim was a minor at the time of such Abuse, and in the amount of $30,000 if the TCR determines by a preponderance of the evidence that the holder of such Claim was an adult at the time of such Abuse.  The TCR shall not consider any applicable statute of limitations, the passage of time since the date(s) of such Abuse, or any other defenses of Debtor, in making such determinations.  The TCR may, however, consider the credibility of the Tort Claimant and the facts alleged in support of the claim.

11.4.2.2 <u>Allowed Settled Compromise Tort Claims</u>.  A Settled Compromise Tort Claim shall be automatically allowed upon the Effective Date in the amount listed on Schedule 11.1.2(a).

11.4.3 <u>Tier 4 Claims</u>.  If the TCR determines by a preponderance of the evidence that the Abuse of a Tort Claimant who has elected to be treated as a Compromise Tort Claim would fall within only Tier 4 of the Matrix Protocol if the Claim were determined under the Matrix Process, such Claimant's Claim shall be determined, and, if allowed, paid under the Convenience Process.  The allowed amount of such Claim shall be transferred from the Matrix Fund to the Convenience Fund.

11.5 <u>Matrix Process</u>.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -30
291/526060.82
030707 1145/62174.00001

11.5.1    <u>Matrix Protocol</u>.  The Matrix Protocol shall be implemented and enforced by the Plan Trustee and the TCR as though fully set forth herein.

11.5.2    <u>Distribution</u>.  Each holder of an Allowed Matrix Tort Claim, and each holder of an Allowed Settled Matrix Tort Claim, shall be paid in Cash by the Plan Trust such holder's pro rata share of the Matrix Fund within 30 days after the later of the date on which all Matrix Tort Claims have been Finally Determined, or the amount of the Matrix Tort Claims has been estimated by a Final Order and the Matrix Fund has been funded.

11.5.3    <u>Allowance</u>.

11.5.3.1  <u>Settled Matrix Tort Claim</u>.  A Settled Matrix Tort Claim shall be automatically allowed upon the Effective Date in the amount set forth in Schedule 11.1.2(b).

11.5.3.2  <u>Matrix Tort Claim</u>.  A Matrix Tort Claim shall be allowed if the TCR determines that the Tort Claimant has proved by a preponderance of the evidence that the Tort Claimant was Abused by a Responsible Person, and does not find that there is clear, cogent and convincing evidence that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington for such Matrix Tort Claim had run on or before December 6, 2004.  If a Matrix Tort Claim is allowed, the TCR shall determine the amount of such Tort Claim by assigning such Tort Claim a value pursuant to the Matrix Protocol.  The TCR may consider the credibility of the Tort Claimant and the facts alleged in support of the Tort Claim and, in the TCR's sole discretion, reduce or deny the Tort Claim.

11.6    <u>Litigation Process</u>.

11.6.1    <u>Distribution</u>.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -31
291/526060.82
030707 1145/62174.00001

11.6.1.1 <u>Allowed Litigation Tort Claim</u>.  Each holder of an Allowed Litigation Tort Claim shall be paid in Cash by the Plan Trust such holder's pro rata share of the Litigation Fund within 30 days after of the later of the date on which all Litigation Tort Claims have been Finally Determined, or the amount of the Litigation Tort Claims has been estimated by a Final Order of the TCR and the Litigation Fund has been funded.

11.6.1.2 <u>Allowed Non-Releasing Litigation Tort Claim</u>.  Each holder of an Allowed Non-Releasing Litigation Tort Claim shall be paid in Cash by the Plan Trust such holder's pro rata share of the Non-Releasing Litigation Fund within 30 days after of the later of the date on which all Non-Releasing Litigation Tort Claims have been Finally Determined, or the amount of the Non-Releasing Litigation Tort Claims has been estimated by a Final Order of the TCR and the Non-Releasing Litigation Fund has been funded.

11.6.2 <u>Allowance</u>.  Allowance of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim shall be determined either by a trial of such Tort Claim conducted by a court of competent jurisdiction (in the case of a Tort Claimant who filed a complaint before the Petition Date, the court in which such complaint is pending), or a settlement between the Tort Claimant and the Plan Trustee.  Any such Litigation Tort Claim or Non-Releasing Litigation Tort Claim is subject to all defenses, including but not limited to the applicable statute of limitations, available to Debtor.  Nothing in this Plan shall affect any right the holder of a Litigation Tort Claim to demand a jury trial under applicable law.

11.7 <u>FC Process</u>.

11.7.1 <u>FCR Tort Claim</u>.  The FCR Tort Claim shall be deemed satisfied when the FC Fund is fully funded and the Future Claims Commitment becomes effective.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -32
291/526060.82
030707 1145/62174.00001

1         11.7.2    <u>Allowance and Distribution of Future Tort Claims-Initial</u>.

