Reorganized Debtor's, TCC's, TLC's and FCR's counsel at the request of the TCR or the Plan Trustee shall be paid by the Plan Trust.  To the extent necessary, the Plan Trustee and the TCR are hereby designated as estate representatives pursuant to and in accordance with Bankruptcy Code §1123(b)(3)(B).

11.10  <u>Proof of Abuse</u>.  Within 30 days after written request therefor from the TCR, each holder of a Tort Claim to be determined by the TCR shall complete under oath the Questionnaire, shall produce all records and documents requested by the TCR, shall consent to and cooperate in any examinations requested by the TCR and performed by health care professionals selected by the TCR, and shall consent to and cooperate in a written and/or oral examination under oath by the TCR.  The TCR also may, but shall not be required to, obtain evidence from the Debtor, the Reorganized Debtor or any other party, and shall have all of the rights and powers of the Debtor to take discovery under Part VII of the Bankruptcy Rules.  The TCR's determination shall be made expeditiously.  The extent to which the Federal Rules of Evidence will be applied by the TCR in assessing the credibility and competency of evidence shall be within the sole discretion of the TCR.  The Federal Rules of Evidence, to the extent determined by the TCR to be applicable, shall be liberally construed to promote justice.

11.11  <u>Determinations by TCR and Requests for Reconsideration</u>.  The TCR shall notify the Tort Claimant in writing of the TCR's determination with respect to the Tort Claimant's Claim, which determination shall be final unless the Tort Claimant makes a timely request for reconsideration and shall not be subject to any appeal.  The Tort Claimant may request reconsideration of such determination by delivering a written request for reconsideration to the TCR within 20 days after the date of the TCR's determination, and may submit additional evidence and argument in support of such request with such request.  No other

person may request reconsideration or submit additional evidence or argument. The TCR shall notify the Tort Claimant in writing of the TCR's determination of such request for reconsideration. The TCR's determination of such request for reconsideration shall be final and not subject to any appeal.

11.12 <u>All Information about Tort Claimants Confidential</u>. Subject to Article 11.9, all information the Plan Trustee, the TCR, the Debtor or the Reorganized Debtor receive from any source about any Tort Claim, and all information the Plan Trustee, the TCR, the Debtor or the Reorganized Debtor provide to another party, shall be held strictly confidential and shall not be disclosed to any third party, except to the extent ordered by a court of competent jurisdiction in connection with a Litigation Tort Claim.

11.13 <u>Allowance for voting</u>. All Class 7 Tort Claims except Future Tort Claims shall be temporarily allowed in the amount of $1 for purposes of voting to accept or reject this Plan.

11.14 <u>Settlement Negotiations</u>. To the extent provided by Federal Rule of Evidence Rule 408, any settlement offers or any discussions of settlement shall not be admissible for any purpose, and they are expressly determined not to be admissions by any party.

11.15 <u>Discretion to Defer or Accelerate Payments</u>.

11.15.1 <u>Deferral</u>. The Plan Trustee shall have the discretion to defer or pro rate any distribution to holders of Allowed Class 7 Tort Claims if the Plan Trustee determines that there are not sufficient funds available to pay all such Claims on the date when such distribution is payable.

11.15.2 <u>Acceleration</u>. On or after the date on which the Convenience Fund has been funded and sufficient funds are available from other Funds, the Plan Trustee shall make an interim distribution of $15,000 per Claim to

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 2 of 46

holders of Tort Claims which have not yet been allowed and as to which the Plan Trustee in the case of Litigation Tort Claims and the TCR in the case of other Tort Claims has determined that there is not a material likelihood that the Claim of such holder will be finally allowed in an amount less than $15,000.

11.16 Impairment. The Class 7 Tort Claims are impaired pursuant to the Plan.

### ARTICLE 12
### TREATMENT OF CLASS 8 CLAIMS
### (PRIEST RETIREMENT)

12.1 Distribution. Each holder of a Priest Retirement Claim shall be paid in full and on an on-going basis by the Reorganized Debtor in accordance with the Priest Retirement Plan, as it may be amended from time to time or as it may be replaced by another retirement plan with the approval of the Presbyterate and Presbyteral Council, on the latter of the Claim Payment Date or the date on which such Claim would have become matured and liquidated but for the filing of the Petition. Until the date on which the Debtor's Note is paid in full, (i) no amendment shall increase the amount payable to any person under the Priest Retirement Plan, (ii) the aggregate payments hereunder shall not exceed those provided for in the budget provided for in Article 15.1.1.3, and (iii) there shall be no payment of any asserted shortfall in funding for future payments under the Priest Retirement Plan.

12.2 Impairment. The Priest Retirement Claims are not impaired under the Plan.

### ARTICLE 13
### PLAN TRUST AGREEMENT; SELECTION OF PLAN TRUSTEE AND TCR

13.1 Plan Trust Agreement. On the Closing Date, the Reorganized Debtor and the Plan Trustee shall execute and commence implementing the Plan Trust.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -41
291/526060.82
030707 1145/62174.00001

13.2     Selection Of Plan Trustee and TCR.  The initial Plan Trustee shall be

_____; and the initial TCR shall be Katrina ("Kate") Pflaumer.

If the TCR or the Plan Trustee resigns or becomes unable to serve, the TCC, the

FCR and the TLC may unanimously nominate a successor, whose appointment

shall be subject to the approval of the Honorable Patricia C. Williams, or in her

absence the Chief Judge of the U. S. Bankruptcy Court for the Eastern District of

Washington, after notice and a hearing.  If the TCC, the FCR and the TLC do not

unanimously nominate a successor within 45 days after the TCR or the Plan

Trustee resigns or becomes unable to serve, the Honorable Patricia C. Williams,

or in her absence the Chief Judge of the U. S. Bankruptcy Court for the Eastern

District of Washington, shall designate a successor after notice and a hearing.

13.3     Counsel for Plan Trustee and TCR.  If the Plan Trustee or TCR

employs counsel, no attorney or law firm that has represented any party in interest

in connection with the Bankruptcy Case shall be eligible for such employment.

**ARTICLE 14**
**INTENTIONALLY OMITTED**

**ARTICLE 15**
**MEANS OF IMPLEMENTATION OF THE PLAN**

15.1     Debtor's Note and Security Agreements.

15.1.1     Debtor's Loan Documents.  The Reorganized Debtor shall

pay $48 million to the Plan Trustee (and subject to the pro tanto reduction

provided for by Article 3.1.5) to pay Tort Claims, Professional Fees, and expenses

of determining Tort Claims and administration of the Plan Trust, as follows:

15.1.1.1     Loan Documents.  On or before the Closing Date,

the Reorganized Debtor shall execute, acknowledge as necessary, and deliver to

the Plan Trustee (i) a Note for $48 million which shall be nonrecourse with respect

04-08822-FPC11     Doc 1774-1     Filed 03/07/07     Entered 03/07/07 15:13:55     Pg 4 of 46

to the last $1 million of the principal balance thereof and shall be recourse with respect to all other amounts payable thereunder, with the first $37 bearing no interest before October 1, 2007, the next $10 million bearing no interest before October 1, 2007 and bearing interest at the rate of 6% per annum from and after October 1, 2007, and the last $1 million bearing no interest before October 1, 2009, payable (a) from time to time upon the receipt by Reorganized Debtor of payments on or the proceeds of any sale or other disposition of any item of the Debtor's Collateral, (b) $37 million due October 1, 2007, (c) $10 million due December 31, 2007, and (d) with the balance payable in full on October 1, 2009 ("Debtor's Note"); (ii) a first priority Deed of Trust and Security Agreement ("Debtor's DOT"); (iii) financing statements; Lender's Policies of Title Insurance and UCC searches satisfactory to the Plan Trustee; and (iv) such other documents and instruments as the Plan Trustee shall require to evidence and secure payment of the Debtor's Note (the documents and instruments referred to in clauses (i)-(iv) are referred to collectively as the "Debtor's Loan Documents", all of which shall be in form and substance acceptable to Proponents and the TLC, or, if they do not agree, approved by the Bankruptcy Court). On the Effective Date, the Plan Trustee shall record and file any documents and instruments designated by the Plan Trustee to be recorded and filed with the appropriate county auditor or recorder and the Washington Department of Licensing.

15.1.1.2 <u>Collateral</u>. The collateral described by the Debtor's DOT shall be all of the Reorganized Debtor's interest in any real and personal property owned by or held in the name of the Debtor as of the Closing Date or acquired thereafter, including but not limited to the real and personal property listed in Schedule 15.1.1.2, all DLF Loans and proceeds thereof (subject to Article 9.1), all Avoidance Actions and orders related thereto, the Declaratory Relief

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 5 of 46

Action, the Insurance Settlements, the Parishes' Notes and all security therefor, the Estate's Portion of Catholic Entity Payments by provided for in Article 15.3.1, and the Release Portion of Catholic Entity Payments by provided for in Article 15.3.2 ("Debtor's Collateral").  Any foreclosure of Debtor's Collateral located in the State of Washington shall be conducted under Washington law, and any foreclosure of Debtor's Collateral located elsewhere shall be shall be conducted under the law of the jurisdiction in which such Collateral is located.

