Shaun M. Cross
Michael Paukert
Gregory J. Arpin
Paine Hamblen LLP
717 W Sprague Ave
Ste 1200
Spokane, WA 99201
(509) 455-6000 Telephone
(509) 838-0007 Facsimile
Attorneys for Debtor

Joseph E. Shickich, Jr.
George E. Frasier
Riddell Williams P.S.
1001 4th Ave Ste 4500
Seattle WA 98154-1192
(206) 624-3600 Telephone
(206) 389-1708 Facsimile
Attorneys for the Tort
Claimants' Committee

Gayle E. Bush
Bush, Strout & Kornfeld
601 Union St Ste 5500
Seattle WA 98101-2373
(206) 521-3859 Telephone
(206) 292-2104 Facsimile
Attorneys for the Future
Claims Representative

John D. Munding
Crumb & Munding, P.S.
601 W Riverside
Ste 1950
Spokane, WA 99201
(509) 624-6464 Telephone
(509) 624-6155 Facsimile
Attorneys for the Executive
Committee of the
Association of Parishes

Ford Elsaesser
Elsaesser Jarzabek
Anderson Marks Elliott &
McHugh
123 S Third Street
PO Box 1049
Sandpoint, ID 83864-0855
(509) 263-8517 Telephone
(509) 263-0759 Facsimile
Attorneys for the Executive
Committee of the
Association of Parishes

The Honorable
Patricia C. Williams
Chapter 11

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

In re

THE CATHOLIC BISHOP OF SPOKANE a/k/a THE CATHOLIC DIOCESE OF SPOKANE,

    Debtor.

Case No. 04-08822-PCW-11

**SCHEDULE 2.83 (MATRIX PROTOCOL) TO DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION JOINTLY PROPOSED BY EXECUTIVE COMMITTEE OF THE ASSOCIATION OF PARISHES, DEBTOR, FUTURE CLAIMS REPRESENTATIVE AND TORT CLAIMANTS' COMMITTEE**

Dated: March 7, 2007

# MATRIX PROTOCOL

This Matrix Protocol is the "Matrix Protocol" defined in Section 2.83 of the Plan. It shall be used to determine the allowance of (a) each Compromise Tort Claim as provided in Section 11.4 of the Plan, (b) each Matrix Tort Claim as provided in Section 11.5 of the Plan, and (c) each Future Tort Claim-Initial that elects to proceed with allowance under the Matrix Process pursuant to Section 11.7 of the Plan. This Protocol is an integral part of the Plan and shall be implemented and enforced by the Plan Trustee and the TCR as though fully set forth in the Plan.

## SECTION I.
## Definitions

1.1     Capitalized Terms. Capitalized terms used in this Protocol shall have the meanings given them in the Plan, the Plan Trust Agreement or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated in this Protocol by reference.

## SECTION II.
## Purpose of Interpretation

2.1     Purpose. This Protocol is designed to provide guidance to the TCR in determining the amount of each Tort Claim subject to the Compromise Process, the Matrix Process and the FTC Matrix Process under the Plan, by assigning to each such Claim a value pursuant to this Protocol. This Protocol is intended to provide reasonable assurance that similar Tort Claims will be valued in substantially the same manner.

2.2     Sole and Exclusive Method. The Compromise Process set forth in Section 11.4 of the Plan shall be the sole and exclusive method by which holder of a Compromise Tort Claim may seek allowance and distribution of such Claim. The Matrix Process set forth in Section 11.5 of the Plan shall be the sole and exclusive method by which the holder of a Matrix Tort Claim may seek allowance and distribution of such Claim. The FTC Matrix Process set forth in Section 11.7 of the Plan shall be the sole and exclusive method by which each holder of a Future Tort Claim-Initial who elects to proceed with allowance under the FTC Matrix Process may seek allowance and distribution of such Claim.

2.3     General Principles. As a general principle, this Protocol intends to set out a procedure that provides substantially the same treatment to holders of similar Tort Claims who elect to proceed with allowance under the Compromise Process, Matrix Process and the FTC Matrix Process. The range of dollar amounts set forth in the Matrix below and the discretion given in this Protocol to the TCR to determine and to adjust the dollar value to be assigned to a particular Tort Claim are intended to reflect the settlement values of Tort Claims.

