The Honorable Patricia C. Williams
Chapter 11

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

In re

THE CATHOLIC BISHOP OF SPOKANE
a/k/a The Catholic Diocese of Spokane,

Debtor.

Case No. 04-08822

**ORDER CONFIRMING
DEBTOR'S SECOND AMENDED
PLAN OF REORGANIZATION
JOINTLY PROPOSED BY
EXECUTIVE COMMITTEE OF
THE ASSOCIATION OF
PARISHES, DEBTOR, FUTURE
CLAIMS REPRESENTATIVE
AND TORT CLAIMANTS'
COMMITTEE AND CERTAIN
NON-MATERIAL
CLARIFICATIONS AND
MODIFICATIONS THERETO,
LIMITING LIABILITY OF
CERTAIN PARTIES, AND
ENJOINING CERTAIN ACTS**

**I.
FINDINGS**

A.     **The Plan.**

Debtor's Second Amended Plan of Reorganization Jointly Proposed by

Executive Committee of the Association of Parishes, Debtor, Future Claims

Representative and Tort Claimants' Committee ("Plan") was filed on March 7,

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 1
291/571489.02
042407 1118/62174.00001

**FILED**

APR 2 4 2007

S. McGREGOR, CLERK
U.S. BANKRUPTCY COURT

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07    Pg 1 of 47

1  2007. [Docket No. 1774]. Unless otherwise specified herein, capitalized terms
2  herein shall have the same meaning assigned to them in the Plan.

3  **B.    Disclosure Statement.**

4  On March 9, 2007, the Court entered its Order approving the First
5  Amended Disclosure Statement for Second Amended Plan of Reorganization
6  Jointly Proposed by Executive Committee of the Association of Parishes, Debtor,
7  Future Claims Representative and Tort Claimants' Committee ("Disclosure
8  Statement") dated March 7, 2007.

9  **C.    Solicitation of Acceptances.**

10  Debtor duly provided a copy of the Plan and the approved Disclosure
11  Statement, along with a ballot on which creditors may indicate acceptance or
12  rejection of the Plan, to a) all creditors and other parties in interest indicated on
13  the official mailing matrix maintained by the Clerk of the Court and b) to all known
14  creditors of Debtor as of December 6, 2004 ("Petition Date"). Debtor has
15  complied with the notice requirements as to all such parties

16  **D.    Non-Material Additions to and Modifications of the Plan.**

17  The Proponents have made certain additions to and modifications of the
18  Plan to resolve informally actual or potential objections to the Plan which are
19  detailed in Section II(H) below. Such additions and modifications do not materially
20  or adversely affect or impair the interests of Creditors, and no further solicitation or
21  notice is required with respect to such additions and modifications.

22  **E.    Debtor Has Met Burden of Proof Regarding Confirmation.**

23  After hearing on notice on April 24, 2007, and notwithstanding the
24  objections filed by Larry E. Miller on April 3, 2007 [Docket #1849] and Leo Driscoll
25  on April 13, 2007 [Docket #1860], Debtor has met its burden of proving all of the
26  elements of Bankruptcy Code § 1129(a).

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 2
291/571489.02
042407 1118/62174.00001

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 2 of 47

**F.    Findings of Fact and Conclusions of Law.**

All findings of fact and conclusions of law made by the Court on the record in the hearing on April 24, 2007, are incorporated herein pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52(a). Therefore, it is hereby ordered as follows:

**II.
ORDER**

**A.    Findings Incorporated.**

The Findings set forth above are incorporated herein for all purposes.

**B.    Objections Overruled and Plan Confirmed.**

The Plan is approved and confirmed in its entirety under Bankruptcy Code § 1129. The terms of the Plan and the exhibits thereto are incorporated by reference into and are an integral part of the Plan and this Order. All objections to the Plan that have not been withdrawn, waived, or settled are overruled on the merits.

**C.    Plan is Binding.**

Subject to the provisions of the Plan, and notwithstanding any otherwise applicable law, immediately upon entry of this Order, the terms of the Plan and this Order are deemed binding upon Debtor, any and all holders of Claims with respect to Debtor, any and all nondebtor parties to the transactions provided for in Article 15 of the Plan, any and all nondebtor parties to executory contracts and/or unexpired leases with Debtor, and any and all entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan or herein, and the respective heirs, executors, administrators, successors, or assigns, if any, of the foregoing.

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 3
291/571489.02
042407 1118/62174.00001

**D.** **Executory Contracts.**

Upon the Effective Date, Debtor is authorized and shall be deemed to assume, reject, and/or abandon executory contracts and unexpired leases as provided in the Plan. The Court shall decide any disputes regarding cure amounts or other issues related to assumption, rejection or abandonment after further notice and opportunity for hearing.

**E.** **Approvals and Authorizations not Exclusive.**

The approvals and authorizations specifically set forth in this Order are nonexclusive and not intended to limit the authority of Debtor, the TCR, the Plan Trustee or any other party in interest from taking any and all actions necessary to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Order. In addition to the authority specifically granted by this Order, Debtor, the TCR, the Plan Trustee and any other party in interest are authorized and empowered to take any and all such actions as any such person may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Order, in accordance with Bankruptcy Code § 1142, without the need for any consent from any governing or advisory bodies, and such actions shall be deemed taken by unanimous action of such governing or advisory bodies.

**F.** **Execute and Deliver Loan and Other Documents.**

On or before the Closing Date, Reorganized Debtor and all other parties to the documents and instruments provided for in Article 15 of the Plan are authorized and directed to execute, deliver and record such documents as provided in and for the purposes set forth in the Plan. As provided for in Article 15 of the Plan, any disagreements relating to the form and/or substance of such documents shall be determined by the Bankruptcy Court.

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 4
291/571489.02
042407 1118/62174.00001

1    **G.     No Stamp, Recording, Etc. Tax.**

2        Pursuant to §1146 of the Bankruptcy Code, (a) the issuance, transfer or

3    exchange of notes or equity securities, (b) the creation or recordation of any

4    mortgage, deed of trust, lien, pledge or other security interest, (c) the making or

5    assignment of any lease or sublease, or (d) the making or delivery of any deed or

6    other instrument of transfer under, in furtherance of, or in connection with, this

7    Plan, including, without limitation, any merger agreements, agreements of

8    consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of

9    sale, and transfers of tangible property, are not subject to any stamp tax,

10   recording tax, personal property tax, real estate transfer tax, or other similar tax.

11   Any transfers pursuant to the Plan shall not be subject to any such taxes, and the

12   appropriate state or local government officials or agents are hereby directed to

13   forego the collection of any such tax or governmental assessment and to accept

14   for filing and recordation any of the foregoing instruments or other documents

15   without the payment of any such tax or governmental assessment.

16   **H.     Non-Material Clarifications and Modifications.**

17        1.      Clarification of Deemed Election of Matrix Tort Claim Treatment.

18        Article 11.1.1.4 of the Plan is hereby amended to add the following

19   underlined language:

20        Each holder of a Class 7 Tort Claim (except the FCR, Future Tort

21        Claimants, Settled Compromise Tort Claimants, Settled Matrix Tort

22        Claimants and Non Releasing Litigation Tort Claimants) who does not elect

23        to be treated as a holder of a Convenience Tort Claim, a Compromise Tort

24        Claim, a Matrix Tort Claim or a Litigation Tort Claim by making such

25        election on such holder's Ballot and executing and delivering to Debtor on

26        or before the Ballot Deadline a Release of Claims shall be deemed to have

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 5 of 47

conditionally elected to be treated as a holder of a Matrix Tort Claim. To complete such conditional election, such holder must execute and deliver to the Debtor a Release of Claims within 60 days after the Effective Date. Debtor shall give such holder notice within 15 days after the Effective Date of such conditional election and his or her right to complete such conditional election. If such holder executes and delivers to the Debtor a Release of Claims within 60 days after the Effective Date, such holder shall be deemed to have elected to be treated as a holder of a Matrix Tort Claim with the same right to amend such election under Article 11.1.1.3.2 as a holder of a Matrix Tort Claim who made such election as his or her initial election. If such holder does not execute and deliver to the Debtor a Release of Claims within 60 days after the Effective Date, such holder shall be deemed to have elected to be treated as a holder of a "Non Releasing Litigation Tort Claim", which is a Tort Claim to be allowed and paid under the Litigation Process. A reference to a Litigation Tort Claim does not include a Non Releasing Litigation Tort Claim.