2              11.7.2.1  <u>Distribution</u>.  Each holder of an Allowed Future Tort

3    Claim which is filed on or before the 9th anniversary of the Effective Date ("Future

4    Tort Claim-Initial") shall be paid in full in Cash by the Plan Trust from the FC Fund

5    and the proceeds of the Future Claims Commitment, which upon payment shall

6    become part of the FC Fund, within 30 days after the latter of the date on which

7    such Future Tort Claim-Initial is Finally Determined or the date on which the FC

8    Fund is initially funded with the $1 million allocation provided for in Article 11.2.3

9    and the Future Claims Commitment becomes effective.

10              11.7.2.2  <u>Allowance</u>.  The holder of a Future Tort Claim-Initial

11    may elect to proceed with allowance under the "FTC Compromise Process"

12    (defined below), the "FTC Matrix Process" (defined below) or the "FTC Litigation

13    Process" (defined below) by (i) filing with the TCR a Proof of Claim in the form to

14    be developed and furnished by the TCR which elects the FTC Compromise

15    Process or the FTC Matrix Process, or (ii) filing a complaint in the District Court

16    which elects the FTC Litigation Process.  If the Proof of Claim does not elect

17    between the FTC Compromise Process and the FTC Matrix Process, the holder of

18    such Claim shall be deemed to have elected to proceed under the FTC Matrix

19    Process.  Except as provided in Articles 11.7.2.2.2(b) and 11.7.2.2.3(b), any such

20    election shall be irrevocable.  Each Proof of Claim or District Court complaint by a

21    holder of a Future Tort Claim-Initial must include a Release of Claims.  A Future

22    Tort Claim which is filed after the 9th anniversary of the Effective Date shall be

23    allowed or disallowed and paid exclusively under Article 11.7.3.  A Future Tort

24    Claim-Initial Allowed under this Article 11.7.2.2 is referred to as an "Allowed Future

25    Tort Claim-Initial."

26

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -33
291/526060.82
030707 1145/62174.00001

11.7.2.2.1 <u>FTC Compromise Process</u>.  In the case of a holder of a Future Tort Claim-Initial who elects to proceed with allowance under the FTC Compromise Process, such Claim shall be allowed in the amount of $45,000 if the TCR determines that the holder of such Claim has proved by a preponderance of the evidence that the holder of such Claim was Abused as a minor by a Responsible Person, and that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had not begun to run on or before March 10, 2006.  The TCR shall not consider any applicable statute of limitations which accrued after, or the passage of time after, March 10, 2006 in making such determination.  The TCR may consider the credibility of the Tort Claimant and the facts alleged in support of the Tort Claim.

11.7.2.2.2 <u>FTC Matrix Process</u>.

(a)    <u>Allowance</u>.  If a holder of a Future Tort Claim-Initial elects to proceed with allowance under the Matrix Process, such Claim shall be allowed (a) if the TCR determines that the holder of such Claim has proved by a preponderance of the evidence (i) that such holder was Abused by a Responsible Person, and (ii) that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had not begun to run on or before March 10, 2006; and (b) if the TCR does not find that there is clear, cogent and convincing evidence that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had run (i) after March 10, 2006, and (ii) before the date the Holder of such Claim filed a Proof of Claim.  The TCR shall determine the amount of such Claim by assigning such Claim a value pursuant to the Matrix Protocol.  The TCR may consider the credibility of the Tort Claimant and the facts alleged in support of the Tort Claim and, in the TCR's sole discretion, reduce or deny the Tort Claim.

(b)    <u>Amendment</u>.  At any time prior to final allowance or disallowance of a Future Tort Claim-Initial under the FTC Matrix Process, the holder of such Claim may amend his or her election or deemed election to instead elect treatment under the FTC Compromise Process by delivering a written notice of such election to the TCR.  Any such amended election shall be irrevocable.

11.7.2.2.3 FTC Litigation Process.

(a)    <u>Allowance</u>.  If a holder of a Future Tort Claim-Initial elects to proceed with allowance under the Litigation Process, such Claim shall be determined either by a trial of such Claim conducted by the District Court, or a settlement between the holder of such Claim and the Plan Trustee.  Such Future Tort Claim-Initial shall be disallowed unless the holder of such Claim proves by a preponderance of the evidence that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had not begun to run on or before March 10, 2006.  Such Claim also is subject to all defenses, including but not limited to the applicable statute of limitations, available to Debtor.  Nothing in this Plan shall affect any right the holder of a Future Tort Claim-Initial may have to a jury trial under applicable law.

(b)    <u>Amendment</u>.  At any time prior to the earliest of the date on which the Plan Trustee has filed a dispositive motion with respect to, or trial has commenced on, a Future Tort Claim-Initial being determined under the FTC Litigation Process, the holder of such Claim may amend his or her election to instead elect treatment under the FTC Matrix Process or the FTC Compromise Process by delivering a written notice of such election to the TCR and the Plan Trustee.  Any such amended election shall be irrevocable. Any such amended election shall be deemed to be a consent to a reduction of the

amount of any distribution with respect to such holder's Allowed Claim by the amount of all pre litigation and litigation Professional Fees and expenses, and all other Plan Trust Costs and Expenses attributable to such Claim which accrued through the date of such amended election.