15.1.1.3 <u>Payment and Sale and Use of Collateral</u>.  Upon receipt by Reorganized Debtor of full or partial payment of, or the proceeds of a sale or other disposition of, any item of Debtor's Collateral (including but not limited to the payments of the Estate's Portion of Catholic Entity Payments, the Release Portion of Catholic Entity Payments, the Parishes' Notes, and amounts due under the Settlement Agreements), such payments or proceeds (net of a reserve for Allowed Administrative Expense Claims for Professional Fees of Professional Persons whose employment was approved by the Bankruptcy Court on or before September 14, 2006, and of the person designated in Article 13.2 as the TCR from the sources identified below) shall be immediately paid in the form received to the Plan Trustee and shall be applied as a partial payment of Debtor's Note.  The Reorganized Debtor shall not sell or otherwise dispose of any of Debtor's Collateral without the prior written consent of the Plan Trustee, which consent shall not be unreasonably withheld.  Payments on, and other proceeds of approved sales or other dispositions of, Debtor's Collateral (except payments on and all other proceeds of the Release Portion of Catholic Entity Payments, the Release Portion of Parishes' Notes and the Insurance Settlements) may be used only for payment of Tort Claims and Allowed Administrative Expense Claims for Professional Fees of Professional Persons whose employment was approved by

04-08822-FPC11     Doc 1774-1     Filed 03/07/07     Entered 03/07/07 15:13:55     Pg 6 of 46

the Bankruptcy Court on or before September 14, 2006, and of the person
designated in Article 13.2 as the TCR.  All other Allowed Administrative Expense
Claims and ordinary course expenses for the period through December 31, 2007,
and, to the extent payments of or proceeds of sales or other dispositions of
Debtor's Collateral is insufficient therefor, Allowed Administrative Expense Claims
for Professional Fees of Professional Persons whose employment was approved
by the Bankruptcy Court on or before September 14, 2006, and of the person
designated in Article 13.2 as the TCR, shall be paid from Debtor's other revenues
and shall not exceed the expenses set forth a budget which shall be in form and
substance acceptable to Proponents and the TLC, or, if they do not agree,
approved by the Bankruptcy Court; provided that the amount of Professional Fees
in the budget shall be adjusted to equal the amount of Professional Fees payable
under Article 3.1.5.  Except as provided in Article 3.1.5, none of the payments
used to pay budgeted expenses shall decrease the amount due under the
Debtor's Note or the scope of the Debtor's Collateral.  Payments on and all other
proceeds of the Release Portion of Catholic Entity Payments, the Release Portion
of Parishes' Notes and the Insurance Settlements shall be used exclusively for
payment of Tort Claims and Plan Trust Costs and Expenses.  The Debtor's Loan
Documents and all rights and interests of the Plan Trustee thereunder and in
Debtor's Collateral are referred to collectively as the "Trust Property".  The Trust
Property shall be vested in the Plan Trust free and clear of all Claims, liens,
encumbrances, charges and other interests of Debtor, the Reorganized Debtor,
the Parishes or any other Person.  The Plan Trust shall thereafter hold, use,
manage, liquidate, dispose or otherwise deal with the Trust Property pursuant to
the terms of the Plan Trust.  The Plan Trustee is hereby designated as the estate

representative pursuant to and in accordance with Bankruptcy Code §1123(b)(3)(B) with respect to all Trust Property.

15.1.1.4 <u>Cross-Default</u>. A default under the Plan shall constitute a default on the Debtor's Note.

15.1.1.5 <u>Execution and Delivery of Notes and Loan Documents Mandatory</u>. On and after the Closing Date the Plan Trustee may enforce the obligations of the Debtor to execute and deliver the Debtor's Notes and the Debtor's Loan Documents as a judgment of the Bankruptcy Court, and shall have recourse to all available methods of enforcing such a judgment, including but not limited to specific performance.

15.1.2 <u>Allocation of Trust Property</u>. The Plan Trustee shall allocate all payments on the Trust Property, and all other proceeds of the Trust Property, attributable to the Release Portion of Catholic Entity Payments, the Release Portion of Parishes' Notes and the Insurance Settlements to a separate fund (the "Release Fund"); and shall allocate all other payments on the Trust Property, and all other proceeds of the Trust Property, including but not limited to payments and proceeds attributable to the Estate's Portion of Catholic Entity Payments and the Estate's Portion of Parishes' Notes, to a separate fund (the "Estate Fund"). All reductions in the amount of the Debtor's Note pursuant to Article 3.1.5 shall reduce both the amount of the Estate Fund and the amount of the Debtor's Note allocated to the Estate Fund.

15.2 <u>Revesting of Debtor's Property</u>. On the Effective Date, all real and personal property of the Debtor shall revest in the Reorganized Debtor, subject to the Debtor's Loan Documents.

15.3 <u>Sale of Debtor's Interest in Property to and Release Payment by the Participating Catholic Entities</u>.

15.3.1    <u>Sale</u>.  All of Debtor's interest in any real or personal property used by a Participating Catholic Entity, whether held in the name of the Debtor, a Participating Catholic Entity or a third party, all of the Debtor's interest in the Guse Trust (which Debtor believes cannot be used to pay Claims), and all of Debtor's interest in the 541 Litigation with respect to such real and personal property, (collectively the "Catholic Entity Property"), shall be sold on or before the Effective Date to and purchased by the Participating Catholic Entity which uses such property, and in the case of the Guse Trust, to Catholic Charities of Spokane, free and clear of all Claims, liens, encumbrances, charges and other interests of Debtor or any other party pursuant to a Quit Claim Deed and Bill of Sale in form and substance acceptable to Proponents, the TLC, and, as appropriate, Morning Star Boys' Ranch and Immaculate Heart Retreat Center, or, if they do not agree, approved by the Bankruptcy Court, in consideration of the following payments and transfers ("Estate's Portion of Catholic Entity Payments") to the Reorganized Debtor on or before the Effective Date:

| Entity | Cash Payments on or before the Effective Date |
|---|---|
| Catholic Cemeteries of Spokane | $3,400,000 |
| Catholic Charities of Spokane | $2,000,000 (less a credit for net proceeds of the sale of St. Anne's not to exceed $550,000) |
| Morning Star Boys' Ranch | $382,500 |
|  |  |
|  | **Transfer by Quit Claim Deed to Debtor on or before the Effective Date** |
| Immaculate Heart Retreat Center | 85% Interest in 20 acre parcel of real property, as described in Schedules 15.3.1 (Estimated value is approximately $425,000) |

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -47
291/526060.82
030707 1145/62174.00001

The Debtor's interest in the 541 Litigation with respect to the Catholic Entity Property shall merge with each Participating Catholic Entity's title to such real and personal property upon delivery of the Quit Claim Deed and Bill of Sale.

15.3.2  Release Payment.  In consideration of the Permanent Injunction provided for in Article 20.3, each Participating Catholic Entity except Catholic Charities of Spokane shall make the following payments and transfers ("Release Portion of Catholic Entity Payments") to the Reorganized Debtor on or before the Effective Date:

| Entity | Cash Payments on or before the Effective Date |
|---|---|
| Catholic Cemeteries of Spokane | $600,000 |
| Morning Star Boys' Ranch | $67,500 |
| | **Transfer by Quit Claim Deed to Debtor on or before the Effective Date** |
| Immaculate Heart Retreat Center | 15% Interest in 20 acre parcel of real property (Estimated value is approximately $75,000) |

15.3.3  Title Insurance; Deeds.  Morning Star Boys' Ranch and Immaculate Heart Retreat Center shall take all steps necessary to assure that the Quit Claim Deeds to the Heckett Ranch and the 20 acre parcel are sufficient to enable the Debtor to obtain a Lender's Policy of Title Insurance pursuant to Article 15.1.1.1 insuring that the Debtor's Deed of Trust will grant the Plan Trustee a first priority lien free and clear of all liens and encumbrances.  Such Quit Claim Deeds shall be in form and substance acceptable to Proponents, the TLC, and, as appropriate, Morning Star Boys' Ranch and Immaculate Heart Retreat Center, or, if they do not agree, approved by the Bankruptcy Court

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -48
291/526060.82
030707 1145/62174.00001

15.3.4    Deposit of Cash and Documents; Payments and Transfers Mandatory.  On or before the date set by the Bankruptcy Court for the first hearing on the Proponents' motion for confirmation of this Plan, each Participating Catholic Entity shall deposit in a segregated interest bearing trust account of Debtor Cash in the amount of the payment from such Catholic Entity provided for in Articles 15.3.1 and .2 to be applied to such payment on the Effective Date, and shall deliver in trust to Debtor Quit Claim Deeds free of liens and encumbrances to the real property described in Schedules 15.3.1(a) and (b) to be recorded on the Effective Date.  The Debtor, and on and after the Confirmation Date, the Plan Trustee shall enforce the obligations of the Participating Catholic Entities to make the deposits provided for in this Article 15.3.4 and the payments and transfers provided for in Articles 15.3.1 and .2 in the Bankruptcy Court as a judgment of the Bankruptcy Court, and shall have recourse to all available methods of enforcing such a judgment, including but not limited to specific performance.