2.4     Interpretation. The terms of the Plan shall prevail if there is any discrepancy between the terms of the Plan and the terms of this Protocol.

## SECTION III.
## Procedure for Matrix Protocol

3.1     Allowance of Compromise Tort Claim. As provided in Section 11.4.2 of the Plan:

A Compromise Tort Claim shall be allowed if the TCR determines that the Tort Claimant has proved by a preponderance of the evidence that the Tort Claimant was abused by a Responsible Person and that the Tort Claimant's Abuse would fall within one or more of Tiers 1-3 of the Matrix Protocol if the claim were determined under the Matrix Process. Such Claims shall be allowed in the amount of $45,000 if the TCR determines by a preponderance of the evidence that the holder of such Claim was a minor at the time of such Abuse, and in the amount of $30,000 if the TCR determines by a preponderance of the evidence that the holder of such Claim was an adult at the time of such Abuse. The TCR shall not consider any applicable statute of limitations, the passage of time since the date(s) of such Abuse, or any other defenses of Debtor, in making such determinations. The TCR may, however, consider the credibility of the Tort Claimant and the facts alleged in support of the Claim.

3.2     Allowance of Matrix Tort Claim. As provided in Section 11.5.3.2:

A Matrix Tort Claim shall be allowed if the TCR determines that the Tort Claimant has proved by a preponderance of the evidence that the Tort Claimant was Abused by a Responsible Person, and does not find that there is clear, cogent and convincing evidence that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington for such Matrix Tort Claim had run on or before December 6, 2004. If a Tort Claim is allowed, the TCR shall determine the amount of such Tort Claim by assigning such Tort Claim a value pursuant to the Matrix Protocol. The TCR may consider the credibility of the Tort Claimant and the facts alleged in support of the Claim and, in the TCR's sole discretion, reduce or deny the Tort Claim.

3.3     Allowance of Future Tort Claim-Initial Under FTC and Matrix Process. As provided in Section 11.7.2.2.2 of the Plan:

If a holder of a Future Tort Claim-Initial elects to proceed with allowance under the Matrix Process, such Claim shall be allowed (a) if the TCR determines that the holder of such claim has proved by a preponderance of the evidence (i) that such holder was Abused by a Responsible Person, and (ii) that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had not begun to run on or before March 10, 2006; and (b) if the TCR does not find that there is clear, cogent and convincing evidence that the applicable statute of limitations under Chapter 4.16 of the Revised Code of Washington had run (i) after March 10, 2006, and (ii) before the date the holder of such Claim filed a proof of claim. The TCR shall determine the amount of such Claim by assigning such Claim a value pursuant to the Matrix. The TCR may consider the credibility of the Tort Claimant and the facts alleged in support of the Claim and, in the TCR's sole discretion, reduce or deny the Tort Claim.

3.4    Proof of Abuse.  As provided in Section 11.10 of the Plan:

> Within 30 days after written request therefor from the TCR, each holder of a Tort Claim to be determined by the TCR shall complete under oath the Questionnaire, shall produce all records and documents requested by the TCR, shall consent to and cooperate in any examinations requested by the TCR and performed by healthcare professionals selected by the TCR, and shall consent to and cooperate in a written and/or oral examination under oath by the TCR.  The TCR also may, but shall not be required to, obtain evidence from the Debtor, the Reorganized Debtor or any other party, and shall have all of the rights and powers of the Debtor to take discovery under part VII of the Bankruptcy Rules.  The TCR's determination shall be made expeditiously.  The extent to which the Federal Rules of Evidence will be applied by the TCR in assessing the credibility and competency of witnesses shall be in the sole discretion of the TCR.  The Federal Rules of Evidence, to the extent determined by the TCR to be applicable, shall be liberally construed to promote justice.

3.5    Meeting With TCR.  Each holder of a Tort Claim who elects to proceed with allowance under the Compromise Process, the Matrix Process or the FTC Matrix Process may request an in-person meeting with the TCR, with or without counsel.  The TCR shall establish the time, place and duration of such meeting.