2. Clarification of Transfer of Guse Trust to Catholic Charities of Spokane.

In furtherance of Debtor's obligation under Article 15.3.1 of the Plan to transfer its interest in the Guse Trust to Catholic Charities of Spokane, the Debtor shall immediately transfer, clear of any liens or claims and pursuant to the terms of the Gift Use Agreement between the Debtor and Catholic Charities of Spokane, the proceeds of the Guse Trust to Catholic Charities of Spokane upon receipt of such proceeds from the Guse Trust trustee on termination of the trust on January 18, 2008.

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 6
291/571489.02
042407 1118/62174.00001

3.  Boundary Line Adjustment regarding Immaculate Heart Retreat
    Center ("IHRC") and Related Property.

   In furtherance of the settlement of competing claims to real property titled in
the name of or otherwise allegedly owned by the Debtor, and of the obligation of
IHRC to transfer 20 acres of real property to Debtor pursuant to Article 15.3 of the
Plan, on the Effective Date Debtor, IHRC and Catholic Cemeteries of Spokane
("Cemeteries") shall complete a boundary line adjustment of certain parcels of
adjacent real property and shall convey among themselves portions of such real
property in order that following such boundary line adjustment and conveyances
the Debtor will own Proposed Parcels A and D shown on Exhibit A, pages 1,2 and
6, IHRC and/or its Parish Entity will own Proposed Parcels 34113.9045, B and B1
shown on Exhibit A, pages 1, 3, 4 and 13, and Cemeteries will own Proposed
Parcel C shown on Exhibit A, pages 1 and 5.  To accomplish this, Cemeteries will
convey the property described in Exhibit A, pages 11 and 12 to the Debtor, and
the property described in Exhibit A, page 4, and pages 7 and 8 to IHRC and/or its
Parish Entity; Debtor will convey the property described in Exhibit A, pages 9 and
10 to Cemeteries, and the property described in Exhibit A, page 3 and Exhibit A,
page 13, to IHRC and/or its Parish Entity; and IHRC will quit claim the property
described in Exhibit A, pages 2 and 6 to Debtor.  Cemeteries and IHRC shall
obtain all approvals, consents or permits to accomplish the forgoing and to make
Parcels A and D into two legally marketable lots.  Approval of the proposed
boundary line adjustment by Spokane County is dependent on and will be
facilitated by entry of this Order.  Nothing herein shall limit the obligation of IHRC
to deliver a Quit Claim Deed to Parcels A and D in trust to Debtor on or before
April 24, 2007 pursuant to Article 15.3.4 of the Plan.  The property described in

Exhibit A, page 13 shall be additional collateral for the Parishes Note 2 and shall be a part of the Parish Collateral.

4. Deletion of Mistaken Reference to Property Transfer by Morning Star Boys' Ranch.

The reference to "Schedules 15.3.1(a) and (b)" in Article 15.3.4 of the Plan is hereby deleted and replaced with a reference to Schedule 15.3.1, and Article 15.3.3 of the Plan is hereby amended to delete the following stricken language:

Morning Star Boys' Ranch and Immaculate Heart Retreat Center shall take all steps necessary to assure that the Quit Claim Deeds to the Heckett Ranch and the 20 acre parcel are sufficient to enable the Debtor to obtain a Lender's Policy of Title Insurance pursuant to Article 15.1.1.1 insuring that the Debtor's Deed of Trust will grant the Plan Trustee a first priority lien free and clear of all liens and encumbrances. Such Quit Claim Deeds shall be in form and substance acceptable to Proponents, the TLC, and, as appropriate, Morning Star Boys' Ranch and Immaculate Heart Retreat Center, or, if they do not agree, approved by the Bankruptcy Court.

5. Correction of Mistaken Reference to "Closing Date".

The second sentence of Article 15.4.3.2 of the Plan is hereby amended to delete the following stricken language and add the following underlined language:

On or before the Closing Effective Date, the Plan Trustee shall record and file any documents and instruments designated by the Plan Trustee to be recorded and filed with the appropriate county auditor or recorder and the Washington Department of Licensing.

6. Exculpation and Limitation of Liability.

Article 20.2 of the Plan is hereby amended to include the following underlined language:

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 8
291/571489.02
042407 1118/62174.00001

1    *Neither the Debtor, the Reorganized Debtor, AOP, the Committees, the*
2    *Future Claims Representative, the Plan Trustee, the TCR, nor any of*
3    *their respective present or former members, managers, officers,*
4    *directors, employees, advisors, attorneys, or agents acting in such*
5    *capacity will have or incur any liability to, or be subject to any right of*
6    *action by, any holder of a Claim (including a Future Tort Claim) or any*
7    *other party-in-interest or any of their respective agents, employees,*
8    *representatives, financial advisors, attorneys, affiliates, or any of their*
9    *successors or assigns, for any act or omission in connection with,*
10   *relating to, or arising out of the Reorganization Case, the pursuit of*
11   *confirmation of the Plan, or the administration of the Plan or Plan*
12   *Trust, or the property to be distributed under the Plan or Plan Trust,*
13   *except for their willful misconduct or ultra vires acts; and in all*
14   *respects such parties shall be entitled to reasonably rely upon the*
15   *advice of counsel with respect to their duties and responsibilities*
16   *under the Plan or the Plan Trust or in the context of the*
17   *Reorganization Case.  Nothing in this paragraph in any way limits the*
18   *liability of an attorney or other professional for any party in interest to*
19   *such attorney's or other professional's own client (such clients are the*
20   *Debtor, the Reorganized Debtor, AOP, the Committees, the Future*
21   *Claims Representative, the Plan Trustee, and the TCR, but not*
22   *individual Tort Claimants).  Individual Tort Claimants are not clients of*
23   *the Future Claims Representative, the Plan Trustee or the TCR.*

24   7.    Continuing Jurisdiction Regarding Plan Trust Agreement.

25   Article 20.2 of the Plan is hereby amended to delete the following stricken

26   language and substitute the following underlined language:

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 9
291/571489.02
042407 1118/62174.00001

~~Exercise of the Bankruptcy Court's continuing jurisdiction of matters related~~
~~to the Plan Trust Agreement after the Bankruptcy Case has been closed~~
~~shall not require that the Bankruptcy Case be reopened.~~

The Bankruptcy Court shall reopen the Bankruptcy Case upon a showing
that a party seeks to invoke the Bankruptcy Court's continuing jurisdiction
of matters related to the Plan Trust without a further showing of cause.

8.    Clarification of Retained Jurisdiction over Plan Trust.

The following shall be added as a new Article 23.1.16 of the Plan:
Notwithstanding the Bankruptcy Court's retained jurisdiction over all matters
related to the Plan Trust, the Plan Trustee, upon notice to the Debtor and
Notice Parties, may seek permission of the Bankruptcy Court for
commencement of an action in the Superior Courts of the State of
Washington or in any other state court of original jurisdiction for relief in any
matter concerning the interpretation or resolution of any dispute related to
the Plan Trust, or for enforcement of any rights claimed by the Plan
Trustee. If the Bankruptcy Court concludes, in the exercise of its discretion,
that the Plan Trustee would be aided in the administration of the Trust by
referral of the matter to the Superior Court or other state court, the
Bankruptcy Court may grant the Plan Trustee permission to commence an
action in the Superior Court of the State of Washington or any other state
court of original jurisdiction.

9.    Clarification of Debtor's Right to Amend Articles and Bylaws.

Nothing in Article 24.1 of the Plan limits Reorganized Debtor's right to
amend its Articles of Incorporation or Bylaws under applicable non-bankruptcy
law.