11.7.3    Future Tort Claims-Extended filed after 9th Plan Anniversary.

11.7.3.1  Allowance.  The holder of a Future Tort Claim which was filed after the 9th anniversary of the Effective Date and on or before the 23rd anniversary of the Effective Date ("Future Tort Claim-Extended") shall have no right to payment or any other right under the preceding provisions of this Plan. The holder of a Future Tort Claim-Extended may proceed only by (i) filing with the Reorganized Debtor a Proof of Claim in the form to be developed and furnished by the Reorganized Debtor, or (ii) filing a complaint in the District Court.  Each Proof of Claim or District Court complaint by a holder of a Future Tort Claim-Extended must include a Release of Claims.  The Claim of a holder of a Future Tort Claim-Extended shall be determined either by a trial of such Claim conducted by the District Court, or a settlement between the holder of such Claim and the Reorganized Debtor.  Such Claim shall be disallowed unless the holder of such Claim proves by a preponderance of the evidence that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had not begun to run on or before March 10, 2006.  Such Claim also is subject to all defenses, including but not limited to the applicable statute of limitations, available to Debtor. Nothing in this Plan shall affect any right the holder of a Future Tort Claim-Extended may have to a jury trial under applicable law.

11.7.3.2  Payment.  After the 9th Anniversary of the Effective Date, the Reorganized Debtor will continue to insure for Tort Claims caused by

acts committed on or after February 1, 1989 with Catholic Mutual, its successor, or another insurer, under insurance policies equivalent to its current insurance policies with Catholic Mutual. Except as provided in Article 15.9.2, the holder of an Allowed Future Tort Claim-Extended shall be paid by the Reorganized Debtor solely from the proceeds of such insurance and the obligation of the Reorganized Debtor for Future Tort Claims-Extended shall be without recourse.

11.7.4    Future Tort Claims Filed after 23[th] Plan Anniversary Barred. All Future Tort Claims filed after the 23rd anniversary of the Effective Date shall have no right to payment or any other right under this Plan, and all such Claims shall be discharged under Article 20.1 of the Plan.

11.8    Effect of disallowance. If a Tort Claim is Disallowed, the holder of such Claim shall have no further rights against the Debtor, the Reorganized Debtor, the Plan Trust or any Fund.

11.9    Succession to Debtor's rights and duties. With the exception of the duties set forth in Article 26, the Plan Trustee with respect to Litigation Tort Claims, Non-Releasing Litigation Tort Claims and Future Tort Claims-Initial the holders of which elect to proceed with allowance under the FTC Litigation Process, the Reorganized Debtor with respect to Future Tort Claims-Extended, and the TCR with respect to all other Tort Claims, shall succeed to all rights and duties of Debtor with respect to such Tort Claims; and shall have complete control of the conduct of all proceedings with respect to such Claims. The Plan Trustee shall have complete control of settlements of Litigation Tort Claims, Non Releasing Litigation Tort Claims and Future Tort Claims-Initial the holders of which elect to proceed with allowance under the FTC Litigation Process. The Reorganized Debtor shall have complete control of settlements of Future Tort Claims-Extended. The TCR shall have no authority to settle other Tort Claims. No one except the

holder of the Tort Claim being determined and the TCR, the Plan Trustee or the Reorganized Debtor, as appropriate, (and their counsel) shall have standing to participate in such proceedings; provided that (a) any person may provide information about a Tort Claim and state a position with respect to a Tort Claim to the TCR, the Plan Trustee or the Reorganized Debtor, which information and statement of position shall be transmitted to the affected Tort Claimant, and (b) the TCR, the Plan Trustee or the Reorganized Debtor, in furtherance of the TCR's, the Plan Trustee's, or the Reorganized Debtor's duties and obligations and with due regard to the legitimate interest of a Tort Claimant to have information about his or her identity kept confidential, shall have the absolute right to provide any party in interest with any and all information regarding a Tort Claim that is in the possession, custody or control of the TCR, the Plan Trustee or the Reorganized Debtor, including the Questionnaire and the information constituting Proof of Abuse described below, subject to an agreement with the party in interest to keep such information confidential. The TCR, the Plan Trustee or the Reorganized Debtor, as appropriate, shall give the Claimant notice and an opportunity to object before providing such information, and the decision of the TCR, the Plan Trustee or the Reorganized Debtor, as appropriate, on such objection shall be final and not subject to any appeal, review or protective order. Debtor, the Reorganized Debtor and their counsel shall provide a copy of its complete file with respect to every Tort Claim to the Plan Trustee (with respect to claims to be determined by the Plan Trustee) and to the TCR (with respect to claims to be determined by the TCR), and shall cooperate fully with the TCR and the Plan Trustee as requested by the TCR or the Plan Trustee. The TCC, the TLC and the FCR and their counsel shall cooperate fully with the TCR and the Plan Trustee as requested by the TCR or the Plan Trustee. The expenses for attorneys' fees and costs incurred by Debtor's,

04-08822-FPC11    Doc 1774    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 45 of 45