15.4    Sale of Debtor's Interest in Property to and Release Payment by Parishes.

15.4.1    Sale.  Each parcel of real property occupied or otherwise used by a Parish, all personal property used by a Parish on or in conjunction with such real property, all other real and personal property owned by or held by a Parish as of the Closing Date, which is listed in Schedule 15.4.1, and all of the Debtor's, the TCC's and the TLC's interest in the 541 Litigation with respect to such real and/or personal property, shall be and is referred to collectively as the "Parish Property".  On or before the Closing Date, each of the Parishes may form a legal entity, cognizable as such by civil law and, subject to the limitations provided in Article 25.7, consistent with Canon Law, for the purpose of holding title to and/or beneficial interests in the Parish's assets ("Parish Entity").  On or before

the Closing Date, all of Debtor's interest in the Parish Property, whether held in the name of the Debtor, a Parish or a third party, shall be sold, transferred and conveyed to (a) the Parish Entity formed by the Parish which occupies or otherwise uses such Parish Property as designated by the respective Parishes with the approval and consent of the Catholic Bishop of Spokane, or (b) if the Parish Entity is not yet formed, to the Parish, free and clear of all Claims, liens, encumbrances, charges and other interests of Debtor or any Tort Claimant claiming an interest therein pursuant to a Quit Claim Deed and Bill of Sale in form and substance acceptable to Proponents, the TLC and the Parishes, or, if they do not agree, approved by the Bankruptcy Court, for $14 million payable pursuant to the Parishes' Notes (the "Estate's Portion of Parishes' Notes"). The Debtor's, and the TCC's and the TLC's interest as Plaintiff in the 541 Litigation with respect to or based upon a claimed interest or ownership of the Parish Property shall merge with each Parish Entity's title to such Parish Property upon delivery of the Quit Claim Deed and Bill of Sale, and such merged title to such Parish Property shall be exclusively for the beneficial ownership and use of such Parish and Parish Entity.

      15.4.2   <u>Release</u>. On or before the Closing Date, the Participating Parishes and their Parish Entities, the Note 2 Parishes and the Note 3 Parish shall pay $2 million to the Reorganized Debtor pursuant to the Parishes' Notes (the "Release Portion of Parishes' Notes"), in consideration of entry of the Permanent Injunction . The Parishes and Parish Entities shall receive all benefits of the Permanent Injunction as described in Article 20.3 as of the Closing Date.

      15.4.3   <u>Parishes' Notes and Loan Documents</u>.

      15.4.3.1   <u>Parishes' Notes</u>.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -50
291/526060.82
030707 1145/62174.00001

04-08822-FPC11   Doc 1774-1   Filed 03/07/07   Entered 03/07/07 15:13:55   Pg 12 of 46

15.4.3.1.1 <u>Parishes' Note 1</u>.  On or before the Closing Date, the Participating Parishes and their Parish Entities shall jointly and severally execute and deliver to the Plan Trustee a recourse Note payable to the Reorganized Debtor for $10 million bearing no interest before October 1, 2007 and bearing interest at the rate of 6% per annum from and after October 1, 2007, payable from time to time upon the receipt by any Participating Parish or its Parish Entity of payments on or the proceeds of any sale or other disposition of any item of Parish Collateral, and with the balance  payable in full on December 31, 2007 ("Parishes' Note 1"), which shall be endorsed to the order of the Plan Trustee by the Reorganized Debtor with full recourse.  Under no circumstances does Parishes' Note 1 create any legal liability or obligation for individual parishioners of any Parish whatsoever.

15.4.3.1.2 <u>Parishes' Note 2</u>.  On or before the Closing Date, the Parishes listed in Schedule 15.4.3.1.2 and their Parish Entities (collectively the "Note 2 Parishes") jointly and severally shall execute and deliver to the Plan Trustee a Note which shall be recourse to such Parishes and their Parish Entities (except Immaculate Heart Retreat Center), and non-recourse to Immaculate Heart Retreat Center, payable to the Reorganized Debtor for $5 million with no interest before October 1, 2007, payable from time to time upon the receipt by the Note 2 Parishes of payments on or the proceeds of any sale or other disposition of any item of Parish Collateral, and with the balance payable in full on October 1, 2007 ("Parishes' Note 2), which shall be endorsed to the order of the Plan Trustee by the Reorganized Debtor with full recourse.  Under no circumstances does Parishes' Note 2 create any legal liability or obligation for individual parishioners of the Note 2 Parishes whatsoever.

15.4.3.1.3 <u>Parish Note 3</u>.  On or before the Closing Date, the Our Lady of Lourdes Parish and its Parish Entity (collectively the "Note 3 Parish") jointly and severally shall execute and deliver to the Plan Trustee a non-recourse Note payable to the Reorganized Debtor for $1 million with no interest before October 1, 2009, payable from time to time upon the receipt by the Note 3 Parish of payments on or the proceeds of any sale or other disposition of any item of Parish Collateral, and with the balance payable in full on October 1, 2009 ("Parish Note 3"), which shall be endorsed to the order of the Plan Trustee by the Reorganized Debtor without recourse.  Under no circumstances does Parish Note 3 create any legal liability or obligation for individual parishioners of the Note 3 Parish whatsoever.  Parishes' Notes 1, 2 and 3 are referred to collectively as the "Parishes' Notes".

15.4.3.1.4 <u>Cross-Default</u>.  A default on the Parishes' Note 1 shall constitute a default on Parishes' Notes 2 and 3.  A default on Parishes' Note 2 or 3 shall not constitute a default on Parish Note 1.

15.4.3.2 <u>Collateral for Parishes' Notes</u>.  To secure payment of the (i) Parishes' Note 1, each Participating Parish and its Parish Entity, (ii) of Parishes' Note 2, each Note 2 Parish, and (iii) of Parish Note 3, the Note 3 Parish, shall execute, acknowledge as necessary, and deliver to the Plan Trustee on or before the Closing Date, (i) first priority Deeds of Trust and Security Agreements ("Parish's DOT") on the portion of each such Parish's and Parish Entity's Parish Property which is real property, fixtures and intangible personal property such as permits, plans, service contracts and warranties related to such real property and fixtures then owned and thereafter acquired ("Parish Collateral"); (ii) financing statements covering the Parish Collateral, and Lender's Policies of Title Insurance which shall insure the Plan Trustee and UCC searches satisfactory to the Plan

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 14 of 46

Trustee; and (iii) such other documents and instruments as the Plan Trustee shall require to evidence and secure payment of the Parishes' Notes (the documents and instruments referred to in clauses (i)-(iii) are referred to collectively as the "Parishes' Loan Documents", all of which shall be in form and substance acceptable to Proponents, IHRC and the TLC, or, if they do not agree, approved by the Bankruptcy Court).  On or before the Closing Date, the Plan Trustee shall record and file any documents and instruments designated by the Plan Trustee to be recorded and filed with the appropriate county auditor or recorder and the Washington Department of Licensing.  Upon receipt by a Parish or its Parish Entity of full or partial payment of, or proceeds of a sale or other disposition of, any Parish Collateral, such payments or proceeds shall be immediately paid in the form received to the Plan Trustee.  All payments on the Parishes' Notes shall be allocated $14/16^{th}$ to the Estate's Portion of Parishes' Note and $2/16^{th}$ to the Release Portion of Parishes' Note, and shall be applied as a partial payment of Parishes' Notes.  The Parishes and their Parish Entities, the Note 2 Parishes and the Note 3 Parish shall not sell or otherwise dispose of any of the Parish Collateral with a fair market value of $100,000 or more without the prior written consent of the Plan Trustee, which consent shall not be unreasonably withheld.  Any foreclosure of Parish Collateral located in the State of Washington shall be conducted under Washington law, and any foreclosure of Parish Collateral located elsewhere shall be shall be conducted under the law of the jurisdiction in which such Collateral is located.  The Plan Trustee shall complete any foreclosure of the Deeds of Trust of the Note 2 Parishes other than Immaculate Heart Retreat Center before it completes any foreclose of the Deed of Trust of Immaculate Heart Retreat Center; provided that the Plan Trustee may proceed with all steps in any foreclosure of the Deed of Trust of Immaculate Heart Retreat Center short of

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -53
291/526060.82
030707 1145/62174.00001

completing the foreclosure sale before it completes the foreclosure of the other Deeds of Trust, and may proceed with the foreclosure sale if for any reason the Plan Trustee is stayed or otherwise legally precluded from commencing or completing the foreclosure of one or more of the other Deeds of Trust or determines that the cost of such foreclosure exceeds the likely net proceeds of such foreclosure.  With regard to Parishes' Note 1, the order of the foreclosure sales of the Parish Collateral of the Participating Parishes shall be in the best business judgment of the Plan Trustee; provided however that the Reorganized Debtor may designate the order of the first 6 foreclosure sales of the Parish Collateral of the Participating Parishes (except Note 2 Parishes) located in Spokane County whose real property was appraised in the April 2006 GVA Kidder Mathews appraisal reports for $1.5 million or more; provided further that the Plan Trustee shall not be required to proceed with foreclosure sales in the designated order if for any reason the Plan Trustee is stayed or otherwise legally precluded from commencing or completing the foreclosure of one or more of the Deeds of Trust of such designated Spokane County Participating Parishes or determines that the cost of such foreclosure exceeds the likely net proceeds of such foreclosure; and provided further that nothing herein shall prevent the Plan Trustee from proceeding with all steps in any foreclosure of the Deeds of Trust of each such Spokane County Participating Parishes short of completing the foreclosure sale without regard to the designated order.