3.6    Information from Other Parties.  Any party shall the right to provide additional information to the TCR relative to the allowance or valuation of any Tort Claim.  As provided in Section 11.9 of the Plan:

> (a) any person may provide information about a Tort Claim and state a position with respect to a Tort Claim to the TCR, the Plan Trustee or the Reorganized Debtor, which information and statement of position shall be transmitted to the affected Tort Claimant, and (b) the TCR, the Plan Trustee or the Reorganized Debtor, in furtherance of the TCR's or Plan Trustee's duties and obligations and with due regard to the legitimate interest of a Tort Claimant to have information about his or her identity kept confidential, shall have the absolute right to provide any party in interest with any and all information regarding a Tort Claim that is in the possession, custody or control of the TCR, the Plan Trustee or the Reorganized Debtor, including the Questionnaire and the information constituting Proof of Abuse described below, subject to an agreement with the party in interest to keep such information confidential.

3.7    The Matrix.  The Matrix set forth below categorizes sexual Abuse in four (4) tiers and provides the dollar range to which an Tort Claim may be assigned:

04-08822-FPC11    Doc 1797    Filed 03/15/07    Entered 03/15/07 16:30:45    Pg 4 of 8

| Tier | Type of Sexual Abuse | Examples | Range |
|---|---|---|---|
| 1 | Penetration | - Sexual intercourse, whether oral, anal or vaginal<br>- Manual penetration<br>- Penetration with object | $750,000-$1,500,000 |
| 2 | Touching of the Sexual or Other Intimate Parts (unclothed) | - Masturbation of Tort Claimant by perpetrator<br>- Masturbation of perpetrator by Tort Claimant<br>- Mutual masturbation<br>- Touching under Tort Claimant's clothes or when Tort Claimant is unclothed<br>- Touching under perpetrator's clothes or when perpetrator is unclothed<br>- Touching of or by others caused by the perpetrator | $150,000-$749,999 |
| 3 | Touching of the Sexual or Other Intimate Parts (clothed) | - Touching over Tort Claimant's clothes<br>- Touching over perpetrator's clothes<br>- Touching of or by others caused by the perpetrator | $75,000-$149,999 |
| 4 | Sexual Abuse-No Touching | - Perpetrator exposes self to Tort Claimant<br>- Perpetrator inappropriately looks at Tort Claimant's sexual or intimate parts<br>- Perpetrator takes a sexual or inappropriate photograph or video of Tort Claimant<br>- Perpetrator inappropriately shows anything sexual to Tort Claimant, such as photographs, magazines, or books<br>- Sexual games (skinny dipping, strip poker, hot tubing)<br>- Phone sex/verbalized sex reenactment | $15,000-$74,999 |

3.8 <u>Guidelines for Use of Matrix</u>.

(a) A Tort Claim shall be placed in one of the four tiers corresponding with the type of Abuse by a Responsible Person proved by the Tort Claimant by a preponderance of the evidence.

(b) If a Tort Claimant has one or more Tort Claims that would fall into more than one tier, then the Claims shall be placed in the highest ranked tier. A Tort Claimant cannot have Claims in more than one tier.

(c) A Claim shall be assigned a dollar amount within the range set forth within the tier, except when exceptional circumstances permit the moving of the Claim to a higher or lower tier as provided in paragraphs (j) and (k) below.

(d) The determination of the dollar amount to be assigned to a particular Tort Claim within the Range set forth within the tier should take into account the Factors set forth below as they relate to the Tort Claim:

| Factor | Examples (Not intended to be exclusive list of examples) | |
|---|---|---|
| Age of Tort Claimant When Abused | - Adolescent<br>- Prepubescent child | - Teenager |