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 10
291/571489.02
042407 1118/62174.00001

10. Post Confirmation Professional Fees.

Article 25.3 of the Plan is hereby amended to add the following underlined language:

Except as provided by Article 11.9, any Professional Fees incurred by any Professional Person employed by the Reorganized Debtor after the Effective Date shall be treated as part of the fees and expenses of the Reorganized Debtor, shall be paid by the Reorganized Debtor and need not be submitted to the Bankruptcy Court for approval. Any Claims for fees, costs, and expenses incurred by the TCR, the Plan Trustee, the FCR, the TCC, or the TLC, and for Professional Fees incurred by the TCR, the Plan Trustee, the FCR, the TCC, the TLC, or the Debtor or the Reorganized Debtor pursuant to Article 11.9, after the Effective Date ("Post Confirmation Fees") shall be treated as part of the fees and expenses of the Plan Trust, shall be paid by the Plan Trust, and must be submitted to the Bankruptcy Court for approval, provided that the TCR, the Plan Trustee and their respective Professional Persons (each individually an "Applicant") may apply monthly to the Bankruptcy Court for approval of their fees and expenses, or may send monthly invoices of fees and expenses by mail, fax, or email to the U.S. Trustee and the Notice Parties (as defined in the Plan Trust Agreement). Unless the Applicant receives a written objection within fifteen (15) calendar days after sending the monthly invoices to the U.S. Trustee and the Notice Parties, the Applicant's fees and expenses shall be deemed allowed, and may be paid from the Plan Trust. If a timely written objection is received by the Applicant, the Applicant shall apply to the Bankruptcy Court for approval of the requested fees and expenses, if the objection cannot be amicably resolved. Employment of professionals by

04-08822-FPC11   Doc 1921   Filed 04/24/07   Entered 04/24/07 16:32:30   Pg 11 of 47

1 the TCR or the Plan Trustee shall be subject to Bankruptcy Court approval
2 pursuant to §§327 and 328 of the Bankruptcy Code and Bankruptcy Rules
3 2014. If the Plan Trust Reserve is not sufficient to pay Post Confirmation
4 Fees approved by the Bankruptcy Court, the excess shall be paid from the
5 Matrix Fund, the Litigation Fund and the Non-Releasing Litigation Fund in
6 proportion to the amounts allocated to such Funds pursuant to Article
7 11.2.4.

8     11.    <u>Further solicitation, disclosure, notice or voting not required.</u>

9 Pursuant to Bankruptcy Rule 3019 and Bankruptcy Code § 1127, because
10 the clarifications and modifications to the Plan set forth in this Section II(H) do not
11 materially or adversely affect or impair the interests of Creditors, no further
12 solicitation or notice, disclosure of information or voting is required with respect to
13 such clarifications and modifications, and such clarifications and modifications are
14 deemed accepted by all creditors who have previously accepted the Plan.

15 **I.    Construction of Order with Plan.**

16 The failure to specifically include or reference any particular provision of the
17 Plan in this Order shall not diminish or impair the effectiveness of such provision,
18 it being the intent of the Court that the Plan be confirmed in its entirety. The
19 provisions of the Plan and of this Order shall be construed in a manner consistent
20 with each other so as to effect the purposes of each, provided, however, that if
21 there is deemed to be any inconsistency between any Plan provision and any
22 provision of this Order that cannot be so reconciled, then, solely to the extent of
23 the inconsistency, the provisions of this Order shall govern and any such
24 provisions of this Order shall be deemed a modification of the Plan and shall
25 control and take precedence.

26

**J.** **Change of Treatment Election by Tort Claimant.**

Pursuant to stipulation among the Proponents and the TLC, any Tort Claimant entitled to elect treatment as a holder of a Convenience, Compromise, Matrix, Litigation or Non-Releasing Tort Claim under Article 11 of the Plan may make or amend his or her treatment election at any time before the commencement of the Confirmation Hearing at 9:30 a.m. on April 24, 2007 notwithstanding the April 13, 2007 deadline for making such election, and such election or amended election thereafter shall be treated for all purposes as such holder's initial election. Holders of Settled Convenience or Settled Compromise Tort Claims are not eligible to make this change. Nothing in this Section affects the provisions of the Plan governing any right to or any limitation on any right to change a treatment election after the commencement of the Confirmation Hearing.

**K.** **Plan Trust a Qualified Settlement Fund.**

The Parties intend the Plan Trust to be a Qualified Settlement Fund as defined in Treasury Regulation §1.468B-1. Therefore, the Parties shall take all action necessary to ensure Qualified Settlement Fund treatment for the Plan Trust. Without limitation, the Debtor and the Plan Trust shall make the appropriate elections under Treasury Reg. § 1.468B-1(k) to be treated as a grantor trust. If it is determined that the Debtor can only make the grantor trust election with respect to a portion of the fund, the Party or Parties eligible to make the election with respect to the reminder of the fund shall make such election. If necessary, the Trustee may divide the Plan Trust into several separate trusts for the purposes of obtaining Qualified Settlement Fund treatment and the grantor trust election under section 1.468B-1(k) with respect to each such portion. Any

such administrative division shall not affect the rights of any claimants to the funds in the Plan Trust.

**L.** **Release of Claims of Parishes and Catholic Entities (Except Morning Star Boys Ranch) against Insurers.**

On the Effective Date all of the Claims of the Parishes and the Catholic Entities (except Morning Star Boys' Ranch) to coverage under the insurance policies covered by the Insurance Settlements shall be deemed released without further action in consideration of entry of the Permanent Injunction and receipt of Releases of Claims from each holder of a Tort Claim who elects to receive funds paid for such Releases of Claim.

**M.** **Subpoena Power of TCR.**

In furtherance of her right to take discovery under Article 11.10 of the Plan, the TCR shall have the power to issue subpoenas.

**N.** **U.S. Trustee Fees.**

All fees under 28 U.S.C. § 1930 owing as of the Confirmation Date will be paid on or before the Effective Date by the Debtor.

**O.** **No Stay.**

The stay set forth in Bankruptcy Rule 3020(e) shall not apply to this Order and this Order shall be enforceable immediately.

**P.** **Plan Trust Agreement Approved.**

The Plan Trust Agreement in the form attached hereto as Exhibit B is hereby approved.

**Q.** **Permanent Injunction Against Prosecution of Released Claims.**

*"Released Parties" means the Parishes, the Parish Entities, the Catholic Entities (except Morning Star Boys' Ranch) and the Insurers, and their respective agents, predecessors, successors, officials, subsidiaries,*

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 14
291/571489.02
042407 1118/62174.00001

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 14 of 47

1  *divisions, affiliates, representatives, attorneys, accountants, and all others*
2  *acting for or on their behalf (except individuals alleged to have engaged in*
3  *Abuse). Except as otherwise expressly provided in the Plan, for the*
4  *consideration described in Articles 15.3, .4, .8, and .9 of the Plan, all Persons*
5  *who have executed and delivered Releases of Claims shall be permanently*
6  *enjoined on and after the Effective Date from: (a) commencing or continuing*
7  *in any manner, any action or any other proceeding of any kind with respect*
8  *to any Claim against the Released Parties or the property of the Released*
9  *Parties related to a Discharged Claim; (b) seeking the enforcement,*
10  *attachment, collection or recovery by any manner or means of any*
11  *judgment, award, decree, or order against the Released Parties or the*
12  *property of the Released Parties, with respect any Claim against the*
13  *Released Parties related to a Discharged Claim; (c) creating, perfecting, or*
14  *enforcing any encumbrance of any kind against the Released Parties or the*
15  *property of the Released Parties with respect any Claim against the*
16  *Released Parties related to a Discharged Claim; (d) asserting any setoff,*
17  *right of subrogation, or recoupment of any kind against any obligation due*
18  *to the Released Parties with respect any Claim against the Released Parties*
19  *related to a Discharged Claim; and (e) taking any act, in any manner and in*
20  *any place whatsoever with respect any Claim against the Released Parties*
21  *related to a Discharged Claim, that does not conform to or comply with*
22  *provisions of the Plan or the Plan Trust. Such injunction is referred to as*
23  *the "Permanent Injunction".*
24
25
26

**R.  Settling Insurer Injunction.**

*All Persons (except Morning Star Boys' Ranch or an Insurer to the extent such Insurer asserts a claim for contribution, indemnity, subrogation, equitable subrogation, or similar theory arising from claims against Morning Star Boys' Ranch) who have held, hold, or may hold Claims, including but not limited to Tort Claims, against an Insurer that are barred pursuant an order approving an Insurance Settlement, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any such Claim, including, but not limited to, any Tort Claim, Future Tort Claim, or FCR Tort Claim for indemnity, contribution, subrogation or based on any similar theory; against such Insurer, and its respective predecessors, successors, officials, shareholders subsidiaries, divisions, affiliates, representatives, attorneys, merged or acquired companies or operations or assigns (collectively, the "Insurer Parties") or the property of the Insurer Parties; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Insurer Parties or the property of the Insurer Parties, with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Insurer Parties or the property of the Insurer Parties with respect to any such Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Insurer Parties with respect to any such Claim; and (e) taking any act, in any manner and in any place whatsoever,*

1   *that does not conform to or comply with provisions of the Plan or the Trust*

2   *Agreement. In the event any Person takes any action that is prohibited by,*

3   *or is otherwise inconsistent with the provisions of this Section II(Q) or the*

4   *Plan, then, upon notice to the Court by an affected Party, the action or*

5   *proceeding in which the Claim of*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 17
291/571489.02
042407 1118/62174.00001

1
2   *such Person is asserted will automatically be transferred to the Bankruptcy*

3   *Court or the District Court for enforcement of the provisions of this Section*

4   *II(Q)or the Plan.*

        DATED April 24, 2007.