15.4.3.3  Execution and Delivery of Notes and Loan Documents Mandatory.  On and after the Closing Date the Plan Trustee may enforce the obligations of the Parishes to execute and deliver the Parishes' Notes and the Parishes' Loan Documents as a judgment of the Bankruptcy Court, and

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -54
291/526060.82
030707 1145/62174.00001

shall have recourse to all available methods of enforcing such a judgment, including but not limited to specific performance.

15.5    Disposition of Surplus from Debtor's Note; Subrogation of Parishes. After payment in full by the Plan Trust of all Allowed Convenience Tort Claims, all Allowed Compromise Tort Claims, all Allowed Settled Compromise Tort Claims, all Allowed Settled Matrix Tort Claims, all Allowed Matrix Tort Claims, all Allowed Litigation Tort Claims, all Allowed Non-Releasing Litigation Tort Claims, all Plan Trust Costs and Expenses with respect to such Claims, all Allowed Professional Fees, and funding of the FC Fund, any balance due on the Debtor's Note when paid and any sums then held in any Fund except the FC Fund shall be distributed pro rata to holders of all Allowed Convenience Tort Claims, all Allowed Compromise Tort Claims, all Allowed Settled Compromise Tort Claims, all Allowed Settled Matrix Tort Claims, all Allowed Matrix Tort Claims, all Allowed Litigation Tort Claims, and all Allowed Non-Releasing Litigation Tort Claims.  To the extent of any payments by the Note 2 and 3 Parishes on the Parishes' Notes 2 and 3, respectively, the Note 2 and 3 Parishes, respectively, shall be subrogated to the Debtor's Note and the Debtor's Loan Documents to collect the full amount of such payments from the Reorganized Debtor.

15.6    Contribution among Catholic Entities.  Except as provided in Article 15.5, any claims for contribution among Parishes, their Parish Entities, the Note 2 Parishes, the Note 3 Parish and Participating Catholic Entities with respect to payments made by them under this Plan shall be determined among such Parishes, their Parish Entities, the Note 2 Parishes, the Note 3 Parish and Participating Catholic Entities and the Debtor and/or Reorganized Debtor in their sole discretion.

15.7    Entry of Judgment in the Section 541 Litigation and Disallowance of Related Claims.  On the Effective Date, the Plan Trustee shall be substituted as the sole party plaintiff in the Section 541 Litigation.  On the latter of (i) the Effective Date, or (ii) certification by the Plan Trustee or a determination by the Bankruptcy Court that the transactions provided for in Articles 15.1, 15.3 and 15.4 have closed, a judgment shall be entered dismissing with prejudice the Section 541 Litigation, and all appeals relating to the Section 541 Litigation.  The judgment and order shall be in a form acceptable to the Proponents, the Participating Catholic Entities, the Participating Parishes, Immaculate Heart Retreat Center and the TLC, and approved by the Bankruptcy Court.  After the Effective Date, no Person may institute or prosecute an Avoidance Action with respect to Parish Property or any other property in which the Debtor holds, ever held or is alleged to hold or ever have held, and any such Avoidance Action then pending shall be dismissed with prejudice.

15.8    Insurance Settlements.  To the extent not previously approved by the Bankruptcy Court, the insurance settlements listed in Schedule 15.8, and the agreements providing for such settlements ("Insurance Settlements"), shall be approved upon entry of and as a part of the Confirmation Order.  All of the insurers listed in Schedule 15.8 ("Insurers") have entered into such settlements in consideration of dismissal of the Declaratory Relief Action and entry of the Permanent Injunction and the Settling Insurer Injunction.  On or before the Effective Date the Debtor in accordance with the terms of the Insurance Settlements and orders approving such Insurance Settlements, the Parishes and the Catholic Entities (except Morning Star Boys' Ranch) shall release their claims to coverage under the insurance policies covered by the Insurance Settlements in consideration of entry of the Permanent Injunction and receipt of Releases of

Claims from each holder of a Tort Claim who elects to receive funds paid for such Releases of Claim.

15.9    Future Claims Commitment.

15.9.1    Future Tort Claims-Initial.  On or before the Closing Date, the Reorganized Debtor, the Parishes listed in Schedule 15.9(a) and their Parish Entities ("FTC Parish Group 1"), and the Parishes listed in Schedule 15.9(b) and their Parish Entities ("FTC Parish Group 2") jointly and severally shall execute and deliver to the Plan Trustee a payment agreement ("Payment Agreement") pursuant to which the Reorganized Debtor, FTC Parish Group 1 and FTC Parish Group 2, shall be jointly and severally liable for payment to the Plan Trustee of an amount equal to all Allowed Future Tort Claims-Initial and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Initial not paid by the Plan Trust from the initial $1 million allocation to the FC Fund, minus a $200,000 contingency reserve to be held by the Plan Trust until all Future Tort Claims-Initial have been determined by a Final Order and all Allowed Future Tort Claims-Initial and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Initial have been paid in full.  Payments shall be due under the Payment Agreement on the last day of the first full calendar month after the date on which the Plan Trustee certifies to the Reorganized Debtor the amount of the required payment for any unpaid Allowed Future Tort Claim-Initial or Plan Trust Costs and Expenses with respect to Future Tort Claims.  The Payment Agreement shall be secured by (i) Deeds of Trust and Security Agreements ("FC DOTs") on the Debtor's Collateral, on the portion of the Parish Property of each member of FTC Parish Group 1 which is real property, fixtures and intangible personal property such as permits, plans, service contracts and warranties related to such real property and fixtures owned by such member on the Closing Date and thereafter acquired ("Parish Group 1

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -57
291/526060.82
030707 1145/62174.00001

Collateral"), and on the portion of the Parish Property of each member of FTC Parish Group 2 which is real property, fixtures and intangible personal property such as permits, plans, service contracts and warranties related to such real property and fixtures owned by such member on the Closing Date and thereafter acquired ("Parish Group 2 Collateral") prior to all other liens and encumbrances except those provided for in the Debtor's Loan Documents and the Parishes' Loan Documents; (ii) financing statements covering the Collateral, Lender's Policies of Title Insurance which shall insure the Plan Trustee and UCC searches satisfactory to the Plan Trustee; and (iii) such other documents and instruments as the Plan Trustee shall require to evidence and secure payment of the Payment Agreement (the Payment Agreement and the documents and instruments referred to in clauses (i)-(iii) are referred to collectively as collectively the "FC Loan Documents", all of which shall be in form and substance acceptable to Proponents and the TLC, or, if they do not agree, approved by the Bankruptcy Court). On the Effective Date, the Plan Trustee shall record and file any documents and instruments designated by the Plan Trustee to be recorded and filed with the appropriate county auditor or recorder and the Washington Department of Licensing. If the Plan Trustee consents to the sale or other disposition of any item of Debtor's Collateral pursuant to Article 15.1.1.3, the Plan Trustee shall release the security interest under the FC DOT in such item. The security interest provided for by the FC DOTs and the other Payment Agreement Loan Documents shall be subordinate to the security interests provided for in the Debtor's DOT, the other Debtor's Loan Documents, the Parish's DOTs and the other Parishes' Loan Documents. The FC DOTs on the FTC Parish Group 2 Collateral shall be subordinated to any security interests granted by the FTC Parish Group 2 to secure a loan or loans not to exceed the then outstanding balance of the Parishes'

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -58
291/526060.82
030707 1145/62174.00001

Notes the proceeds of which are used exclusively to pay the Parishes' Notes in full. The FC DOTs on the FTC Parish Group 1 Collateral and the Debtor's Collateral shall not be subordinated to any such security interests. The Reorganized Debtor, the FTC Parish Groups 1 and 2 and their Parish Entities shall not sell or otherwise dispose of any item of the Debtor's Collateral or the Parish Collateral with a value of $500,000 or more without the prior written consent of the Plan Trustee, which consent shall not be unreasonably withheld, except Cash on hand and Cash proceeds of approved sales or other dispositions of Debtor's Collateral or Parish Collateral may be used for payment of expenses incurred in the ordinary course of business after the Effective Date. If a release or subordination of the FC DOT on the Parish Group 2 Collateral of a Parish in Parish Group 2 is necessary for such Parish to build an new church or school or to make necessary improvements or repairs to an existing church or school and does not materially impair the security for the Payment Agreement, such Parish may request that the Plan Trustee consent to such release or subordination, which consent shall not be unreasonably withheld. The Payment Agreement also shall require the Reorganized Debtor to continue to insure for Tort Claims caused by acts committed on or after February 1, 1989 with Catholic Mutual, its successor, or another insurer, under insurance policies equivalent to its current insurance policies with Catholic Mutual, until all Future Tort Claims-Initial and all Future Tort Claims-Extended have been determined by a Final Order and all Allowed Future Tort Claims-Initial and all Future Tort Claims-Extended and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Initial and Future Tort Claims-Extended have been paid in full. The provisions of this Article 15.9 are referred to collectively as the "Future Claims Commitment". The Permanent Injunction shall be entered in consideration of the Future Claims Commitment.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -59
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 21 of 46