| Factor | Examples (Not intended to be exclusive list of examples) | |
| --- | --- | --- |
| Duration of Abuse | • Single episode<br>• Days<br>• Weeks | • Months<br>• Years |
| Frequency of Abuse | • Single episode<br>• Infrequent | • Chronic |
| Grooming Behaviors/ Precipitators of Abuse | • Access to pornography<br>• Alcohol/drugs<br>• Allowed to drive<br>• Allowed to stay up late<br>• Food<br>• Gifts/Toys<br>• Money<br>• Overnight stay with perpetrator<br>• Physical force<br>• Physical threats or coercion | • Socializing with Tort Claimant's family<br>• Special Privileges<br>• Special church activities<br>• Spiritual manipulation<br>• Taken to or allowed to participate in sporting and other events<br>• Taking Tort Claimant by surprise<br>• Travel with Tort Claimant<br>• Verbal threats or coercion |
| Legal | • Settlements made by Diocese pre-petition or post-petition<br>• Settlements or awards already received by Tort Claimant from other sources<br>• Expected contributions from other sources | • Whether claim is by Tort Claimant or claim is derivative (e.g., loss of consortium)<br>• Whether claim is for wrongful death |
| Location of Abuse | • In a car<br>• In church<br>• Outings (camp, park, pool, etc.)<br>• In perpetrator's home/office/parish residence | • In school<br>• Vacation house<br>• In Tort Claimant's home |
| Effects of Abuse | • Anxiety<br>• Depression<br>• Fear and guilt<br>• Grief<br>• Hostility, anger and rage (self-directed and outwardly directed)<br>• Impaired relationships and problems with intimacy<br>• Isolation and alienation<br>• Lack of trust | • Low self esteem and negative self image<br>• Post-traumatic stress<br>• Psychosis<br>• Sexual identity confusion and homophobia<br>• Sexual problems, compulsions or dysfunction<br>• Shame and humiliation<br>• Spiritual distress |
| Manifestations of Abuse | • Aggression/violence<br>• Alcohol and substance abuse<br>• Criminal history<br>• Delusions<br>• Divorce<br>• Flashbacks<br>• Impotence<br>• Job Instability<br>• Learning disability and attention deficit issues | • Phobias<br>• Power/control behaviors<br>• Promiscuity<br>• School and education difficulties<br>• Self-destructive behaviors<br>• Sexual offending behavior (e.g., rape, child molestation, exhibitionism)<br>• Sleep disturbances<br>• Suicidal ideas and behavior<br>• Suicide |

(e)     The TCR shall consider as a Factor that Tort Claimants who are not represented by counsel may have benefited from the work and cost incurred by Tort Claimants represented by counsel in establishing the legal and factual basis and the values reflected in the Matrix and the Debtor's eventual recognition of the seriousness of Tort Claims and that the funds received by Tort Claimants represented by counsel are reduced by their legal fees and costs. In addition, some Tort Claimants have expended substantially greater costs than others.

(f) In certain circumstances, the responsibility of the Debtor for a perpetrator may be legally attenuated or non-existent. For example, the perpetrator may belong to a non-Diocesan religious order or may not have been an employee of the Debtor or a Parish. When such circumstances are present, the TCR should consider as a Factor the responsibility for the perpetrator of (1) the Debtor and/or any Parish and (2) any other entity or entities. Such responsibility of the Debtor and/or Parish may be comparative with the other entity or entities or it may be non-existent. The TCR may adjust, reduce or eliminate the dollar value assigned to the Claim accordingly.

(g) The Factors are to be used to understand and analyze the unique characteristics of each Claim while also providing a way to compare and organize all of the Matrix Tort Claims. Different Factors will apply to different Claims and will have more or less impact on the severity of the Abuse for each Tort Claimant. The TCR should consider the Factors for each Matrix Tort Claim and, where they are less aggravating, the Matrix Tort Claim should generally be at the lower end of the Range and, where they are more aggravating, the Matrix Tort Claim should generally be at the higher end of the Range. For example, in Tier No. 2, aggravating Factors may include the age of the Tort Claimant when abused, whether there were multiple incidents over an extended period, and whether there were physical threats, coercion or situations of extended peril.

(h) For Tier No. 4, the TCR has the discretion to reduce or reject a Claim based on showering or nude swimming without evidence that the sexual gratification of the perpetrator was a Factor.