5
6
7                                          _____
                                           THE HONORABLE PATRICIA C. WILLIAMS
8                                          U.S. Bankruptcy Judge for the
                                           Eastern District of Washington
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 18
291/571489.02
042407 1118/62174.00001

Presented by:

PAINE, HAMBLEN, COFFIN,
BROOKE & MILLER, LLP

By: _____
Shaun M. Cross, WSBA #9469
Michael J. Paukert, WSBA #20237
Gregory J. Arpin, WSBA #2746

Attorneys for Debtor

RIDDELL WILLIAMS P.S.

By _____
George E. Frasier, WSBA #1857
Joseph E. Shickich, Jr., WSBA #8751

Attorneys for Tort Claimants' Committee

BUSH STROUT & KORNFELD

By: _____
Gayle E. Bush, WSBA #7318

Attorney for Unknown Claims
Representative

ELSAESSER JARZABEK ANDERSON
MARKS ELLIOTT & MCHUGH

By: _____
Ford Elsaesser

CRUMB & MUNDING, P.S.

By: _____
John D. Munding, WSBA #21734

Attorneys for Executive Committee of
the Association of Parishes

PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB LLP

＊

By: _____
James I. Stang

ESPOSITO GEORGE AND
CAMPBELL PLLC

＊

By: _____
John W. Campbell, WSBA #13798

Attorneys for Tort Litigants' Committee

＊Not Presented. Form &
Content acceptable.
Notice of presentation
waived.

ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN,
LIMITING LIABILITY, AND ENJOINING CERTAIN ACTS - 19
291/571489.02
042407 1118/62174.00001

# EXHIBIT A



**Proposed Parcel A**
(Northerly 10.00 acre parcel for sale)
March 5, 2007

Lots 18, 19, 22, 27 and 30 of TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in Volume "E" of Plats, Page 42; together with vacated Custer Road as attaches by operation of law; situate in the Northwest quarter of Section 11, Township 24 North, Range 43 East, W.M., Spokane County, Washington;

EXCEPT those portions thereof lying easterly and southerly of the following described line:

COMMENCING at the West quarter corner of said Section 11; thence N89°07'50"E 671.32 feet along the south line of said Northwest quarter, as shown on Record of Survey filed in Book 96 of Surveys, Pages 68 and 69, under Spokane County Auditor's File No. 4570602; thence N02°24'54"W 222.05 feet along the westerly line of Lot 30 of said TOWNSITE OF PIEDMONT SPRINGS, to the POINT OF BEGINNING;

thence N68°21'15"E 268.50 feet; thence N40°52'37"W 98.11 feet; thence N19°12'54"E 337.67 feet; thence S89°10'35"W 86.00 feet; thence N02°24'54"W 494.08 feet; thence N89°10'35"E 661.03 feet; thence N41°39'09"E 105.25 feet to the southwesterly right of way line of Ben Burr Road, and the Point of Terminus;

TOGETHER WITH the south one hundred thirty (S130) feet of Tract Fourteen (14) of Piedmont Springs; also that part of the West one-half (W1/2) of Custer Road, vacated, lying East of and adjacent to said property, recorded in Book E of Plats, page 42, in the office of the County Auditor of said County.

**Proposed Parcel B**
(IHRC parcel)
March 5, 2007

Those portions of Lots 18, 19, 22, 23, 26, and 27 of TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in Volume "E" of Plats, Page 42; together with vacated Custer Road as attaches by operation of law; situate in the Northwest quarter of Section 11, Township 24 North, Range 43 East, W.M., Spokane County, Washington, described as follows;

COMMENCING at the West quarter corner of said Section 11; thence N89°07'50"E 671.32 feet along the south line of said Northwest quarter, as shown on Record of Survey filed in Book 96 of Surveys, Pages 68 and 69, under Spokane County Auditor's File No. 4570602; thence N02°24'54"W 222.05 feet along the westerly line of Lot 30 of said TOWNSITE OF PIEDMONT SPRINGS; thence N68°21'15"E 268.50 feet; thence N40°52'37"W 98.11 feet; thence N19°12'54"E 337.67 feet to the POINT OF BEGINNING;

thence S89°10'35"W 86.00 feet; thence N02°24'54"W 494.08 feet; thence N89°10'35"E 661.03 feet; thence N41°39'09"E 105.25 feet to the southwesterly right of way line of Ben Burr Road, thence S48°20'51"E 330.00 feet along said right of way line; thence S41°39'09"W 272.27 feet; thence S26°02'23"E 31.74 feet; thence southerly along the arc of a 110.00 foot radius curve to the right, through a central angle of 56°13'39", an arc length of 107.95 feet; thence S30°11'16"W 45.76 feet; thence S00°00'00"E 174.66 feet; thence N90°00'00"W 326.96 feet; thence N40°52'37"W 252.85 feet; thence S89°10'35"W 184.48 feet to the Point of Beginning.

**Proposed Parcel B1**
(IHRC white building parcel)
April 10, 2007

That portion of a certain Parcel "B-2" as shown on Record of Survey as recorded in Book 4 of Surveys, Page 39, situate in the Southwest quarter of Section 11, Township 24 North, Range 43 East, W.M., and those portions of Lots 30 and 31 and vacated Custer Road in TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in Volume "E" of Plats, Page 42; situate in the Northwest quarter of Section 11, Township 24 North, Range 43 East, W.M., Spokane County, Washington, described as follows:

COMMENCING at the West quarter corner of said Section 11; thence N89°07'50"E 1343.00 feet along the north line of said Southwest quarter to the POINT OF BEGINNING;

thence N03°46'43"W 33.82 feet; thence S72°59'40"E 110.04 feet; thence S70°13'43"E 91.89 feet; thence southeasterly along a 500.20 foot radius curve to the right, through a central angle of 06°08'36" an arc length of 53.63 feet; thence S25°54'52"W 111.30 feet; thence N68°48'59"W 198.44 feet; thence N03°46'43"W 78.91 feet to the Point of Beginning.

**Proposed Parcel C**
(Cemetery parcel)
April 12, 2007

Those portions of Lots 18, 22, 23, 25, 26, 27, 30 and 31 of TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in Volume "E" of Plats, Page 42; together with vacated Custer Road as attaches by operation of law; situate in the Northwest quarter of Section 11, Township 24 North, Range 43 East, W.M.; and portions of the Southwest quarter of Section 11, Township 24 North, Range 43 East, W.M., Spokane County, Washington described as follows:

COMMENCING at the West quarter corner of said Section 11; thence N89°07'50"E 1343.00 feet along the south line of said Northwest quarter, as shown on Record of Survey filed in Book 96 of Surveys, Pages 68 and 69, under Spokane County Auditor's File No. 4570602; thence N03°46'43"W 33.82 feet to the POINT OF BEGINNING;

thence N72°59'40"W 269.43 feet; thence N40°52'37"W 360.17 feet; thence N19°12'54"E 337.67 feet; thence N89°10'35"E 184.48 feet; thence S40°52'37"E 252.85 feet; thence N90°00'00"E 326.96 feet; thence N00°00'00"E 174.66 feet; thence N30°11'16"E 45.76 feet; thence northerly along the arc of a 110.00 foot radius curve to the left, through a central angle of 56°13'39", an arc length of 107.95 feet; thence N26°02'23"W 31.74 feet; thence N41°39'09"E 272.27 feet to the southwesterly right of way line of Ben Burr Road; thence southeasterly along said southwesterly right of way line of Ben Burr Road and as altered by Vacation Resolution No. 40890 the following two (2) courses: 1) S48°20'51"E 598.86 feet 2) S42°34'54"W 85.01 feet; thence continuing S42°34'54"W 334.29 feet more or less, to a point on the west line of said Tract 25, a distance of 300 feet from the Northwest corner thereof; thence S02°28'36"E 348.46 feet along said west line to the south line of said Northwest quarter; thence N89°07'50"E 103.66 feet along said south line to the northeast corner of that certain Parcel "B-2" as shown on Record of Survey as recorded in Book 4 of Surveys, Page 39, under Auditor's Recording No. 7507310100; thence S44°18'00"W 421.64 feet along the easterly line of said Parcel "B-2"; thence northwesterly along a 500.20 foot radius non-tangent curve, concave to the southwest, the center of which bears S65°09'32"W, through a central angle of 45°23'15" an arc length of 396.24 feet; thence N70°13'43"W 91.89 feet to the south line of said Northwest quarter; thence N72°59'40"W 110.04 feet to the Point of Beginning.