Under no circumstances does the Payment Agreement create any legal liability or obligation for individual parishioners of any Parish whatsoever. Any foreclosure of Debtor's Collateral, Parish Group 1 Collateral or Parish Group 2 Collateral located in the State of Washington shall be conducted under Washington law, and any foreclosure of Debtor's Collateral, Parish Group 1 Collateral or Parish Group 2 Collateral located elsewhere shall be shall be conducted under the law of the jurisdiction in which such Collateral is located. With regard to Parish Group 2, the order of the foreclosure sales of the FTC Parish Group 2 Collateral of the Parishes in Parish Group 2 shall be in the best business judgment of the Plan Trustee; provided however that the Reorganized Debtor may designate the order of the first 6 foreclosure sales of the FTC Parish Group 2 Collateral of the Parishes in Parish Group 2 whose real property was appraised in the April 2006 GVA Kidder Mathews appraisal reports for $1.5 million or more; provided further that the Plan Trustee shall not be required to proceed with foreclosure sales in the designated order if for any reason the Plan Trustee is stayed or otherwise legally precluded from commencing or completing the foreclosure of one or more of the Deeds of Trust of such Parishes in Parish Group 2 or determines that the cost of such foreclosure exceeds the likely net proceeds of such foreclosure; and provided further that nothing herein shall prevent the Plan Trustee from proceeding with all steps in any foreclosure of the Deeds of Trust of each such Parishes in Parish Group 2 short of completing the foreclosure sale without regard to the designated order.

15.9.2    Future Tort Claims-Extended.

15.9.2.1    Reorganized Debtor's Obligations.  On the first day after the 9th Anniversary of the Effective Date on which all Future Tort Claims-Initial have been determined by a Final Order and all Allowed Future Tort

Claims-Initial and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Initial have been paid in full, the Reorganized Debtor's obligations under the Payment Agreement shall be limited to its obligation to continue insurance for Future Tort Claims-Extended pursuant to Article 11.7.3, which obligation shall continue to be secured by the Debtor's FC DOT.  The Plan Trustee may enforce this obligation for the benefit of then existing or potential future holders of Allowed Future Tort Claim-Extended.  A holder of an Allowed Future Tort Claim-Extended not covered by such insurance because of the Reorganized Debtor's failure to continue such insurance also may enforce this obligation and the Debtor's FC DOT as a third-party beneficiary.  The principal amount of this obligation as to each holder of an Allowed Future Tort Claim-Extended shall be the amount of insurance coverage which would have been available for such Claim if such insurance had been continued.

15.9.2.2  <u>Parish Group 1 Obligations</u>.  If, on the 9th Anniversary of the Effective Date, the Reorganized Debtor has the insurance required by Article 11.7.3.2 in full force and effect, the Parishes in Parish Group 1 shall have no obligation to holders of Future Tort Claims-Extended.  If, on the 9th Anniversary of the Effective Date, the Reorganized Debtor does not have the insurance required by Article 11.7.3.2 in full force and effect, the Parishes in Parish Group 1, jointly and severally with the Reorganized Debtor, will be obligated under the Payment Agreement to continue insurance for Future Tort Claims-Extended pursuant to Article 11.7.3.2, which obligation shall continue to be secured by the FC DOTs of the Parishes in Parish Group 1.  The Plan Trustee may enforce this obligation for the benefit of then existing or potential future holders of Allowed Future Tort Claim-Extended.  A holder of an Allowed Future Tort Claim-Extended not covered by such insurance because of the Reorganized

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 23 of 46

Debtor's failure to continue such insurance also may enforce this obligation and the FC DOT of the Parishes in Parish Group 1 as a third-party beneficiary. The principal amount of this obligation as to each holder of an Allowed Future Tort Claim-Extended shall be the amount of insurance coverage which would have been available for such Claim if such insurance had been continued. If and when the Reorganized Debtor obtains insurance required by Article 11.7.3.2, the obligations under this Article 15.9.2.2 of the Parishes in Parish Group 1 shall terminate as to Future Tort Claims-Extended filed thereafter.

15.9.2.3  No Obligations of Parish Group 2.  Parish Group 2 shall have no obligation for Future Tort Claims-Extended or for insurance for such Claims.

15.9.2.4  Disposition of FC Fund.

15.9.2.4.1 No Default on 9th Anniversary.  If there is no uncured default under the Payment Agreement on the first day after the 9th Anniversary of the Effective Date on which all Future Tort Claims-Initial have been determined by a Final Order and all Allowed Future Tort Claims-Initial and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Initial have been paid in full, any balance of the FC Fund in excess of $200,000 shall be allocated by the Plan Trustee pro rata to the Matrix Fund and the Litigation Fund and, after payment of Plan Trust Costs and Expenses, paid to holders of Allowed Matrix Tort Claims and Allowed Litigation Tort Claims as provided in Article 11.5 and .6.  Any balance of $200,000 or less shall be held by the Plan Trustee for the benefit holders of Allowed Future Tort Claims-Extended and distributed as provided in Article 15.9.2.4.3

15.9.2.4.2 Default on 9th Anniversary.  If there is an uncured default under the Payment Agreement on the first day after the 9th

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 24 of 46

Anniversary of the Effective Date on which all Future Tort Claims-Initial have been determined by a Final Order and all Allowed Future Tort Claims-Initial and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Initial have been paid in full, any balance of the FC Fund shall be held by the Plan Trustee for the benefit holders of Allowed Future Tort Claims-Extended and distributed as provided in Article 15.9.2.4.3.

15.9.2.4.3 <u>Disposition of Balance</u>.  Any balance of the FC Fund held by the Plan Trustee pursuant to Articles 15.9.2.4.1 and .2 shall be used by the Plan Trustee to pay Plan Trust Costs and Expenses, and Allowed Future Tort Claims-Extended for which insurance is not available in the order such Claims are Allowed.  If any balance of the FC Fund remains after the 23rd Anniversary of the Effective Date and all Future Tort Claims-Extended have been determined by a Final Order and all Allowed Future Tort Claims-Extended and all Plan Trust Costs and Expenses with respect to Future Tort Claims-Extended are paid in full, the Plan Trustee shall donate such balance to a recognized charity substantially engaged in providing services to persons who have been sexually abused as minors.

15.10  <u>Retention of Rights</u>.  Except as otherwise provided in the Plan, the Debtor and/or the Reorganized Debtor shall retain all of their rights and defenses with respect to any Claim, except Tort Claims, including, but not limited to, all rights with respect to legal and equitable defenses to or setoffs or recoupments against such Claims, except Tort Claims.

15.11  <u>Operative Documents</u>.  The Proponents and, after his or her appointment, the Plan Trustee will prepare any documents which are necessary or appropriate to execute the Plan or provided for under the Plan, and shall provide the TLC with a reasonable opportunity to review such documents prior to their

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -63
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 25 of 46

execution.  Debtor, the Reorganized Debtor, the Participating Parishes, the Participating Catholic Entities, the Note 2 Parishes, the Note 3 Parish, the FTC Parish Group 1 and the FTC Parish Group 2 shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.  If there is any dispute regarding the reasonableness or propriety of any such documents after reasonable and good faith efforts by the Proponents, after his or her appointment, the Plan Trustee, and the TLC, to negotiate and obtain approval of the documents by the other affected Person(s), any such dispute shall be determined by the Bankruptcy Court.

15.12  <u>Exemption from Transfer Taxes</u>.  Pursuant to §1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities, (b) the creation or recordation of any mortgage, deed of trust, lien, pledge or other security interest, (c) the making or assignment of any lease or sublease, or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, or other similar tax.  Any transfers pursuant to this Plan shall not be subject to any such taxes, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.13  <u>Return of Deposits</u>.  To the extent that the Debtor was required to and did pay deposits to any Creditors after the Petition Date as a condition of or as

security for continued service after the Petition Date, including, but not limited to, deposits paid to utility companies for adequate assurance of payment pursuant to Bankruptcy Code §366, then, upon satisfaction of the Claims of such Creditor(s) pursuant to the Plan, any such deposits, together with any interest or other income earned thereon, if any, shall be refunded to the Reorganized Debtor within 15 days after demand by the Reorganized Debtor for return of such deposit(s) and immediately paid to the Plan Trustee on account of the Debtor's Note.

15.14 <u>Unrelated Party Avoidance Actions</u>.  After the Effective Date, no Person may institute or prosecute an Avoidance Action against any other Person (except Paine Hamblen LLP), and any such Avoidance Action then pending shall be dismissed with prejudice.  The Plan Trustee shall have all of the rights and remedies of the Debtor and the Reorganized Debtor as of the Effective Date with respect to, and may commence and prosecute, an Avoidance Action against Paine Hamblen LLP.