(i) Before determining the dollar amount to be assigned to a particular Claim, all Matrix Tort Claims must be reviewed and their pertinent Factors considered so that the universe of such Claims is known and such Claims can be fairly compared to one another in determining the dollar amount to be assigned to each Claim.

(j) The type of Abuse does not necessarily correlate with the Effects on or the Manifestations shown by a Tort Claimant. In some cases, a Tort Claimant who suffered Abuse in a higher tier will have less significant Effects or Manifestations, while in other cases a Tort Claimant who suffered Abuse in a lower tier will have more significant Effects or Manifestations. Hence, exceptional circumstances permit the moving of a Matrix Tort Claim to a higher or a lower tier.

(k) The TCR may determine that, although a particular requirement for inclusion in a tier has not been met, other Factors in evidence may satisfy the objective of such requirement, and, therefore, such Matrix Tort Claim should be considered to be within a higher or lower tier.

(l) The determination of the amount to be assigned to an Future Tort Claim-Initial that proceeds under the FTC Matrix Process shall be in the same manner as set forth above, provided that any Future Tort Claim must be reviewed and compared to all Matrix Tort Claims so that the dollar amount to be assigned to such Future Tort Claim-Initial can be fairly compared to the amounts assigned to Matrix Tort Claims.

3.9 Determinations by the TCR and Requests for Reconsideration. As provided in Section 11.11 of the Plan:

> The TCR shall notify the Tort Claimant in writing of the TRC's determination with respect to the Tort Claimant's Claim, which determination shall be final unless the Tort Claimant makes a timely request for reconsideration and shall not be subject to any

appeal.  The Tort Claimant may request reconsideration of such determination by delivering a written request for reconsideration to the TCR within 20 days after the date of the TCR's determination, and may submit additional evidence and argument in support of such request with such request.  No other person may request reconsideration or submit additional evidence or argument.  The TCR shall notify the Tort Claimant in writing of the TCR's determination of such request for reconsideration.  The TCR's determination of such request for reconsideration shall be final and not subject to any appeal.

## SECTION IV.
## Confidentiality

4.1     Confidentiality.  Consistent with the Plan, all information the Plan Trustee and the TCR receive from any source about any Tort Claimant, and any information the TCR provides to any party in interest, shall be held strictly confidential and shall not be disclosed to any third party.  Such confidentiality is a part of the Plan and may be enforced by contempt proceedings.

## SECTION V.
## General Guidelines

5.1     Non-Compensatory Damages and Other Theories of Liability.  In determining the value of any tort claim, punitive or non-compensatory damages shall not be considered or allowed, notwithstanding their availability in the tort system.  Further, claims shall not be allowed that are based upon conspiracy, concerted action, or any other theories of liability that do not meet the criteria for eligibility articulated in the Plan or this Protocol.

5.2     Withdrawal of Claims.  A Tort Claimant can irrevocably withdraw a Tort Claim at any time upon written notice to the TCR.

## SECTION VI.
## Late Filed Claims

6.1     Definition of Late Filed Claim.  A "Late Filed Claim" is a proof of claim filed after the Bar Date of March 10, 2006, by a Tort Claimant who is not a Future Tort Claimant.

6.2     Excusable Neglect.  The TCR shall determine whether the filing of a Late Filed Claim by a Tort Claimant was the result of excusable neglect.  "Excusable neglect" means that term as it is used in Bankruptcy Rule 9006(b)(2) and as interpreted by applicable law.  If the TCR finds no excusable neglect, then the TCR shall deny the Tort Claim and the dollar value assigned to it shall be $0.00.  If the TCR finds excusable neglect, then the TCR shall permit the Tort Claim to proceed in accordance with the election made by the Tort Claimant under the Plan.  Before making a finding on excusable neglect, the TCR shall have the discretion to offer the Tort Claimant a compromise valuation.

## SECTION VII.
## No Res Judicata Effect

7.1     The TCR's determination with respect to a Tort Claim shall have no preclusive or res judicata effect outside of this Bankruptcy Case as to any third party.

04-08822-FPC11    Doc 1797    Filed 03/15/07    Entered 03/15/07 16:30:45    Pg 8 of 8