5

**Proposed Parcel D**
(Southerly 10.00 acre parcel for sale)
March 5, 2007

Lot 30 of TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in
Volume "E" of Plats, Page 42; situate in the Northwest quarter of Section 11,
Township 24 North, Range 43 East, W.M., Spokane County, Washington;

EXCEPT that portion thereof lying easterly and northerly of the following
described line:

COMMENCING at the West quarter corner of said Section 11; thence
N89°07'50"E 1343.00 feet along the south line of said Northwest quarter, as
shown on Record of Survey filed in Book 96 of Surveys, Pages 68 and 69, under
Spokane County Auditor's File No. 4570602, to the POINT OF BEGINNING;

thence N03°46'43"W 33.82 feet; thence N72°59'40"W 269.43 feet; thence
N40°52'37"W 262.06 feet; thence S68°21'15"W 268.50 feet to the west line of
said Tract 30 and the Point of Terminus;

TOGETHER WITH that portion of a certain Parcel "B-2" as shown on Record of
Survey as recorded in Book 4 of Surveys, Page 39, located in the Southwest
quarter of said Section 11 more particularly described as follows:

COMMENCING at the West quarter corner of said Section 11, thence
N89°07'50"E 834.18 feet along the north line of said Southwest quarter to the
POINT OF BEGINNING;

thence S02°18'21"E 209.88 feet; S74°25'34"E 613.39 feet; thence S16°56'09"W
249.95 feet to the northerly right of way line of Jamieson Road and the beginning
of a 746.20 foot radius non-tangent curve, concave to the south, the center of
which bears S23°10'38"W, thence southeasterly along said right of way line and
said curve through a central angle of 7°40'42", an arc length of 100.00 feet;
thence N44°18'00"E 526.09 feet; thence northwesterly along a 500.20 foot radius
non-tangent curve, concave to the southwest, the center of which bears
S65°09'32"W, through a central angle of 39°14'39" an arc length of 342.61 feet;
thence S25°54'52"W 111.30 feet; thence N68°48'59"W 198.44 feet; thence
N03°46'43"W 78.91 feet to the north line of said Southwest quarter; thence
S89°07'50"W 508.83 feet along said north line to the Point of Beginning.

6

**EXHIBIT 1**
**Conveyance Portion of Proposed Parcel B**
**Cemetery to Bishop – 25,970 S.F. (0.60 Ac.)**
March 5, 2007

Those portions of Lots 18 and 23 of TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in Volume "E" of Plats, Page 42; situate in the Northwest quarter of Section 11, Township 24 North, Range 43 East, W.M., Spokane County, Washington, described as follows;

COMMENCING at the West quarter corner of said Section 11; thence N89°07'50"E 671.32 feet along the south line of said Northwest quarter, as shown on Record of Survey filed in Book 96 of Surveys, Pages 68 and 69, under Spokane County Auditor's File No. 4570602; thence N02°24'54"W 222.05 feet along the westerly line of Lot 30 of said TOWNSITE OF PIEDMONT SPRINGS; thence N68°21'15"E 268.50 feet; thence N40°52'37"W 98.11 feet; thence N19°12'54"E 337.67 feet; thence S89°10'35"W 86.00 feet; thence N02°24'54"W 494.08 feet; thence N89°10'35"E 661.03 feet; thence N41°39'09"E 105.25 feet to the southwesterly right of way line of Ben Burr Road, thence S48°20'51"E 140.37 feet along said right of way line to the POINT OF BEGINNING;

thence S03°11'19"W 134.36 feet; thence southwesterly along a 250.00 foot radius curve to the right, through a central angle of 19°36'18" an arc length of 85.54 feet; thence S22°47'36"W 57.93 feet; thence along a 50.00 foot radius curve to the left, through a central angle of 48°49'59" an arc length of 42.61 feet; thence S26°02'23"E 19.63 feet; thence N41°39'09"E 272.27 feet to said right of way line; thence N48°20'51"W 189.63 feet along said right of way line to the POINT OF BEGINNING.

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit A  pages 2-7  9 and 11.doc
042307 1112

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 27 of 47



RECORD OF SURVEY
BK 77 PG 80

EXHIBIT 1

Δ=1°04'05"
R=2834.79'
L=52.85'

Δ=4°20'02"
R=2814.79'
L=212.91'

N02°27'32"W
99.43'

707.35'

RECORD OF SURVEY
BK 48 PG 11

BEN BURR ROAD

N89°10'35"E 661.03'

N41°39'09"E 140.57'

98.33'

105.25'

N03°11'19"E
134.36'

18

OLD PARCEL LINE

N48°20'51"W 1763.63'

189.63'

N41°39'09"E 272.27'

40'
VACATED

PARCEL B
11.70 AC

CUSTER ROAD
N02°27'32"W

23

31.74'

354.14'

N48°20'51"W
223.59'

N89°02'59"E
175.67'

270.48'
48'

N40°32'37"W
252.85'

N90°00'00"E
326.96'

N00°00'00"E
174.66'

PARCEL C
20.32 AC.

N02°28'36"W
300.00'

334.29'

419.30'

N42°34'54"E

N08°07'25"W
109.71'

26

PIEDMONT SPRINGS

34115.0159

OLD PARCEL LINE

N01°03'34"W
170.09'

N03°46'43"E
203.24'

34115.0162

25

N02°28'36"W 348.46'

PARCEL B1
24,955 S.F.

31

N72°59'40"W
269.43'

EL D

N70°13'43"W
91.89'

N89°07'50"E
103.66'

657.38

**EXHIBIT 2**
**Conveyance Portion of Proposed Parcel C**
**Bishop to Cemetery – 5.15 Ac.**
March 5, 2007

Those portions of Lots 22, 27 and 30 of TOWNSITE OF PIEDMONT SPRINGS, as per plat thereof recorded in Volume "E" of Plats, Page 42; situate in the Northwest quarter of Section 11, Township 24 North, Range 43 East, W.M., Spokane County, Washington, described as follows;

COMMENCING at the West quarter corner of said Section 11; thence N89°07'50"E 1343.00 feet along the south line of said Northwest quarter, as shown on Record of Survey filed in Book 96 of Surveys, Pages 68 and 69, under Spokane County Auditor's File No. 4570602, thence N03°46'43"W 33.82 feet to the POINT OF BEGINNING;

 thence N72°59'40"W 269.43 feet; thence N40°52'37"W 360.17 feet; thence N19°12'54"E 337.67 feet; thence N89°10'35"E 184.48 feet; thence S40°52'37"E 252.85 feet; thence S08°07'25"E 109.71 feet; thence S01°08'34"E 170.09 feet; thence S03°46'43"E 203.24 feet the POINT OF BEGINNING.

## EXHIBIT 2



**EXHIBIT 3**
**Conveyance Portion of Proposed Parcel D**
**Cemetery to Bishop – 4.16 Ac.**
March 5, 2007

That portion of a certain Parcel "B-2" as shown on Record of Survey as recorded in Book 4 of Surveys, Page 39, located in the Southwest quarter of Section 11, Township 24 North, Range 43 East, W.M., described as follows:

COMMENCING at the West quarter corner of said Section 11, thence N89°07'50"E 1343.00 feet along the north line of said Southwest quarter; thence S03°46'43"E 65.80 feet to the POINT OF BEGINNING;

thence S17°46'53"W 281.90 feet; thence S74°25'34"E 178.87 feet; thence S16°56'09"W 249.95 feet to the northerly right of way line of Jamieson Road; thence southeasterly along a 746.20 foot radius non-tangent curve in said right of way, concave to the south, the center of which bears S23°10'38"W, through a central angle of 7°40'42" an arc length of 100.00 feet; thence N44°18'00"E 526.09 feet; thence northwesterly along a 500.20 foot radius non-tangent curve, concave to the southwest, the center of which bears S65°09'32"W, through a central angle of 39°14'39" an arc length of 342.61 feet; thence S25°54'52"W 111.30 feet; thence N68°48'59"W 198.44 feet; thence N03°46'43"W 13.10 feet to the POINT OF BEGINNING.