15.15 <u>Default Interest</u>.  The Debtor's Loan Documents, the Parishes' Loan Documents and the FC Loan Documents all shall provide for default interest at the rate of 12% per annum.

**ARTICLE 16**
**DISTRIBUTIONS**

16.1 <u>Distributions on Business Days</u>.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

16.2 <u>Disputed Claims Reserve</u>.  The Debtor or the Reorganized Debtor shall reserve for each Disputed Claim from amounts otherwise distributable under this Plan in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an order of the Court, or (ii) if no such order has

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -65
291/526060.82
030707 1145/62174.00001

been entered with respect to such Claim, the greater of (A) the amount listed in the Debtor's Schedule of Assets and Liabilities and (B) the amount set forth in a proof of claim or application for payment filed with the Court. Such reserved amounts, collectively shall constitute the "Disputed Claims Reserve". The Reorganized Debtor shall hold the Disputed Claims Reserve for the holders of Disputed Claims to be distributed in accordance with the resolution of such Disputed Claims. Claims filed or scheduled without an amount shall be reserved at $1 unless otherwise ordered by the Court. This Article 16.2 shall not be applicable to Tort Claims provided for under Article 11.

16.3    Interest on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition and post-Confirmation interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

16.4    Delivery of Distributions; Unclaimed Distributions.  Distributions to holders of Allowed Claims shall be made at the addresses set forth in the records of Debtor or Reorganized Debtor or the Plan Trust unless: (a) such addresses are superseded by any proofs of claim or transfers of Claim that may be filed pursuant to Bankruptcy Rule 3001 or (b) if the holder of an Allowed Claim has an attorney of record, then the Distribution shall be delivered to the attorney of record and payable jointly to counsel of record and the holder of the Allowed Claim.  If the distribution to any holder of an Allowed Claim is returned to the Reorganized Debtor or the Plan Trust as undeliverable or is otherwise unclaimed, or the check for the distribution is not presented for payment, no further distributions shall be made to such holder unless and until the Reorganized Debtor or Plan Trust is notified in writing of such holder's then current address.  The Reorganized Debtor or Plan Trust shall make all distributions that have become deliverable or have

been claimed as soon as practicable after such distribution has become deliverable.  Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution, or present the check for the distribution for payment, within 180 days after the date of such distribution shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against Debtor or Reorganized Debtor or Plan Trust or their property, and Reorganized Debtor or Plan Trust shall stop payment on any such check.  Nothing contained in this Plan requires Debtor or Reorganized Debtor or Plan Trust to attempt to locate any holder of an Allowed Claim.

16.5   <u>De Minimis Payments</u>.  Notwithstanding any other provision of this Plan, De Minimis Payments need not be made by the Reorganized Debtor or Plan Trust on account of any Allowed Claim; provided that De Minimis Payments that would otherwise be made on the applicable Distribution Date shall carry over until the next Distribution Date until the cumulative amount of distributions to which the holder of such Allowed Claim is more than a De Minimis Payment, at which time the cumulative amount of such distributions shall be paid to such holder.  De Minimis Payments that will not be distributed as of the final Distribution Date for a Class shall be treated as undeliverable distributions as provided above.

**ARTICLE 17**
**TREATMENT OF EXECUTORY CONTRACTS**

17.1   <u>Motion to Assume and Reject</u>.  The Plan constitutes a motion to assume and reject executory contracts and unexpired leases.  Upon confirmation of the Plan and without any further act, the Debtor shall be deemed to have rejected all executory contracts and unexpired leases not previously assumed or

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -67
291/526060.82
030707 1145/62174.00001

rejected or not listed in Schedule 17.1, if any, and shall be deemed to have assumed all executory contracts and unexpired leases listed in Schedule 17.1.

17.2 <u>Rejection Claims</u>. Any Claim arising from the rejection of an executory contract or unexpired lease is a Class 6 Claim to the extent it is an Allowed Claim. Any entity holding a Claim based upon the rejection of an executory contract or unexpired lease pursuant to this Article 17 must file a Proof of Claim with the Bankruptcy Court within 30 days after the Effective Date. The failure of any such entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

**ARTICLE 18**
**SATISFACTION AND CANCELLATION OF INDEBTEDNESS**

The provision made to the holders of Allowed Claims provided for in the Plan shall be in full and complete satisfaction of their Allowed Claims. Except for purposes of evidencing a right to distribution under the Plan, on the Effective Date, all notes, guarantees, or other instruments or documents evidencing or creating any indebtedness or obligations of, or interests in, Debtor, except (a) all assumed executory contracts, and/or (b) all other notes or other instruments evidencing indebtedness or obligations of Debtor that are unimpaired, restated, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

**ARTICLE 19**
**CONDITIONS TO EFFECTIVE DATE**

19.1 <u>Proponents' Conditions to Occurrence of Effective Date</u>. Each of the following are conditions to the occurrence of the Effective Date, which conditions must be satisfied or waived by each of the Proponents:

19.1.1 The Confirmation Order has been entered by the Bankruptcy Court and has not been stayed.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -68
291/526060.82
030707 1145/62174.00001

19.1.2    The Confirmation Order is in form and substance satisfactory to the Proponents and the TLC.

19.1.3    All actions, documents, and agreements necessary to implement the Plan will have been effected or executed.

19.1.4    All Insurance Settlements have been approved by the Bankruptcy Court.

19.2    <u>Insurer's Conditions to Occurrence of Effective Date</u>.  All Insurance Settlements must be approved by the Bankruptcy Court before the Effective Date unless this condition is waived by each of the Insurers.

19.3    <u>Deadline for Satisfaction of Conditions; Effect of Failure to Satisfy Conditions</u>.  All conditions to the Effective Date must be satisfied or waived no later than May 31, 2007.  If the Effective Date has not occurred by May 31, 2007, the Confirmation Order shall be vacated automatically unless all of the Proponents and the TLC agree in writing to extend the deadline.

## ARTICLE 20
## EFFECTS OF CONFIRMATION

20.1    <u>Discharge</u>.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date the Debtor and the Reorganized Debtor shall be discharged from and its liability shall be extinguished completely in respect of any Claim, including Tort Claims but excluding Post Petition Abuse Claims, to the extent permitted by the Bankruptcy Code.  Such discharged claims are referred to as "Discharged Claims".  Post Petition Abuse Claims shall not be discharged.  Notwithstanding the foregoing, nothing in this Article 20.1 shall discharge any obligations of the Debtor under the Insurance Settlements.

20.2    ***<u>Exculpation and Limitation of Liability</u>.  Neither the Debtor, the Reorganized Debtor, AOP, the Committees, the Future Claims***

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -69
291/526060.82
030707 1145/62174.00001

*Representative, the Plan Trustee, the TCR, nor any of their respective present or former members, managers, officers, directors, employees, advisors, attorneys, or agents acting in such capacity will have or incur any liability to, or be subject to any right of action by, any holder of a Claim (including a Future Tort Claim) or any other party-in-interest or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Reorganization Case, the pursuit of confirmation of the Plan, or the administration of the Plan or Plan Trust, or the property to be distributed under the Plan or Plan Trust, except for their willful misconduct; and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or the Plan Trust or in the context of the Reorganization Case.*

*20.3    <u>Permanent Injunction Against Prosecution of Released Claims</u>. "Released Parties" means the Parishes, the Parish Entities, the Catholic Entities (except Morning Star Boys' Ranch) and the Insurers, and their respective agents, predecessors, successors, officials, subsidiaries, divisions, affiliates, representatives, attorneys, accountants, and all others acting for or on their behalf (except individuals alleged to have engaged in Abuse).  Except as otherwise expressly provided in the Plan, for the consideration described in Articles 15.3, .4, .8, and .9, all Persons who have executed and delivered Releases of Claims shall be permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Claim against the Released Parties or the property of the Released Parties*

04-08822-FPC11     Doc 1774-1     Filed 03/07/07     Entered 03/07/07 15:13:55     Pg 32 of 46

*related to a Discharged Claim; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Released Parties or the property of the Released Parties, with respect any Claim against the Released Parties related to a Discharged Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Released Parties or the property of the Released Parties with respect any Claim against the Released Parties related to a Discharged Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Released Parties with respect any Claim against the Released Parties related to a Discharged Claim; and (e) taking any act, in any manner and in any place whatsoever with respect any Claim against the Released Parties related to a Discharged Claim, that does not conform to or comply with provisions of the Plan or the Plan Trust. Such injunction is referred to as the "Permanent Injunction".*

*20.4 __Settling Insurer Injunction.__ All Persons (except Morningstar Boys' Ranch or an Insurer to the extent such Insurer asserts a claim for contribution, indemnity, subrogation, equitable subrogation, or similar theory arising from claims against Morning Star) who have held, hold, or may hold Claims, including but not limited to Tort Claims, against an Insurer that are barred pursuant an order approving an Insurance Settlement, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any such Claim, including, but not limited to, any Tort Claim, Future Tort Claim, or FCR Tort Claim, for indemnity, contribution, subrogation or based on any*