## EXHIBIT 3



**PARCEL NO. 34113.9045**
(Per QCD 8305270175)


A portion of the SW 1/4 of Section 11, Township 24 North, Range 43 East, W.M., in the County of Spokane and the State of Washington more particularly described as follows:

Beginning at the northwest corner of the SW 1/4 of said Section 11; thence on an assumed East bearing along the north line of said SW 1/4 a distance of 675.00 feet to the True Point of Beginning;

thence continuing East along said north line a distance of 159.09 feet; thence S01°26'00"E, 209.92 feet; thence N73°33'41"W, 167.10 feet; thence N01°26'00"W 162.62 feet to the True Point of Beginning.

# EXHIBIT B

# CATHOLIC DIOCESE OF SPOKANE PLAN TRUST AGREEMENT
# FOR QUALIFIED SETTLEMENT FUND

This PLAN TRUST AGREEMENT FOR QUALIFIED SETTLEMENT FUND ("Plan Trust Agreement") is entered into as of the __ day of _____, 2007, pursuant to the Order ("Confirmation Order"), dated _____, 2007, confirming the Debtor's Second Amended Plan of Reorganization (the "Plan"), dated March 7, 2007, in *In re The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane*, No. 04-08822 –PCW-11 (Bankr. E.D. Wa.), by the Catholic Bishop of Spokane a/k/a the Catholic Diocese of Spokane ("Debtor"), a Washington corporation sole, and Gloria Nagler, the Plan Trustee. All capitalized terms not defined herein have the definitions set forth in the Plan. A copy of the Plan is attached as Exhibit A.

## Article 1.    Name of the Trust.

The trust shall be known as the "Catholic Diocese of Spokane Qualified Settlement Fund" and referred to herein as the "Plan Trust."

## Article 2.    Corpus of the Trust.

The assets of the Plan Trust (the "Trust Estate") shall include all property transferred to the Plan Trust pursuant to the Plan including:

a.    The Debtor's Note in the amount of $48 million, the Debtor's DOT, and the Debtor's Loan Documents;

b.    The Parishes' Notes (Parishes' Note No. 1 in the amount of $10 million, Parishes' Note No. 2 in the amount of $5 million, and Parish Note No. 3 in the amount of $1 million), the Parishes' DOT, and the Parishes' Loan Documents;

c.    The Payment Agreement, the FC DOTs, and the FC Loan Documents;

d.    All sums transferred to the Plan Trust pursuant to the Plan or future orders of the Bankruptcy Court;

e.    All rights of every kind, nature and description transferred to the Plan Trust pursuant to the Plan or future orders of the Bankruptcy Court or otherwise belonging to the Plan Trust; and

f.    All income and sale proceeds derived from any of the above assets of the Plan Trust.

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 35 of 47

## Article 3.    Purpose of the Plan Trust.

The Plan provides for compensation to persons who were sexually abused. This Plan Trust Agreement sets forth the terms of the trust contemplated by the Plan. In the event of any inconsistency between the Plan and this Plan Trust Agreement, the provisions of the Plan shall govern.

## Article 4.    Irrevocability of the Plan Trust.

The Plan Trust shall be irrevocable. The Debtor shall not alter, amend, revoke, or terminate the Plan Trust. The Debtor shall have no power or authority to direct the Plan Trustee to return any of the Trust Estate of the Plan Trust to the Debtor.

## Article 5.    Termination of the Trust

### a. Time of Termination of the Plan Trust.

Whenever the Plan Trustee determines that the Plan Trust has fulfilled its obligations under the Plan, the Plan Trustee shall file a motion in the Bankruptcy Court for an order terminating the Plan Trust. Notice of the motion shall be sent to all persons who submit to the Plan Trustee written requests for notice ("Notice Parties"). After reviewing the motion and any objections thereto, the Bankruptcy Court may terminate the Plan Trust or may order that the Plan Trustee undertake such further actions as the Bankruptcy Court deems necessary and appropriate to carry out the provisions of the Plan.

### b. Distribution of Plan Trust Assets Upon Termination.

Upon termination of the Plan Trust, the Plan Trustee shall distribute all remaining Plan Trust assets as set forth in the Plan or as directed by the Bankruptcy Court.

### c. Order Terminating Plan Trust.

The Court Order terminating the Plan Trust shall provide for: the discharge of the Plan Trustee, the exculpation of the Plan Trustee from liability, and the exoneration of the Plan Trustee's bond.

## Article 6.    Powers of Plan Trustee.

The Plan Trustee is vested with all powers necessary to effectuate the purpose of the Plan Trust and to carry out the duties of the Plan Trustee as set forth in the Plan. These powers include, but are not limited to, the following:

### a. Bond, Management of the Trust Estate of the Plan Trust.

The Plan Trustee shall serve with a bond in the amount of $30,000,000. The Plan Trustee is empowered to manage the Trust Estate of the Plan Trust in order to

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 36 of 47

effectuate the purpose of the Plan Trust, and shall have all rights, powers, duties and obligations provided by law, including but not limited to, the powers granted by the Washington Trust Act of 1984, Chapter 11.98 of the Revised Code of Washington, save as may be modified elsewhere in this Plan Trust Agreement.

**b. Payment of Expenses of the Plan Trust.**

Subject to Article 25.3 of the Plan, the Plan Trustee is empowered to incur on behalf of the Plan Trust, and pay from the assets of the Plan Trust, all Plan Trust Costs and Expenses incurred by the Plan Trustee in maintaining and administering the Plan Trust including, without limitation, the fees of bankruptcy management companies such as BMC, and the fees and costs of Professional Persons employed by the Plan Trustee, such as investment advisors, accountants, agents, managers, attorneys and contract attorneys, actuaries, or auditors, and the premiums charged by insurers, including professional liability insurers, title insurers, and escrow agents.

**c. Payment of Tort Claimants.**

The Plan Trustee is empowered to pay Allowed Tort Claims, Professional Fees, and Plan Trust Costs and Expenses pursuant to the terms of the Plan.

**d. Retention of Professionals and Consultants.**

Except as restricted by Article 13.3 of the Plan and by applicable professional ethics rules such as the Rules of Professional Conduct, the Plan Trustee is entitled to retain any attorney, contract attorney, accountant, investment advisor, bankruptcy management company such as BMC, or such other agents and advisors as are necessary and appropriate (and shall be entitled to rely on advice given by such advisors within their areas of competence) to:

(i) effectuate the purpose of the Plan Trust; or

(ii) maintain and administer the Plan Trust.

**e. Execution of Documents.**

The Plan Trustee is empowered to make, sign, execute, acknowledge and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan Trust or to maintain and administer the Plan Trust.

**f. Litigation or Other Proceedings.**

The Plan Trustee shall be empowered to institute, conduct, defend, settle and compromise any litigation or other proceeding in any court or any administrative or regulatory forum in the name of the Plan Trust if, in its sole discretion, it deems it so advisable to do so. Within fourteen (14) days after the effective date of a settlement or compromise where the amount in controversy exceeded $50,000, the Plan Trustee

shall give notice of the settlement or compromise to the Notice Parties. The purpose of this notice requirement is to enable interested persons to be informed about the results of litigation.

### g. Compliance With Law.

The Plan Trustee is empowered to comply with all requirements imposed by applicable law, rule, or regulation.

### h. Modification of The Plan Trust Agreement.

The Plan Trustee may file a motion with the Bankruptcy Court, with notice to the Notice Parties, for a modification of the provisions of this Plan Trust Agreement if the Plan Trustee determines that such modifications are necessary to conform to legal and/or administrative requirements.