*similar theory; against such Insurer, and its respective predecessors, successors, officials, shareholders subsidiaries, divisions, affiliates, representatives, attorneys, merged or acquired companies or operations or assigns (collectively, the "Insurer Parties") or the property of the Insurer Parties; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Insurer Parties or the property of the Insurer Parties, with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Insurer Parties or the property of the Insurer Parties with respect to any such Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Insurer Parties with respect to any such Claim; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan or the Trust Agreement.  In the event any Person takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this Article 20.4 or the Plan, then, upon notice to the Court by an affected Party, the action or proceeding in which the Claim of such Person is asserted will automatically be transferred to the Bankruptcy Court or the District Court for enforcement of the provisions of this Article 20.4 or the Plan.*

20.5    <u>No Release of Other Entities or Policies</u>.  None of the provisions of this Plan, the Confirmation Order, or the Insurance Settlements or orders approving the Insurance Settlements with the Insurers entered in this case affect the rights of a Tort Claimant to pursue a claim or recovery against (a) any person or entity which is not a Released Party, and/or (b) any insurance policies other than the insurance policies that are the subject of the Insurance Settlements.  The persons or entities referred to in this Article 20.5 as persons or entities which are

not a Released Party include, but are not limited to, the Archdiocese of Seattle, Morning Star Boys' Ranch, Rosalia School District, The Sulpicians (Order of St. Sulpice), the Society of Jesus (Jesuits), Patrick O'Donnell individually, James O'Malley individually, and/or any other priest or other individual alleged to have engaged in Abuse. Except as specifically provided herein, nothing in this Article 20.5 limits the rights and obligations of Morning Star Boys' Ranch under this Plan.

## ARTICLE 21
## MODIFICATION OF PLAN

The Plan may be modified by the Proponents from time to time in accordance with, and pursuant to, Bankruptcy Code §1127. The Plan may be modified by the Proponents at any time before the Confirmation Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code §§1122 and 1123, and the Proponent has complied with Bankruptcy Code §1125, provided that an acceptance of the Plan by the holder of an impaired Claim constitutes an acceptance of any subsequent modifications of the Plan which are determined by the Bankruptcy Court not to materially and adversely affect or impair the interests of Creditors..

## ARTICLE 22
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

22.1 <u>Objections to Claims except Tort Claims</u>. As of the Effective Date, Reorganized Debtor shall acquire all defenses, counterclaims and setoffs, whether equitable or legal, of Debtor to Claims held or asserted to be held against Debtor. An objection to the allowance of a Claim shall be in writing and shall be filed with the Bankruptcy Court by Debtor, Reorganized Debtor or any other party in interest. The party filing such objection shall have the right to assert the Reorganized Debtor's defenses, counterclaims and setoffs, whether equitable or legal, and shall prosecute each of its objections to a Claim until determined by a Final Order

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -73
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 35 of 46

unless such party (a) compromises and settles an Objection to a Claim or Interest by written stipulation, or (b) withdraws an objection to a Claim with approval of the Bankruptcy Court.  Notwithstanding any other provision in the Plan, no payment or Distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.  Objections to Claims shall be filed and served no later than 60 days after the Confirmation Order.  This Article 22.1 shall have no application to Class 5 Deposit and Loan Claims and Other Parish and Catholic Entity Secured and Unsecured Claims, Class 7 Tort Claims, or Class 8 Priest Retirement Claims.

22.2    <u>Disputed Distribution</u>.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Reorganized Debtor or the Plan Trust may, in lieu of making such Distribution to such holder, make such distribution into an escrow account until the disposition shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to the dispute.

22.3    <u>Ex Parte Approval</u>.  The Debtor or Reorganized Debtor shall be authorized to settle objections to Claims, except Class 7 Tort Claims, of non-insiders or applications for payment of Administrative Expenses Claims (other than for fees and expenses of a Professional Person) in settlement amounts of less than $20,000 ex parte and without notice to any party.

**ARTICLE 23**
**RETENTION OF JURISDICTION**

23.1    <u>Retained Jurisdiction</u>.  Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are implemented until entry of an order concluding and

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -74
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 36 of 46

terminating the Case.  Without limiting the generality of the foregoing, the Court shall retain jurisdiction of the following contested matters and proceedings.

23.1.1    Allowing any Claim arising prior to Confirmation as a cost and expense of the administration of the Case.

23.1.2    Re-examining any Claim that has been Allowed, except Tort Claims Allowed under Article 11.

23.1.3    Hearing and determining any objection to a Claim, except a Tort Claim.  The failure of Debtor or Reorganized Debtor to object to, or to examine, any Claim except a Tort Claim shall not be deemed a waiver of Debtor's or Reorganized Debtor's right to object to, or re-examine, any Claim except a Tort Claim.

23.1.4    Hearing and determining any Avoidance Action brought by the Debtor, the Reorganized Debtor, or the Plan Trustee.

23.1.5    Hearing and determining all causes of action, controversies, disputes, or conflicts between Debtor or Reorganized Debtor, or the Plan Trust, and any other party, including those that were pending prior to Confirmation.

23.1.6    Hearing and determining any motions brought by Debtor or Reorganized Debtor seeking approval of a proposed sale of an asset of the Estate.

23.1.7    Hearing and determining all questions and disputes regarding title to the property of the Debtor, its Estate, Reorganized Debtor, the Parishes or the Plan Trust.

23.1.8    Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -75
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 37 of 46

23.1.9    Hearing and determining any actions brought by the Debtor or Reorganized Debtor to protect Debtor, the Estate, or Reorganized Debtor, or the Plan Trustee to protect the Plan Trust.

23.1.10   Issuing any order necessary to implement the Plan or Confirmation Order, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Estate, the Reorganized Debtor or the Plan Trust.

23.1.11   Hearing and determining any dispute relating to the terms or implementation of the Plan or Confirmation Order, or the Plan Trust, or to the rights or obligations of any parties in interest with respect thereto.

23.1.12   Authorizing the modification of the Plan after Confirmation pursuant to the Bankruptcy Code.

23.1.13   Entering orders concluding and terminating the Case.

23.1.14   Determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising therefrom.

23.1.15   Enforce the provisions of Article 26.

23.2    Exercise of the Bankruptcy Court's continuing jurisdiction of matters related to the Plan Trust Agreement after the Bankruptcy Case has been closed shall not require that the Bankruptcy Case be reopened.

23.3    The Debtor, Bishop William S. Skylstad, and the Executive Committee of the Association of Parishes, by joining as Proponents of this Plan, and the Parishes and their Parish Entities, the Participating Parishes and their Parish Entities, the Catholic Entities and the Participating Catholic Entities, by participating in the Plan, hereby waive any constitutional or statutory defenses to enforcement of this Plan based on any assertion that such enforcement burdens

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -76
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 38 of 46

or impairs their rights, or the rights of any other person, to the free exercise of their religion.

## ARTICLE 24
## REORGANIZATION OF DEBTOR

24.1   Continued Corporate Existence.  Reorganized Debtor shall continue to exist in accordance with the law of Washington and, subject to the limitations provided in Article 25.7, Canon Law, and pursuant to its Articles of Incorporation and Bylaws in effect prior to the Effective Date.  On and after the Effective Date, Reorganized Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules except as provided in this Plan.

24.2   Management of Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor will continue to be managed in accordance with applicable law.

## ARTICLE 25
## GENERAL PROVISIONS

25.1   Administrative Expense Claims Bar Date.  The deadline for filing Claims entitled to priority pursuant to §§507(a)(1) and (b) of the Bankruptcy Code incurred prior to the Effective Date, with the exception of Administrative Expense Claims for fees and costs of a Professional Person, Allowed Ordinary Course Administrative Expense Claims, and Post Petition Abuse Claims, shall be 30 days following Confirmation.  Failure to file a Claim by this date shall conclusively bar the claimant from asserting his Claim, which Claim shall be forever discharged; provided that Post Petition Abuse Claims are subject only to applicable statutes of limitations; and provided further that in consideration for exclusion of Post Petition Abuse Claims from discharge under Article 20.1 and from the Claims filing

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -77
291/526060.82
030707 1145/62174.00001

deadline established by this Article 25.1, no Allowed Administrative Expense Claims for fees and costs of a Professional Person or Allowed Ordinary Course Administrative Expense Claims shall be subject to disgorgement for the benefit of holders of Post Petition Abuse Claims.

25.2 <u>Bar Date for Professionals</u>. Applications for final approval of compensation for services rendered and reimbursement of expenses incurred by a Professional Person through the Effective Date shall be filed on or before 60 days after the Effective Date.