### i. Distributions May Be Delayed to Wind Up Affairs of the Trust.

Upon any event terminating the Plan Trust, the right to distributions shall vest immediately, but the Trustee may defer distribution of property from the Plan Trust for a reasonable time needed to wind up the affairs of the Plan Trust, including time needed to provide for payment of debts and taxes.

### j. Anti-Assignment Clause.

To the fullest extent permitted by law, neither the principal nor income of the Plan Trust, in whole or part, shall be subject to claims of creditors of any beneficiary or others, nor to legal process, nor be voluntarily or involuntarily assigned, alienated or encumbered except as may be ordered by the Bankruptcy Court.

### k. Investments.

The Plan Trustee shall comply with 11 U.S.C. §345 with regard to the investment of Plan Trust assets. The Plan Trustee may invest assets of the Plan Trust in U.S. Government insured or issued securities with a duration of not more than 3 years until all Tort Claims except Future Tort Claims have been finally determined and, to the extent Allowed, paid in full, and thereafter with a duration of not more than 10 years. The Plan Trustee is relieved of any obligation to diversify.

### l. Trust Division.

The Plan Trustee is authorized to segregate the Plan Trust established by this Plan Trust Agreement into separate accounts or funds, as required by the Plan, for ease of administration, or for any tax election or allocation. Any segregation shall be made according to the fair market value of the assets of the Plan Trust at the time of segregation; the appreciation or depreciation of the property allocated to each account or fund, including cash, shall be fairly representative of the appreciation or depreciation

to the date of each segregation of all property available for allocation; and the segregation shall otherwise be in accordance with applicable tax law. Nothing in this provision shall restrict the Plan Trustee's authority to pool such accounts or funds for investment purposes or require separate bank accounts for such accounts or funds.

### m. Perpetuities.

Notwithstanding any other provisions of this Plan Trust Agreement, each trust hereby created, if not previously terminated under other provisions of this Plan Trust Agreement, shall in any event terminate upon thirty five (35) years after the date of this Plan Trust Agreement. Upon such termination, all the assets thereof shall be distributed pursuant to Article 5(b) above to the registry of the Bankruptcy Court.

## Article 7.    Immunity and Indemnification of Plan Trustee.

### a. Generally.

The Plan Trustee shall not be personally liable for mistakes in judgment, errors of fact or law, or other acts or omissions during the administration of the Plan Trust, in the absence of willful misconduct or ultra vires acts. The Plan Trustee who meets the standards of conduct provided by Article 7.b. of this Plan Agreement shall be indemnified by the Plan Trust for reasonable costs and expenses, including but not limited to attorneys' fees, incurred in connection with any claim as provided in Article 7(b) below.

### b. Duty to Defend, Indemnify and Hold Harmless

The Plan Trust shall defend, indemnify and hold the Plan Trustee harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from any contract, obligation or liability made or incurred by the Plan Trustee in good faith. Nothing in this section shall be construed or interpreted to limit in any way the protections and immunities, if any, afforded to the Plan Trustee pursuant to federal and/or state statutory and common law. Notwithstanding the foregoing, this indemnification, obligation of defense and covenant to hold harmless shall not apply to any liability arising from a criminal proceeding where the Plan Trustee had reasonable cause to believe that the conduct in question was unlawful.

## Article 8.    Plan Trustee Compensation.

The Plan Trustee shall be entitled to receive as compensation from the monetary assets of the Plan Trust such amounts as described in Exhibit B attached hereto, and as the same may be amended from time to time during the term of this Plan Trust Agreement. Such amendments to Exhibit B, if any, may be requested solely by the Plan Trustee by written motion of the Plan Trustee to the Bankruptcy Court.

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11   Doc 1921   Filed 04/24/07   Entered 04/24/07 16:32:30   Pg 39 of 47

## Article 9.    Successor Plan Trustees.

### a.  Vacancy Caused by Plan Trustee Resignation or Removal.

(i) <u>Plan Trustee Resignation</u>.  The Plan Trustee may resign at any time.  The Plan Trustee shall file her written resignation to the Bankruptcy Court. The resignation shall take effect within thirty (30) days of delivery of the notice of resignation  The Plan Trustee shall, by the earliest date possible, deliver to the Plan Trustee's successor all of the Plan Trust assets which were in the possession of the Plan Trustee along with a complete record and inventory of all such assets.

(ii) <u>Trustee Removal</u>.  The Bankruptcy Court may remove a Plan Trustee on a motion submitted by a party in interest following notice to the Notice Parties.  The ground for removal is good cause.  The removal will take effect upon the date the Bankruptcy Court specifies. The Plan Trustee shall, by the earliest date possible, deliver to the Plan Trustee's successor all of the Plan Trust assets which were in the possession of the Plan Trustee along with a complete record and inventory of all such assets.

### b.  Appointment of Successor Plan Trustee.

Pursuant to Article 13.2 of the Plan, any vacancy in the office of Plan Trustee shall be filled by the unanimous nomination of the TCC, the FCR and the TLC, subject to the approval of the Honorable Patricia C. Williams or, in her absence, the Chief Judge of the U.S. Bankruptcy Court for the Eastern District of Washington, after notice and a hearing.  If the TCC, the FCR and the TLC do not unanimously nominate a successor within 45 days after the Plan Trustee resigns or becomes unable to serve, the Honorable Patricia C. Williams or, in her absence, the Chief Judge of the U.S. Bankruptcy Court of the Eastern District of Washington, shall designate a successor after notice to the Notice Parties and a hearing.

### c.  Acceptance of Appointment of Successor Plan Trustee.

Any successor Plan Trustee's acceptance of appointment as a successor Plan Trustee shall be in writing and shall be filed with the Bankruptcy Court.  The acceptance shall become effective when filed with the Bankruptcy Court.  The Plan Trustee shall thereupon be considered a Plan Trustee of the Plan Trust without the necessity of any conveyance or instrument.  Each successor Plan Trustee shall have all of the rights, powers, duties, authority, and privileges as if initially named as a Plan Trustee hereunder.  Each successor Plan Trustee shall be exempt from any liability related to the acts or omissions of the Plan Trustee prior to the appointment of the successor Plan Trustee.

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 40 of 47

### d. Preservation of Record of Changes in Plan Trustees.

A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Plan Trust Agreement.

### Article 10.    Instructions to Plan Trustee.

In addition to the other duties set forth in the Plan or this Plan Trust Agreement, the Plan Trustee is hereby specifically directed to do the following:

### a. Semi-Annual Financial Reports.

In lieu of compliance with the Uniform Trustee's Accounting Act of the State of Washington, the Plan Trustee shall prepare on behalf of the Plan Trust semi-annual financial reports describing the then remaining assets and the manner in which the assets of the Plan Trust are then invested. The reports shall include an itemization of categories of expenses and corresponding amounts. The reports shall also include an estimate of the current market value of the invested assets of the Plan Trust and a description of the obligations, income and expenses of the Plan Trust. The Plan Trustee may, but shall not be required to, employ valuation experts. The reports shall include an itemized statement of all sums disbursed to Tort Claimants. The reports shall be prepared within forty-five (45) days of the close of the reporting period. Copies of the reports shall be sent to the Notice Parties and filed with the Bankruptcy Court. The reports shall be prepared on an accrual basis, and shall be in accordance with Generally Accepted Accounting Principles.

### b. Additional Reporting to the Court.

The Plan Trustee shall report to the Bankruptcy Court, with notice to the Notice Parties, with respect to any matter arising from the administration of the Plan Trust that the Plan Trustee deems advisable to bring to the attention of the Bankruptcy Court. The Plan Trustee shall report to the Bankruptcy Court, with notice to the Notice Parties, with respect to any matter arising from the administration of the Plan Trust upon request of the Bankruptcy Court.

### Article 11.    Grantor Trust Election.

The Parties intend the Plan Trust to be a Qualified Settlement Fund as defined in Treasury Regulation §1.468B-1. Therefore, the Parties shall take all action necessary to ensure Qualified Settlement Fund treatment for the Plan Trust. Without limitation, the Debtor and the Plan Trust shall make the appropriate elections under Treasury Reg. § 1.468B-1(k) to be treated as a grantor trust. If it is determined that the Debtor can only make the grantor trust election with respect to a portion of the fund, the Party or Parties eligible to make the election with respect to the reminder of the fund shall make such election. If necessary, the Trustee may divide the Plan Trust into

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 41 of 47

several separate trusts for the purposes of obtaining Qualified Settlement Fund treatment and the grantor trust election under section 1.468B-1(k) with respect to each such portion. Any such administrative division shall not effect the rights of any claimants to the funds in the Plan Trust.