25.3 <u>Post Confirmation Professional Fees</u>. Except as provided by Article 11.9, any Professional Fees incurred by any Professional Person employed by the Reorganized Debtor after the Effective Date shall be treated as part of the fees and expenses of the Reorganized Debtor, shall be paid by the Reorganized Debtor and need not be submitted to the Bankruptcy Court for approval. Any Claims for fees, costs, and expenses incurred by the TCR, the Plan Trustee, the FCR, the TCC, or the TLC, and for Professional Fees incurred by the TCR, the Plan Trustee, the FCR, the TCC, the TLC, or the Debtor or the Reorganized Debtor pursuant to Article 11.9, after the Effective Date ("Post Confirmation Fees") shall be treated as part of the fees and expenses of the Plan Trust, shall be paid by the Plan Trust, and must be submitted to the Bankruptcy Court for approval. Employment of professionals by the TCR or the Plan Trustee shall be subject to Bankruptcy Court approval pursuant to §§327 and 328 of the Bankruptcy Code and Bankruptcy Rules 2014. If the Plan Trust Reserve is not sufficient to pay Post Confirmation Fees approved by the Bankruptcy Court, the excess shall be paid from the Matrix Fund, the Litigation Fund and the Non-Releasing Litigation Fund in proportion to the amounts allocated to such Funds pursuant to Article 11.2.4.

25.4    Substantial Consummation.  The Plan shall be deemed substantially consummated on the Closing Date if Debtor has performed all obligations provided by the Plan to be performed within that time.

25.5    Payments Shall Be Timely.  Reorganized Debtor and the Plan Trust shall timely make all payments required under this Plan.  Without limiting the generality of the foregoing, Reorganized Debtor shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. §1930(i)(6) following Confirmation until the case is closed.  After Confirmation, Reorganized Debtor shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the case remains open.  The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

25.6    Stay of Confirmation Order Shall Not Apply.  The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms immediately upon entry absent further order of the Court.

25.7    Governing Law.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington and not Canon Law, without giving effect to its conflicts of law principles; provided that the rights and obligations of the Debtor, the Reorganized Debtor, the Parishes and the Catholic Entities among themselves but not with respect to any third parties also shall be governed by Canon Law.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -79
291/526060.82
030707 1145/62174.00001

04-08822-FPC11    Doc 1774-1    Filed 03/07/07    Entered 03/07/07 15:13:55    Pg 41 of 46

25.8　Extension Of Payment Dates.  If any payment date falls due on any day which is not a Business Day, then such due date shall be extended to the next Business Day.

25.9　Notices.  Any notice required or permitted to be provided under the Plan shall be in writing and served by regular first class mail, overnight delivery, or hand-delivery.

25.10　Closing of the Case.  At such time as the Plan has been fully administered and/or the Plan has been substantially consummated, the Reorganized Debtor will file an application for Final Order showing that the Plan has been substantially consummated.  The Reorganized Debtor will file an application for Final Order upon notice to only those Creditors, holders of Interests, and parties that have filed requests for notice at any time after the Petition Date, after which an order approving the Reorganized Debtor's final report and closing the Reorganization Case may be entered.  Exercise of the Bankruptcy Court's continuing jurisdiction of matters related to the Plan Trust Agreement shall not require that the Bankruptcy Case be reopened.

25.11　Interest.  Whenever interest is to be computed under the Plan, interest shall be simple interest and not compounded.

25.12　Additional Assurances.  The Debtor, the Reorganized Debtor, the Plan Trustee, the Participating Parishes, the Participating Catholic Entities, the Note 2 Parishes, the Note 3 Parish, the Parish Group 1, the Parish Group 2 and the Creditors holding Claims herein will execute such other further documents as are necessary to implement any of the provisions of the Plan.

25.13　Cramdown.  The Proponents hereby request, if necessary, confirmation of the Plan pursuant to Bankruptcy Code §1129(b) with respect to any impaired Class of Claims which does not vote to accept the Plan.

25.14  Fractional Dollars.  Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars shall be made.  When any payment or distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding of such fraction to the nearest whole number (up or down).

25.15  Dissolution of Committees and termination of FCR.  On the 30th day after latter of the dates on which (a) the TCR's estimation of the aggregate amount of the Matrix Tort Claims, Litigation Tort Claims and Non-Releasing Litigation Tort Claims pursuant to Article 11.2.4 becomes a Final Order, or (b) the Confirmation Order becomes a Final Order, the TLC and the TCC shall be dissolved.  The FCR's appointment shall be terminated on the latter of the Effective Date and the date on which the Confirmation Order becomes a final order.  If the TCR or the Plan Trustee resigns or becomes unable to serve, the TCC and the TLC as constituted on the date of their dissolution shall be automatically reconstituted, the FCR's appointment shall be automatically reinstituted, and the employment of their respective counsel shall be automatically approved, for the sole purpose of representing their respective constituencies and clients in connection with the appointment of a successor until a successor is appointed pursuant to a Final Order, and their fees, costs and expenses shall be paid pursuant to Article 25.3.

25.16  Headings.  The headings of the articles, paragraphs, and section of the Plan are inserted for convenience only and will not affect the interpretation hereof.

25.17  Successors and Assigns.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding upon, and will inure to the

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -81
291/526060.82
030707 1145/62174.00001

benefit of, the heirs, executors, administrators, successors or assigns of such Person.

### ARTICLE 26
### NON-MONETARY UNDERTAKINGS OF DEBTOR

The Debtor and/or Bishop William S. Skylstad will undertake the following non-monetary obligations within thirty (30) days after the Effective Date, unless otherwise noted.

26.1    For a period of not less than 9 years after the Effective Date, the Debtor will post on the Diocesan web site the names of ALL known Spokane diocesan clergy, religious clergy not incardinated in the Spokane diocese who nevertheless were functioning as clergy in and for the Spokane diocese, and order clergy or religious who are admitted, proven or credibly accused perpetrators.  For any such perpetrator who is deceased, the name of such perpetrator shall be posted in accordance with the Spokane diocesan Review Board Policy which provides for publication of the name of a deceased priest against whom a credible allegation of sexual abuse has been made only if it is requested by the abused person that the deceased priest's name be publicized.  Notwithstanding the foregoing, the Debtor shall maintain the posting for any longer period of time if recommended by the U.S. Conference of Catholic Bishops.

26.2    Debtor will also continue publication on the web site of the postings of admitted, proven or credibly accused perpetrators described above which have been posted since 2002 for the same period of time as described in Article 26.1 above.

26.3    Within one (1) year after the Effective Date, Bishop Skylstad will himself go to every parish in which any children were abused or where perpetrators served and read from the pulpit a statement identifying all

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -82
291/526060.82
030707 1145/62174.00001

perpetrators that have served in the parish and urge people to come forward and contact law enforcement, the diocesan Victim's Assistance Coordinator and/or any survivor group or organization felt appropriate by the person wishing to make a report of abuse.

26.4    Debtor will publish in the Inland Register four times per year for five (5) years after the Effective Date and one time per year for twenty (20) years thereafter, a prominent statement urging persons sexually abused by priests or religious to come forward and contact law enforcement, and the diocesan Victim's Assistance Coordinator and/or any survivor group or organization felt appropriate by the person wishing to make a report of abuse.

26.5    Bishop Skylstad will publicly support a complete elimination of all criminal statutes of limitation for child sexual abuse.

26.6    For two (2) years after the Effective Date, the Debtor will allow any person holding an Allowed Tort Claim to speak publicly in the parish where they were Abused at a time mutually agreed upon by the person holding the Allowed Tort Claim, the Debtor and the parish pastor and/or administrator.  Any such persons holding an Allowed Tort Claim who wishes to so speak publicly in the parish where they were abused shall be entitled to speak on no more than one occasion per Tort Claimant and reasonable notice of the occasion, time and place of his or her presentation shall be given by the Debtor or the parish to parish members.

26.7    Debtor will make available reasonable space but not more than one full page in each issue of the Inland Register for two (2) years after the Effective Date to allow Tort Claimants to tell their stories of abuse by priests if they desire to publish their stories.

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -83
291/526060.82
030707 1145/62174.00001

26.8 Debtor, and its representatives, will not refer either verbally or in print to the Claims of Tort Claimants as "alleged" Claims.

26.9 Within a reasonable time after the allowance of any Tort Claim, Bishop Skylstad will send letters of apology to the Tort Claimant and, if requested by the Tort Claimant, his or her immediate family.

## ARTICLE 27
## REQUEST FOR CONFIRMATION

The Proponents request entry of a Confirmation Order pursuant to §1129 of the Bankruptcy Code.

Dated this 7th day of March, 2007.

RIDDELL WILLIAMS P.S.                    BUSH STROUT & KORNFELD


By: /s/ George E. Frasier                By: /s/ Gayle Bush
    George E. Frasier, WSBA #1857          Gayle Bush
    Joseph E. Shickich, Jr., WSBA #
                                         Attorney for Unknown Claims
Attorneys for Tort Claimants' Committee   Representative


ELSAESSER JARZABEK ANDERSON              PAINE HAMBLEN LLP
MARKS ELLIOTT & MCHUGH

                                         By: /s/ Shaun M. Cross
By: /s/ Ford Elsaesser                       Shaun M. Cross
    Ford Elsaesser                            Michael Paukert
                                             Gregory J. Arpin
                                         Attorneys for Debtor

CRUMB & MUNDING, P.S.


By: /s/ John D. Munding
    John D. Munding, WSBA #21734

Attorneys for Executive Committee of
the Association of Parishes

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
JOINTLY PROPOSED BY AOP, DEBTOR, FCR AND TCC -84
291/526060.82
030707 1145/62174.00001