## Article 12.    Section 468B Settlement Fund.

### a.  Generally.

In accordance with the Plan, it is the intent of the Debtor and the Plan Trustee that all steps be taken by the Plan Trustee to ensure that the Plan Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of §468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations promulgated pursuant thereto. The Debtor is the "transferor" within the meaning of Treasury Regulations §1.468B-1(d)(1). The Plan Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

It is further intended that the transfers to the Plan Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Tax Code, and Treasury Regulation Section 1.461-1(a)(2).

### b.  Employer Identification Number.

Upon establishment of the Plan Trust, the Plan Trustee shall apply for an employer identification number for the Plan Trust pursuant to Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

### c.  Relation-Back Election.

If applicable, the Plan Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2), to treat the Plan Trust as coming into existence as a settlement fund as of the earliest possible date.

### d.  Reporting Requirements.

The Plan Trustee shall cause to be filed, on behalf of the Plan Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulations §1.468B-2(k)(1). The Debtor shall file an election statement satisfying the requirements of Treasury Regulation §1.468B-1(k)(2)(ii) so that the Plan Trust is treated as a grantor trust under §671 of the Tax Code and the regulations promulgated thereunder. The Debtor's election statement shall be made on the Plan Trust's first timely filed trust income tax return. The Debtor (or some other person on behalf the Debtor) shall supply to the Plan Trustee and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Debtor (or some other person on behalf of the Debtor) makes a transfer to the Plan Trust.

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 42 of 47

### e. Broad Powers of the Plan Trustee.

The Plan Trustee is empowered to take all such actions, including such actions as may be inconsistent with those expressly set forth above, as she deems necessary to ensure that the Plan Trust is treated as a "Designated" or "Qualified" settlement fund under §468B of the Tax Code, and the regulations promulgated pursuant thereto. Further, the Plan Trustee may amend, either in whole or in part, any administrative provision of this Plan Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

## Article 13. Miscellaneous Provisions.

### a. Interpretation.

As used in this Plan Trust Agreement, words in the singular include the plural and words in the plural include the singular. The masculine, feminine and neuter genders shall be deemed to include all genders. The descriptive heading for each paragraph and subparagraph of this Plan Trust Agreement are for the reader's convenience and shall not affect the interpretation or the legal efficacy of this Plan Trust Agreement.

### b. Notices.

Notices shall be sent to the "Notice Parties," who are all persons who submit a request in writing to the Plan Trustee. Such requests shall include the requestor's street address and may include the requestor's fax number and email address.

All notices or deliveries required or permitted hereunder shall be in writing and shall be deemed given on the first of the following dates: (i) when personally delivered; (ii) when actually received by means of facsimile transmission or e-mail; (iii) when received by overnight express courier delivery; (iv) when delivered and receipted for by certified mail, postage prepaid, return receipt requested (or in the event of attempted delivery and refusal of acceptance, then on the date of the first attempted delivery).

### c. Choice of Law.

This Plan Trust Agreement shall be administered, governed by, construed, and enforced according to the internal laws of the State of Washington applicable to contracts and agreements made and to be performed therein, except that all matters of federal tax law and this Plan Trust's compliance with §468B of the Tax Code and Treasury Regulations thereunder, shall be governed by federal income tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law.

### d. Invalidity and Unenforceability.

If any term or provision of this Plan Trust Agreement shall be invalid or unenforceable, the remainder of this Plan Trust Agreement shall not be affected

04-08822-FPC11     Doc 1921     Filed 04/24/07     Entered 04/24/07 16:32:30     Pg 43 of 47

thereby, and each remaining term and provision of this Plan Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

### e. Entirety of Agreement.

This Plan Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter hereof. This Plan Trust Agreement, together with the Exhibits hereto, the Plan, and the Confirmation Order, contain the sole and entire agreement and understanding with respect to the matters addressed therein.

### f. Binding Agreement.

The individual executing this Plan Trust Agreement and Exhibits on behalf of the Debtor hereby covenants, warrants and represents that: (i) such individual is duly authorized to execute this Plan Trust Agreement on behalf of the Debtor, (ii) this Plan Trust Agreement is binding upon the Debtor, (iii) the Debtor is duly organized and legally existing in the state of Washington, and (iv) the execution of this Plan Trust Agreement will not result in any breach or constitute a default under any obligation, undertaking, contract, or agreement to which such Debtor is a party or by which the Debtor may be bound.

### g. Counterparts.

This Plan Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

### h. Independent Legal and Tax Counsel.

All parties to this Plan Trust Agreement have been represented by counsel and advisors (collectively referred to as "Counsel") of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Plan Trust Agreement shall in all cases be construed as a whole according to its fair meaning and neither strictly for nor against any party. IT IS SPECIFICALLY ACKNOWLEDGED AND UNDERSTOOD THAT THIS PLAN TRUST AGREEMENT HAS NOT BEEN SUBMITTED TO, NOR REVIEWED OR APPROVED BY, THE INTERNAL REVENUE SERVICE OR THE TAXING AUTHORITIES OF ANY STATE OR TERRITORY OF THE UNITED STATES OF AMERICA.

### i. Jurisdiction.

The United States Bankruptcy Court for the Eastern District of Washington retains exclusive original jurisdiction over all matters related to the Plan, the Plan Trust Agreement, Plan Trust, all other contracts related to the Plan, and security interests created pursuant to the Plan and Plan Trust. Notwithstanding such exclusive original jurisdiction, the Plan Trustee, upon notice to the Debtor and Notice Parties, may seek

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 44 of 47

permission of the Bankruptcy Court for commencement of an action in the Superior Courts of the State of Washington or in any other state court of original jurisdiction for relief in any matter concerning the interpretation or resolution of any dispute related to the Plan Trust, or for enforcement of any rights claimed by the Plan Trustee. If the Bankruptcy Court concludes, in the exercise of its discretion, that the Plan Trustee would be aided in the administration of the Trust by referral of the matter to the Superior Court or other state court, the Bankruptcy Court may grant the Plan Trustee permission to commence an action in the Superior Court of the State of Washington or any other state court of original jurisdiction.

IN WITNESS WHEREOF, the parties execute this Plan Trust Agreement as of the date set forth in the opening paragraph.

CATHOLIC BISHOP OF SPOKANE
a/k/a THE CATHOLIC DIOCESE OF          PLAN TRUSTEE
SPOKANE

By: _____          _____
Printed Name: _____          Printed Name: Gloria Z. Nagler
Title: _____

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11     Doc 1921     Filed 04/24/07     Entered 04/24/07 16:32:30     Pg 45 of 47

# EXHIBIT A

## CONFIRMATION ORDER AND PLAN

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-
Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 46 of 47

## EXHIBIT B

### COMPENSATION FOR PLAN TRUSTEE

The Plan Trustee and her colleagues shall charge for their time at the following hourly rates:

| | | |
|---|---|---|
| 1. | Gloria Nagler | $290 |
| 2. | William Malaier | $250 |
| 3. | David Kerruish | $290 |

The hourly rates are subject to annual increases beginning in December 2007; however, the annual increases shall not exceed ten percent.

Before the Plan Trust pays the fees and expenses of the Plan Trustee, the Plan Trustee shall, in her discretion, follow one of the following two procedures.

(1) The Plan Trustee may send monthly invoices of fees and expenses by mail, fax, or email to the U.S. Trustee and the Notice Parties. Unless the Plan Trustee receives a written objection within fifteen (15) calendar days after sending the monthly invoices, the Plan Trustee's fees and expenses shall be deemed allowed, and may be paid from the Plan Trust. If a timely written objection is received by the Plan Trustee, the Plan Trustee shall apply to the Bankruptcy Court for approval of the requested fees and expenses, if the objection cannot be amicably resolved.

(2) Alternatively, the Plan Trustee may submit a monthly fee application to the Bankruptcy Court, with notice to the U.S. Trustee and to the Notice Parties.

C:\Documents and Settings\srowden\Local Settings\Temporary Internet Files\OLK7\Exhibit B-SEATTLE-#559489-v27-Plan_Trust_Agreement.DOC
042307 1130

04-08822-FPC11    Doc 1921    Filed 04/24/07    Entered 04/24/07 16:32:30    Pg 47 of 47